*01 CV1871 Reply to Motion to Compel*
*01413*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARC/CONNECTICUT, ET. AL.          :
                                  :          3:01CV1871 (JBA)
                    PLAINTIFFS    :
        vs.                       :
                                  :
PETER H. O'MEARA, ET AL.          :
                                  :
                    DEFENDANTS.   :          OCTOBER 10, 2003

### REPLY TO DEFENDANTS' RESPONSE TO
### MOTION TO COMPEL DATED JULY 16, 2003

## I. INTRODUCTION:

On pages 1 – 10 of their brief defendants assert that plaintiffs' counsel has made false

and deceptive representations to the Court, and that he has been insensitive and unprofessional

in responding to the crises that have occurred in the personal lives of defendants' counsel.

Defendants claim further that personal attacks have been made upon him after the Court issued

its Ruling on Defendants' Motion to Quash and for Sanctions that admonished counsel to curb

impulsive behavior which only serves to distract from the merits of the litigation.[1]  Ruling, p. 8,

---

[1] The Ruling on Defendants' Motion to Quash and for Sanctions [#150] was entered on August 1, 2003, approximately two weeks after plaintiffs' Motion to Compel was prepared.

n. 10. The assertions of unprofessional and improper conduct are unwarranted. The Court has

observed in this regard, that the continuation of such assertions undermines the efforts of all

concerned to resolve the merits of Plaintiffs' discovery requests. Defendants' comments place

plaintiffs' counsel in the position of not responding such extraordinary and unfounded

assertions, thereby running the risk that the Court will accept them at face value, or responding

in such a way that perpetuates the destructive disclosure. Plaintiffs believe that the most

appropriate response in light of the Court's instruction is to simply deny that any false, deceitful

or improper representations have been made and focus their comments on the merits of the

discovery disputes.

Plaintiffs' counsel represents that his efforts to discuss and resolve his differences over

defendants' objections to this discovery as documented in his Declaration of Good Faith

Attempts to Resolve Dispute were necessitated by Local Rule 37 and are consistent with his

duty to vigorously represent the class. Plaintiffs' counsel takes seriously his obligation to

complete expert discovery within the time established by the Court. In order to accomplish this

it is necessary to obtain the documents his experts indicate are needed to develop relevant

opinions. Here, defendants object to and refuse to produce nearly half of the documents

requested in plaintiffs' letter dated April 17, 2003. Plaintiffs were therefore faced with either

abandoning their request for documents or seeking Court intervention under Rules 26 and 37, Fed. R. Civ. P.  Local Rule 37(a)2 however prohibits the filing of such a motion "unless counsel … has conferred with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution."  These good faith efforts must be documented in an affidavit that must be submitted with the motion to compel.  Plaintiffs' Motion to Compel carefully documents counsel's unsuccessful efforts to confer with opposing counsel about his objections.[2] These efforts continued over a three-month period.[3]  Plaintiffs stand by the objective reasonableness of their compliance or reply to plaintiffs' letter of June 4, 2003 with the Federal Rules of Practice in light of defendants' refusal to engage in discussions relating to their objections.

Plaintiffs offer the following reply with respect to the defendants' opposition to specific

---

[2] Plaintiffs' Motion to Compel and supporting memorandum mention a letter written by plaintiffs' counsel as one of the several attempts made to enter into a dialogue over defendants' objections.  A copy of that letter dated June 4, 2003 is attached as Attachment A hereto so that the Court can objectively assess defendants' assertion that plaintiffs "offered little in compromise."  Defs' br. at 5.

[3] On page 2 of their memorandum, defendants state that plaintiffs knew that defendants were not prepared to discuss any of the defendants' objections until after the Court ruled on defendants' Motion for Reconsideration.  As can be seen from plaintiffs' Memorandum in Support of Motion to Compel, pp. 7 – 20, only 10 of the document requests (requests 1-4, 5c, 9, 14 – 16) depend on the Court's Ruling on the Motion for Reconsideration.  Objections to the other paragraphs, and objections to paragraphs 1-4, 5c, 9, 14-16 that are unrelated to HIPAA, could have been discussed and resolved prior to the time the Court finally decides the issues raised in defendants' Motion for Reconsideration.

3

paragraphs of plaintiffs' letter dated April 17, 2003 (Exhibit A to Motion to Compel):

1-4, 14, 15. Defendants argue on page 10 of its brief that the Motion to Compel as to these paragraphs is unnecessary because a Motion for Reconsideration is pending. Defendants' position – that the Ruling on the Motions for Reconsideration will determine whether these important data bases are released to plaintiffs – is inconsistent with the position defendants took in opposition to plaintiffs' Motion for Reconsideration. The Court in fact noted on page 10 of its Ruling on Plaintiffs' and Defendants' Motions for Reconsideration that defendants' position was that the Court Ruling allowing access to confidential information applied only to the release of client names, and *not* to subsequent discovery. Defendants cannot have it both ways. The plaintiffs request that the Court clarify the applicability of its Rulings relating to access to confidential information of persons on the DMR Waiting Lists to all discovery so that the recycling of arguments as noted by the Court does not continue as to aspects of discovery not specifically covered in the Ruling on Plaintiffs' Request that the Names, Addresses and Other Identifying Information About DMR Clients on the DMR Residential and Planning Lists and Their Guardians be Produced.

Defendants raise the additional argument here that plaintiffs' discovery requests are "overly broad and unduly burdensome, and the burden outweighs its likely benefit..." We assume that defendants have waived this objection in light of defendants' failure to brief the

4

issue and its failure to make any showing that this discovery request is unduly burdensome in any way.

5c.  This paragraph asks for a listing of all reports generated from DMR data bases relating to the Waiting lists during the period January 1, 2002 to April 15, 2003.  Again, plaintiffs agree that the Court's Ruling on Motions for Reconsideration is not final but ask the Court to make clear that its disposition of those motions will govern all aspects of discovery, as discussed in the previous paragraph.  Plaintiffs, however, request that the Court overrule the objection to the extent defendants argue that these discovery requests are "overly broad and unduly burdensome, and that the burden outweighs its likely benefit."  Plaintiffs do not know whether any such reports exist, and so have asked for a *listing* of the reports to determine whether copies should be requested.  Defendants' objections erroneously assume that plaintiffs are requesting a copy of the reports at this time and would place the burden on the experts to state precisely what reports they are seeking when in fact they do not know whether any exist. Defendants' objection should be overruled because it is based on a misunderstanding of what is sought and demands information from plaintiffs experts that they cannot be expected to have.

6.  This paragraph asks for all correspondence between DMR and DSS regarding the Waiver for the last five years.  In response defendants have made certain memoranda relating to rate setting available, without explanation as to why their response was so limited.  Defendants'

5

objection is identical to the ones addressed in the above paragraphs.  Defendants' most recent

brief demands in addition that plaintiffs specifically identify the documents that are sought.

The objection should be overruled as defendants have made no showing that the request is

burdensome and five years of correspondence relating to the Waiver is not unreasonable.

Defendants' assertion that plaintiffs must identify the correspondence they seek is unreasonable

as plaintiffs' experts cannot be expected to know what specific correspondence they are seeking

when that correspondence is entirely within defendants' possession and control.

   7.  Defendants have objected to the production of all correspondence between the

federal and state governments relating to the Waiver during the most recent five-year period,

but have produced a single document.  It is not reasonable to assume that only one document

would be exchanged between the state and federal governments in a program that produces over

$175,000,000 in federal Medicaid reimbursement annually.  Defendants now assert that

plaintiffs must specify what additional documents they want.  Such a request is unreasonable.

Plaintiffs request an order compelling defendants to produce documents that are responsive.

   8.  Plaintiffs' experts have requested a copy of all audits conducted of the Waiver

program by DSS or the federal government over a specified period of time.  Defendants clarify

in their brief that that they have produced the only audit that exists but say nothing about the

related documentation.  Plaintiffs request that defendants be ordered to fully comply.

6

9. The defendants claim in their objections that reports on the Waiver and the Waiting Lists would not be produced because such disclosure would violate HIPAA and are unduly burdensome. As to the HIPAA argument, please see plaintiffs' response to paragraphs 1-4, 14 and 15 above.

In their document production defendants assert that the documents in Attachment 9 and Exhibits 1-21 of the Staugaitis Deposition are responsive. Some of these documents are responsive and some are not. Plaintiffs believe the experts are entitled to identification and production of all responsive documents, so that they do not have to guess which documents are responsive.

10. Defendants object to this request on the ground that production of the requested documents will violate HIPAA and will be unduly burdensome. Please see plaintiffs' response to 1-4, 14 and 15 above with regard to the HIPAA argument.

Defendants have, however, produced certain documents with their letter dated June 2, 2003 and now claim that no documents are being knowingly withheld. In light of this representation defendants' objections can be overruled.

11. This request seeks all reports, correspondence and other documents relating to the federal government's most recent audit of the HCBW and Olmstead Letter 4. Defendants filed no objection. Defendants produced documents in DMR's possession only despite the fact that

all contact with the federal government is conducted by DSS as the Single State Medicaid

Agency. Defendants now suggest that all responsive documents may have been produced

because they would be "logically possessed by the Department of Mental Retardation." Based

on the depositions taken in this case to date, however, it is logical to assume the opposite--that

all relevant documents would be in the possession of DSS and <u>not</u> DMR. In fact, previous

discovery has resulted in the production of federal audits and considerable correspondence with

DSS that were neither identified nor produced in defendants' response. Plaintiffs therefore

request that defendants be ordered to identify and produce any responsive documents.

12. This request asks for a copy of each report or assessment made by DMR Central

Office relating to the DMR Residential Waiting List from April 1, 1998 to April 15, 2003.

Defendants' letter dated May 27, 2003 objects on the grounds that compliance will violate

HIPAA and will be unduly burdensome. Please see the response to 1-4, 14 and 15 above for

plaintiffs' response to the HIPAA argument.

Defendants' June 2, 2003 response refers to defendants' response to Request number 9

which, in turn, requests copies of documents relating to the Waiver or the DMR Residential

Waiting list issued by Dr. Staugaitis. Plaintiffs are entitled to a listing of documents that are

responsive and production of those documents rather than objections and reference to the

documents issued by a single DMR employee.

16. This request sought all written communication between DMR Central Office and the Regional Directors, Regional Supervisors of Case Management, or Regional Case Managers regarding compliance with the Waiver from January 1, 2000 to April 15, 2003. Defendants objected to this request on the grounds such disclosure would violate HIPAA and would be unduly burdensome, but, nonetheless, produced a single memorandum from the Director of Staff Development dated December 12, 2002.[4] Plaintiffs' Motion to Compel requests that the objections be overruled and that defendants be ordered to identify and produce all relevant documents.

Defendants now assert that all responsive documents have been produced and that further documents will be produced only if plaintiffs specify what documents they are seeking. Defendants have made no showing that this request is over broad or unduly burdensome. Moreover, it is not possible for plaintiffs to specify documents that are in defendants' exclusive possession and control. Further, defendants' representation that they have produced all relevant documents is accurate as they have failed, for example, to identify or produce the documents that have been the subject of much dispute--such as the memorandum from Laurie Deane to Mary Moriarty dated May 28, 2003. See, plaintiffs' Motion to Compel dated July 23, 2003. Once again, no privilege log has been filed as required by Local Rule 37(a). As it is clear that

---

[4] Please see plaintiffs' response to ¶¶ 1-4, 14 and 15 with regard to the alleged violations of HIPAA.

9

defendants have not complied, plaintiffs request that defendants be ordered to identify and produce all relevant documents.

17. This request asks for all documents relating to the calculation of the average per client cost under the HCBW for the fiscal year ending June 30, 2002. Defendants claimed in response that *DMR* did not possess any such documents. Plaintiffs moved to compel because defendants' response does not address whether DSS has any such documents. Rather than address this deficiency directly, defendants' brief dated August 29, 2002 refers to their response to Request number 11. Unfortunately, it is not clear from the response to number 11 whether all documents in the possession or control of DSS that are relevant to this request have been produced. Plaintiffs' therefore request that the Court order defendants to identify and produce all relevant documents from DSS.

18. It appears from defendants' response that the document that summarizes federal reimbursement under the Waiver for FY 2003 is now available. Plaintiffs will be satisfied if the most recent summary is produced.

22. The Court has recognized the relevance of the Regional Priority Setting process in its Ruling on Plaintiffs' and Defendants' Motions for Reconsideration. This request seeks documents relating to this priority setting, including forms relating to the priority setting. Defendants have not produced these forms. Defendants claim they are "willing to check" to see

if such forms exist, but stop short of responding as requested. Plaintiffs request an order requiring the identification and production of these documents.

Plaintiffs also request a copy of all documents related to the assessment process used determine priority on the DMR Waiting Lists. Defendants still assert they do not understand the request. An order is requested that directs defendants to respond to all of these important requests.

24. Defendants' Response to Motion to Compel indicates that they will produce documents in their possession, but that they will not obtain data that is readily available on their computer at the experts' request. Defendants' assertion that they have provided documents from which current data may be obtained is not accurate. Defendants have refused to supply plaintiffs experts with such readily available information as the number of persons each DMR region serves (24a.), the number of persons currently on the Waiver (24b), the number of persons currently on the DMR Residential Waiting List (24c), the number of persons who are currently listed as Emergency cases on the DMR Residential Waiting List (24d), the number of DMR clients currently living in nursing homes, regional centers and other similar institutions who have recommendations in their Overall Plans of Service to move to an alternative setting (24 e –i), the number of DMR clients living in ICF/MRs (24j and k) and the number of individuals current on the DMR day program waiting list (24l). It is a novel construction of the

11

federal discovery rules that plaintiffs' experts may not request and obtain such readily available

demographic data relating to issues in this lawsuit.  Defendants do not assert that this

information is not readily available.  Rather they assert that they have no obligation to calculate

data for plaintiffs and that plaintiffs can calculate their own numbers.  Again, plaintiffs are

asking for demographic data that should be available without time-consuming investigation.

Moreover, plaintiffs cannot possibly obtain this information themselves because defendants

have refused to produce the relevant data-bases so that plaintiffs could conduct these

calculations on their own.  See, defendants' objections to Requests 1-5 discussed above.

Defendants' objection is but another attempt to frustrate and delay discovery.  In

*Messier v. Southbury Training School*, for example, experts for the parties were routinely

provided data that was readily available to state professionals.  This enabled the reviewing

experts to develop opinions in a reasonable time without imposing an undue burden on

defendants.  The position the defendants have taken here, however, threatens to delay discovery

significantly.  It would be extraordinary if experts could not obtain basic demographic data

necessary to develop relevant opinions.  Paragraphs 4 and 5 of the Court's discovery order

clearly contemplate experts being able to collect data.  Defendants' refusal to provide such data,

if sanctioned by the Court, will delay this case by requiring plaintiffs to file interrogatories to

obtain basic readily available data.  Experts will then be forced to wait for months for data they

need to disclose opinions. The Court should order defendants to provide the requested demographic information so that this litigation is not brought to a virtual halt because experts cannot request and obtain the basic data they need to disclose opinions.

24.f – 24i.  Defendants' assertion that plaintiffs "never raised this issue before their Motion to Compel" is frivolous.  Plaintiffs requested the number of DMR clients in various institutional settings who have recommendations in their official plans for placement in an alternative setting (paragraphs 24f – 24i of plaintiffs' letter dated April 17, 2003) and defendants have refused to supply this data because they have no obligation to calculate such data for plaintiffs.  Again, plaintiffs are only asking for data that is or should be readily available to DMR administrators, and are not asking defendants to conduct time-consuming or burdensome calculations.

25.  The defendants' object to production of the information requested because (1) the defendants' Motion for Reconsideration has not been finally resolved, and (2) they do not understand the meaning of the term "waiver list."  As indicated on pages 14 and 15 of Plaintiffs' Memorandum in Support of Motion to Compel, the term "waiver list" means the same thing as Home and Community Based Waiver for persons with Developmental Disabilities.  Defendants now assert that they are still uncertain as to what is meant by a listing of individuals on the HCBW.  Plaintiffs request an order requiring defendants to comply with

requests 25 e and f as the clarification provided in plaintiffs' memorandum addresses any legitimate concern the defendants might have.

27. On page 15 of their Memorandum in Support of Motion to Compel the plaintiffs assert that defendants produced a training curriculum outline, rather than the "prior Case Management Training Manual" as requested. Defendants' response is that they have no such Training Manual. Defendants' response is not accurate as can be seen from the attached exhibit 10b to the deposition of Martha Shippee. (Attachment B.) Plaintiffs request an order requiring defendants to produce a copy of any "prior Case Management Training Manual in light of their failure to comply.

29. The plaintiffs have asked for documentation the defendants have as to the training case managers received during 2001, 2002 and 2003. This is clearly relevant to determine what training case managers have had on the HCBW and on the development and implementation of individual plans for each class member. Defendants claim now claim they need more specific information as to the documents and data that are requested. Again, the plaintiffs' experts have been as clear as they can be given the fact that all of the relevant information is in the possession and control of defendants. Defendants claim that this is a matter that should have been discussed before the Motion to Compel was filed. Plaintiffs agree, but as class counsel was not successful in contacting opposing counsel over a three-month period or in obtaining a

14

written response to plaintiffs' letter dated June 4, 2003. As case managers are the primary contacts between DMR and class members, the training they have received is very important. Plaintiffs therefore request an order requiring defendants to produce the DMR documents and data on the training of case managers as requested.

30. The plaintiffs' experts requested a "Survey Conducted by the Case Manager Task Force" that was described to them during their initial expert visitation to Connecticut. Defendants' provide a single blank survey form in response. (Attachment C.) Defendants claim that this should have been discussed before the Motion to Compel was filed and that they might be willing to produce the survey if more specific information is provided. Defs' br. at 14. Plaintiffs made every reasonable effort to discuss this matter with opposing counsel prior to filing the Motion to Compel, but were not successful in reaching him. See, Declaration of Good Faith Attempts to Resolve Dispute attached to Motion to Compel. Defendants should not be heard to complain that additional efforts to elicit his cooperation should have been made. Moreover, defendants cannot defend by claiming they need more information when the existence of this survey was disclosed to plaintiffs' experts by DMR employees in the presence of opposing counsel. Defendants should be ordered to produce the survey.

31. This request asks for fourteen categories of documents maintained by the Regional Planning and Resource Allocation Teams. As these teams are the ones that determine the

15

priority of each class member and determine which class member will receive the scarce

resources that are available, this information is critical.  Defendants' opposition claims that this

request involves arguments that are being addressed in the pending Motions for

Reconsideration.  Defs' br. at 14.  A cursory review of paragraph 31 of plaintiffs' April 17,

2003 letter, however, reveals that only two of these requests for documents (¶¶ 31 h and l)

involve the release of confidential information that might be impacted by the Ruling on the

Motions for Reconsideration.  Defendants' further response – that they will examine what has

been produced to determine if supplementation is appropriate – is not acceptable.  Defendants

may not refuse to participate through telephone contacts or in writing in attempts to narrow the

parties' differences over discovery, then assert in opposition to a motion to compel that they

have had an insufficient opportunity to determine if the production of additional documents is

appropriate.  This request seeks documents that have clearly not been produced (e.g. minutes of

the Planning and Resource Allocation Team Meetings).  Defendants must be ordered to produce

the requested documents to avoid further time-consuming and perhaps unproductive dispute

resolution over defendants' purported reassessment as to whether these documents should be

produced.

31g.  Of the fourteen requests for documents relating to the Regional PRAT teams,

defendants now concede it will check to see if they will specify the number of DMR clients

16

placed in residential settings other than the family home or Opportune settings during the years specified. Suffice it to say that nearly forty days have passed since defendants' brief was filed, and no additional information or correspondence relating to this request has been received. Plaintiffs request that defendants be ordered to respond to this request.

35. Defendants' Response to this request is inadequate. Defendants initially objected on the ground that providing these computations would be unduly burdensome and that they had no obligation to obtain data for plaintiffs' experts. Now that plaintiffs have pointed out on page 18 of their Memorandum in Support of Motion to Compel that David Parella, the DSS employee charged with overseeing Connecticut's Medicaid Program, testified during his deposition that the average cost computations requested are reported to the federal government quarterly, defendants say they will check on this. Defendants have a duty to make reasonable inquiry before stonewalling discovery requests. Plaintiffs should not have to take a deposition of state officials to establish the feasibility of producing requested data. Moreover, though plaintiffs' brief containing this assertion was filed on July 16, 2003, nearly three months ago, defendants have made no effort to supply the requested data. Once again, an order requiring full compliance is necessary.

36. Defendants argue that they need not produce the documents requested because they are covered by the pending Motion for Reconsideration. Please see the above response to

numbers 1-4, 14 and 15 relating to defendants' inconsistent position on whether the Court's ruling will impact these discovery requests. Moreover, while it is conceivable that some relevant documents may contain confidential information about class members, it is inconceivable that all or substantially all of the requested documents contain information protected by HIPAA.

In addition, Defendants claim that they are justified in not producing the documents produced by or for the Statewide Waiver Liaison Committee because they were not aware that relevant documents had not been produced as plaintiffs allege. Defendants may not use their own failure to participate in dispute resolution as required by Local Rule 37(a)2 as an excuse for not supplying the documents sooner. Moreover, their assertion that the "will check on the alleged missing documents and will respond promptly" is inadequate in light of the several months that the necessary documents have been withheld from plaintiffs' experts.

39. Plaintiffs requested a copy of the Quality Job Performance Standards for case manager supervisors on April 7, 2003. Defendants August 29, 2003 response is that they will verify whether the draft document they produced was the correct document. As of this date plaintiffs have received no further response. As six months have passed since the request was originally made by plaintiffs' experts, an order requiring full compliance is requested.

46. Plaintiffs' request for a copy of any "Medicaid Waiver Enrollment forms used by

DMR or DSS" should have been responded to with a clear listing of the relevant forms and production of those forms. Rather defendants' response hopelessly confuses the issue by stating in their June 2, 2003 response "Material responsive to this request has already been provided. See Item 9 in Defendants' Response to Plaintiffs' "Request for Disclosure and Production, dated May 7, 2003." Defendants now claim that the confusion was caused by the fact that their response referred to Request for Production #9, rather than Interrogatory #9. Plaintiffs request that the Court order the defendants to identify and produce the handful of forms that are used during the enrollment process by DMR or DSS, rather than require the plaintiff to guess whether the forms produced in response to a previous discovery request are fully responsive.

53. The plaintiffs requested "a copy of each written notice of appeal rights." Defendants' response refers to "Item 23 in Defendants' Response to Plaintiffs' Request for Disclosure and Production, dated May 7, 2003." Plaintiffs objected to this response as it apparently refers to the Family Member's Handbook which was produced in response to another discovery request and the Family Member's Handbook does not address appeal rights. Defendants now indicate that "There is no other written notice of appeal rights." Defs' br. at 16. This issue could therefore be resolved by supplying a copy of the Family Member's Handbook defendants rely upon with the representation that there is no other written notice of

19

appeal rights.

54. As the defendants have clarified that there is no Waiver Manual, plaintiffs would request that the Court order defendants to identify the forms they rely upon as "describ[ing] the way the Waiver is administered" so that the experts reviewing defendants' response will be able to understand what documents defendants rely upon.

55-56. Defendants argue that plaintiffs' experts must visit each case manager's office and each office of the regional Planning and Resource Allocation Teams to review the files they maintain on the 26 *individual plaintiffs*. Defendants are silent as to how copies of these documents will be produced, though the experts' request clearly asks for copies of the case management and PRAT files on each of the 26 individual plaintiffs. Plaintiffs object as such an effort will require plaintiffs' experts to visit some 25 – 30 different offices located in different locations throughout the state, and still does not resolve the copying issue. Moreover, because the existing Court orders require defendants must redact any information about the guardians and family of class members other than individual plaintiffs before the experts may review them. Since central review and copying is therefore required before disclosure of these files it makes little sense to require the costly and time-consuming discovery process defendants are insisting upon. In light of the undue burden of forcing plaintiffs' experts to travel to 25 – 30 individual case management and/or PRAT offices, and the uncertainty as to how the copying of

20

these files will occur, plaintiffs request that the Court order the defendants to produce copies of the case management and PRAT files for each of the named plaintiffs.

Defendants suggest that the Court has no authority to require defendants to produce copies of the documents requested in discovery. It is clear, however, that the opposite is true. Federal courts clearly have the authority to under Rule 34 to order the production of copies of documents at any reasonable time, place and manner. 83 A.L.R. 302; *Compagnie des Bauxities de Guinea v. Insurance Co. of North America*, 651 F. 2d 877, 883 (3rd Cir. 1981). The Court may require plaintiffs to inspect documents at the convenience of the party possessing them in certain situations, such as where the documents requested are so voluminous that copying and transporting the documents would be unduly burdensome. *Id.* Such exceptional circumstances do not apply to a request for copies of case management and PRAT Team records for 26 individuals, however. Defendants have already produced for plaintiffs copies of the files of the individual plaintiffs. By contrast, the case management records can be expected to be limited and the PRAT teams may not have files relating to many of the individual plaintiffs. In light of any showing of undue burden or other exceptional circumstance warranting plaintiffs' experts travel to Connecticut and review these files at 25-30 different locations, copies of these limited files should be ordered produced at the offices of David C. Shaw, within two weeks.

## II. CONCLUSION:

The plaintiffs request that the Court enter the orders requested by plaintiffs in their

Memorandum in Support of Motion to Compel as amended by the comments contained herein.

PLAINTIFFS,

By _____
David C. Shaw, Esq.
34 Jerome Ave., Suite 210
Bloomfield, CT 06002
Fed. Bar No. ct05239
Tel. (860) 242-1238
Fax. (860) 242-1507

22

# LAW OFFICES OF DAVID C. SHAW, LLC

Attachment A

34 Jerome Ave., Suite 210
Bloomfield, Connecticut 06002

David C. Shaw
Andrew A. Feinstein

Telephone: (860) 242-1238
Facsimile: (860) 242-1507

June 4, 2003

VIA FACSIMILE
AND FIRST CLASS MAIL

Thomas B. York, Esq.
Dilworth, Paxson LLP
112 Market St., 8th Floor
Harrisburg, PA 17101

Re: *Arc/CT v. O'Meara*

Dear Attorney York:

I have received your letters of May 20, 2003 and May 27, 2003 containing objections to our April 17, 2003 request for documents. I have also received your letter dated June 2, 2003 indicating that a number of documents have been produced. I have not as yet received any documents, however, other than the three categories of documents included with one of your letters dated June 2, 2003. I am therefore writing to request delivery of the documents you claim to have produced and to attempt to resolve our differences as required by Local Rule 9. My comments/objections relate to the numbered paragraphs contained in our April 17, 2003 letter.

1. You indicated during our telephone conference on May 22, 2003 that you would stand by your objections to paragraphs 1, 2, 3, 4, 14 and 15. I will therefore file a motion to compel unless you indicate that you have changed your mind.

2. See response to paragraph 1 above.

3. See response to paragraph 1 above.

4. See response to paragraph 1 above.

5.c. I would ask you to reconsider your objection. To the extent there is confusion about the scope of the requests, I would ask that you produce the reports generated from the PC database on the DMR Residential Waiting and Planning Lists for the last five fiscal years and would clarify requests 3 and 4 such that reports generated from the CAMRIS and DSS databases relating only to the HCBW and the DMR Residential Waiting and Planning Lists over the past five years are produced.

Thomas B. York
June 4, 2003
Page two

     6. This request for all correspondence between the two defendant state agencies related to the HCBW from January 1, 1998 to April 15, 2003 is reasonable given the scope and importance of this case. I would ask you to reconsider. Please let me know if there is any possibility of compromising on this dispute.

     7. You have objected to the production of all correspondence with the federal government about the Waiver, but then in your June 2, 2003 have produced one document and stated that all other documents responsive to this request have been produced. I would ask you to drop your objection and either produce copies of all of the documents our experts have requested or at least provide a listing of documents so that there can be no dispute as to the documents that are responsive. Your statement that all other responsive documents have been produced is not acceptable without identification of those documents.

     8. The request asks for all audits (and related documents) DSS or the federal government conducted of the HCBW from January 1, 1998 to the present. Your response refers to only one audit conducted by the federal government. The experts are entitled to a complete response. Please identify every audit conducted by DSS and/or the federal government and all related documents and produce those audits and documents or indicate that no such audits were conducted and no such documents exist.

     9. Your letter dated May 27, 2003 contains an objection to the request for the production of reports produced by Dr. Staugaitis, yet your June 2nd letter contains a response. Please withdraw your objection in light of your answer and produce all of the documents that are responsive.

     10. Your letter dated May 27th notes an objection to this request for reports from Dr. Wagner's office, yet your letter date June 2nd apparently contains responsive documents. Please withdraw your objection and produce the documents you indicate are responsive.

     11. Your response to paragraph 11 is evasive. The request clearly asks for drafts and documents written from or to CMS. Your answer is limited to any documents that DMR might have. This is not fully responsive and must be corrected immediately by the identification and production of documents from DSS.

     12. Your response to this paragraph is not understandable. Your letter dated May 27, 2003 contains an objection to paragraph 12, and paragraph 9 of your June 2nd letter refers to certain documents produced by Dr. Staugaitis' office. Again, this is not responsive. Please identify and produce each document that is responsive to this request.

     13. Your response refers to an attachment 13, which attachment has not been produced within the agreed-upon time frame.

Thomas B. York
June 4, 2003
Page three

14. You indicated during our telephone conference on May 22, 2003 that you would stand by your objections to paragraph 14. I will therefore file a motion to compel unless you indicate that your position has changed.

15. You indicated during our telephone conference on May 22, 2003 that you would stand by your objections to paragraph 15. I will therefore file a motion to compel unless you indicate that you have changed your mind.

16. We have not received the documents you claim to have attached within the agreed-upon and court ordered time frame.

17. This response is evasive as it indicates only that DMR does not possess documents that are responsive, without indicating whether DSS has any such documents. I will prepare a motion to compel unless you can provide an amended response.

18. You have not responded fully to this request. Only FY 2000 – 2002 are covered.

21, 22, 23, 24. You claim to have produced responsive documents, but those documents have not been produced within the time specified in the court order. Moreover, your response to paragraph 24o is inadequate in that it does not identify and produce the literature and forms you claim are responsive.

25. Your response to document request 25.a. - d. is unacceptable for the reasons stated in the two memoranda we filed in support of our motion to compel production of confidential information about persons on the DMR Residential Waiting and Planning Lists. Your objection to ¶¶ 25 e.-f. claims that you do not understand the meaning of the term "waiver list". Please answer these production requests for persons enrolled in the Home and Community Based Waiver for persons with Developmental Disabilities. We will of course pursue our motion to compel production of documents which you claim contain information protected by HIPAA. Your objection that information sought on persons on the DMR Residential Waiting List is irrelevant seems farfetched in light of the fact that DMR indicates that serving persons on this list are DMR's most critical priority and that DMR is unable to say which of these persons meet the Court's class definition. Please indicate whether you will withdraw this as a basis for withholding documents from plaintiffs' experts.

26. Your response – that these documents have been requested from the Region – is not acceptable in light of the Court deadlines for completing expert discovery and that the request was made forty-five days ago. Hopefully these documents can be provided by the end of the week.

Thomas B. York, Esq.
June 4, 2003
Page four

27, 28.  You have indicated that the requested documents containing data on training that case managers have received on the HCBW during calendar years 2001, 2002 and 2003 have been produced when in fact we have received no documents to date.

29.  Your letter dated May 27, 2003 raises an objection to the production of data on the training DMR and DSS staff have received on the HCBW during 2001, 2002, and 2003.  In an attempt to resolve your concerns about the meaning of the phrase "Survey of staff: re training" please respond by producing the documentation and data that exists on the training DMR and DSS staff received on the HCBW during 2001, 2002 and 2003.

30, 31.  Your response indicates that documents have been produced and that others have been requested in response to these requests.  We have not received any such documents and do not agree with any further delays in the production of the requested documents given the Court's schedule.  I also note that you have withheld some documents based on an Objection to ¶ 31.  I expect that documents withheld based on confidentiality will be produced as soon as the Court ruling on our motion to compel is received.  I would ask you to withdraw your objection to the extent your objection is based on burdensomeness or relevance as the minutes and data from the PRAT teams is obviously critical to understanding how decisions are made to provide or not provide services to persons under the HCBW.

31.g.  Your objection indicates that you do not understand the definition of the terms "new" DMR money, DCF or forensic funds.  In order to resolve this objection I request that you specify or produce documents that specify the number of DMR clients placed in residential settings other than the family home during fiscal 2001 and 2002 other than those placed in "opportune" placements.  For a definition of "opportune" please see page 117 of Kathryn Dupree's deposition.

32-34.  We have not received the documents your response indicates you have produced. We will need these documents immediately to avoid seeking a Court order.

35.  I understand from your responses dated May 27, 2003 and June 2, 2003 that you have produced documents containing old calculations as to the average cost of waiver and self-determination contracts, but refuse to provide current information about the cost of such services. It is hard to believe that this information is not available and/or included in reports prepared by DMR.  At the very least we are entitled to a statement that DMR does not have any current information on the cost of these items.

36.  You have objected to this document request yet represent in your letter dated June 2, 2003 that the relevant documents have been produced.  We have received no documents to date however.  Please produce these documents immediately so that we do not have to file a motion to compel.  If you have produced the relevant documents I would ask that your objection be

Thomas B. York, Esq.
June 4, 2003
Page Five

withdrawn.  If relevant documents have been withheld I would ask you to explain why certain documents were produced and others were not so that we can attempt to resolve our differences.

37 – 45.  Documents identified as being produced in response to this request have not been produced.  Please provide copies immediately so that we will not have to file an appropriate motion.

46.  Your response refers us to "Item 9" of your response to Plaintiffs' Motion for Disclosure and Production dated May 7, 2003.  Although it is not entirely clear whether you are referring us to your response to interrogatory 9 of that discovery response however contains an objection and therefore provides no useful information.  We would appreciate full and prompt compliance with this request as the experts are entitled to defendants' identification and production of all enrollment forms used by DSS and DMR.

47.  We have not received the documents you claim to have produced and do not find acceptable your indication than certain other documents cannot be produced because they have been requested.  Please produce all relevant documents by the June 6, 2003.

48 – 52.  Your June 2, 2003 letter indicates that you have produced the documents requested, but again we have not received them.  Please produce these documents immediately.

53.  Your response to this paragraph is not acceptable.  The request is for a copy of any written notice of appeal rights that was used by any region.  In response you refer to "item 23" of your response to plaintiffs' motion for disclosure and production dated May 7, 2003.  Please clarify your response.  Your response to Interrogatory 23 is irrelevant, and your response to Request for Production 23 is a Family Members' Handbook that is lengthy and covers a wide variety of topics.  We consider your response evasive and request a direct response to the request.

54.  You have indicated that there is not Waiver Manual but refer to "item 9".  Plaintiffs are unclear as to the significance of your reference to "item 9".  Please clarify your response.

55 and 56.  These requests ask for the case management and Planning and Resource Allocation Team files on each of the named plaintiffs.  Your response – that plaintiffs' experts must travel to each region to review them – is not acceptable.  Our experts cannot be expected to travel all over the state to review DMR files on the individual plaintiffs.  Only 26 files are involved and, based on our review, a large number of copies is not involved.  We will seek to compel production unless you can suggest some other method of getting these important documents to our experts.

Thomas B. York, Esq.
June 4, 2003
Page Six


57. As with many of the other requests for documents, the document you claim to have produced has not been provided.  Please produce documents that are responsive immediately.

I understand from your letter that many of the requested documents will be produced upon request, others have been requested, and cannot be produced.  Please consider this my formal request to produce copies of all of the requested documents to my office by no later than Friday of this week.  With regard to your objections and requests that have not been answered with clarity, I ask that you review this letter and consult with me in an attempt to resolve our differences as required by Local Rule 9.

Sincerely,

David C. Shaw

DCS:cs

COPY

Attachment B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT


Civil Action No. 3:01CV1871 (JBA)


- - - - - - - - - - - - - - - - - - - - - - - -

ARC/CONNECTICUT, officially known as
Association for Retarded Citizens of
Connecticut, Inc., on behalf of its members;
et al.,

                    Plaintiffs,

          vs.

PETER H. O'MEARA, in his official capacity as
Commissioner of Mental Retardation for State
of Connecticut; and Patricia A. WILSON-COKER,
In her official capacity as Commissioner of
Social Services for State of Connecticut;

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - -


         DEPOSITION OF MARTHA SHIPPEE
              June 10, 2003



# CUNNINGHAM SERVICES®
### LEGAL AND CORPORATE SUPPORT SINCE 1965

NATIONAL HEADQUARTERS
111 GILLETT STREET • HARTFORD, CONNECTICUT 06105
TELEPHONE (800) 842-4486 • FAX (800) 600-2216
www.cunninghamservices.com

M. SHIPPEE - 06/10/03

2

1  A p p e a r a n c e s:

2      For the Plaintiffs:

3          LAW OFFICES OF DAVID C. SHAW, LLC

4          34 Jerome Avenue, Suite 210

5          Bloomfield, Connecticut 06002-2445

6          (860) 242-1238

7              By:  DAVID C. SHAW, ESQ.

8

9      For the Defendants:

10          DILWORTH & PAXSON, LLP

11          112 Market Street, 8th Floor

12          Harrisburg, Pennsylvania 17101-1236

13          (717) 236-4812

14              By:  STEVEN B. GOODMAN, ESQ.

15

16

17

18

19

20

21

22

23

24

25

# PURPOSE

Attachment B

The purpose of this manual is to provide case managers and other staff in the regions and training schools with a guide to implement the Medicaid Waiver process.

The directors and assistant directors of case management received training on the Medicaid Waiver process from the Central Office Division of Service Development and Support and will conduct training with case managers.

This manual will also serve as a resource book to be used as reference material for information regarding the Medicaid Waiver.

Shippee 12-B
EXHIBIT
6/10/03

# TABLE OF CONTENTS

PageNumber

I.   Introduction...................................................................................... 1

II.   The Medicaid Waiver............................................................................ 2

III.   Administration of the Medicaid Waiver.................................................. 3

IV.   Home- and Community-Based Services Under the Waiver......................... 4

V.   Operating Principles............................................................................. 5

VI.   Process for Enrollment......................................................................... 6
    A.  Informed Consent Determination Form
    B.  Beneficiary Choice Form
    C.  Certification of Need Form
    D.  Referral to District Office Form
    E.  Notification of Waivered Services

VII.   Time Lines.......................................................................................... 14

VIII.   Documentation..................................................................................... 15

IX.   Definitions............................................................................................ 16

Appendix

  A.  Questions/Answers Regarding Medicaid Waiver Program

  B.  Forms for Copying

Attachment C

# DEPARTMENT OF MENTAL RETARDATION
## CASE MANAGEMENT SURVEY
### JUNE, 2000

The following survey was developed to evaluate job satisfaction.  Your help in completing this survey is appreciated.

1.  **My function is:**
    Case Manager _____
    Advocate _____
    Support Broker _____
    Support Coordinator ____
    Team Leader _____

2.  **My State job title is:**
    Case Manager/SW _____
    MR Program Supr _____
    Other (identify)_____

3.  **Region/STS**
    NW ____
    NC ____
    EA ____
    SW ____
    SC ____
    STS ____

4.  **The frequency of the contacts that I have with the people on my caseload meet the needs of consumers/families:**
    N/A _____ Strongly Disagree ___ Disagree ____Neutral _____ Agree _____ Strongly Agree _____

5.  **I am able to maintain the requirements of my caseload:**
    N/A _____ Strongly Disagree ___ Disagree ____Neutral _____ Agree _____ Strongly Agree _____

6.  **The training I need is available and relevant:**
    N/A _____ Strongly Disagree ___ Disagree ____Neutral _____ Agree _____ Strongly Agree _____

7.  **I have the supports available for job efficiency:**
    A.  Clerical Support:
    N/A _____ Strongly Disagree ___ Disagree ____Neutral _____ Agree _____ Strongly Agree _____
    B.  Phone:
    N/A _____ Strongly Disagree ___ Disagree ____Neutral _____ Agree _____ Strongly Agree _____
    C.  Computer
    N/A _____ Strongly Disagree ___ Disagree ____Neutral _____ Agree _____ Strongly Agree _____
    D.  Car:
    N/A _____ Strongly Disagree ___ Disagree ____Neutral _____ Agree _____ Strongly Agree _____

8.  **I am satisfied with my job:**
    N/A _____ Strongly Disagree ___ Disagree ____Neutral _____ Agree _____ Strongly Agree _____

9.  **I receive the support I need from my supervisor?**
    N/A _____ Strongly Disagree ___ Disagree ____Neutral _____ Agree _____ Strongly Agree _____

10. **I receive the support I need from administration?**
    N/A _____ Strongly Disagree ___ Disagree ____Neutral _____ Agree _____ Strongly Agree _____

**11. Comments:  Please feel free to add comments in the area below or explain why you are, or are not satisfied.**

_____

_____

_____

_____

_____

_____

**12. A Case Manager Day is being planned for the fall.  Please list topics of interest to you.**

_____

_____

_____

_____

_____

**Thank you in advance.**
**Please submit completed surveys by July 1 to:**
Terry Cote
DMR Central Office
460 Capitol Ave
Hartford, CT 06106

c cmsurvey.doc

## CERTIFICATION

     This is to certify that a copy of the foregoing was mailed first class, postage prepaid to counsel of record on October 10, 2003:

Hugh Barber, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas M. Fiorentino, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas B. York, Esq.
Dilworth, Paxson LLP
112 Market St., 8th Fl.
Harrisburg, PA 17101

Mark R. Carta, Esq.
Rucci, Burnham, Carta
  & Edelberg, LLP
30 Old Kings Hwy. South
Darien, CT  06820


_____
David C. Shaw, Esq.

23