UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*FILED*
*Oct 20    3 32 PM '03*
*U.S. DISTRICT COURT*
*NEW HAVEN, CONN.*

ARC/CONNECTICUT, ET. AL.                    :
                                           :        3:01CV1871 (JBA)
                    PLAINTIFFS             :
        vs.                                :
                                           :
PETER H. O'MEARA, ET AL.                   :
                                           :
                    DEFENDANTS.            :        OCTOBER 17, 2003

## PLAINTIFFS' OBJECTION TO RULING ON DISCOVERY

### I. FACTS:

This objection to the Ruling on Plaintiffs' and Defendants' Motions for Reconsideration (dkt. # 163)(hereinafter "Ruling") is filed pursuant to 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e) and 72 and Rule 2 of the Local Rules for United States Magistrate Judges.  It requests de novo review of the Ruling to the limited extent it requires written permission of guardians and family members of class members or redaction of all references to the guardians and/or family members of class members before documents maintained by defendants on class members may be obtained through discovery.

The Magistrate Judge's Ruling holds, based on the standards set out in *Lora v. Bd. of Educ.*, 74 F.R.D. 555, 578 (E.D.N.Y. 1977) that individual DMR client files containing identifying information about class members are discoverable, but that DMR documents are not discoverable if they contain identifying information about the guardians or family of those class

members.  The Ruling is not supported by existing law to the extent it holds those guardians'

and family members' confidential information contained in DMR *documents* must be treated

differently than class member's identifying information during document discovery.  Moreover,

the requirement that all identifying information about guardians and family of class members

must be redacted before they may be reviewed by plaintiffs' experts or class counsel absent

written informed consent of the hundreds, perhaps thousands of such persons who may be

mentioned in DMR documents that are relevant to this lawsuit, will significantly delay

discovery, and will cause an undue burden on and expense to plaintiffs.  Plaintiffs also request

that the Magistrate Judge's Ruling be overturned so that a workable procedure can be

established for plaintiffs' experts to interview a sample of guardians and for class counsel to

contact guardians to explore the impact of the defendants' practices on the class as a whole.

The relevant facts are outlined in the following paragraphs.

   This dispute began during a Discovery Conference convened by the Court on March 1,

2003.  The Conference was scheduled at plaintiffs' request because plaintiffs' experts were

scheduled to come to Connecticut to conduct on-site interviews and document review on April

3, 2003 and April 4, 2003 and defendants had objected to plaintiffs' request for the production

of identifying information about DMR clients on the DMR Residential Waiting and Planning

Lists ("Waiting Lists") prior to the visit so that on-site expert discovery could include, among

other things, a review of the DMR files on a sample of these putative class members.

   Defendants indicated in correspondence prior to the Discovery Conference that they

2

were prepared to disclose identifying information about only 537 persons defendants selected

from approximately 2410 names that appeared on the Waiting Lists.  Although defendants have

never disclosed how they selected only 537 out of the 2410 names that appear on the Waiting

Lists, it appears that the list was formulated by excluding all whom defendants had determined

were Priority II or Priority III on the DMR Residential Waiting or Planning lists as well as

others in the Emergency and Priority I categories whom they determined could not fall within

the class definition with sufficient certainty.[1]  *See*, Exhibit 10 to Memorandum in Support of

Plaintiffs' Request That The Names, Addresses and Other Identifying Information About DMR

Clients On The DMR Residential and Planning Lists and Their Guardians be Produced.[2]

The plaintiffs argued during that Discovery Conference that reasonable expert discovery

would be undermined by defendants' refusal to comply with the request of plaintiffs' experts

for the name, address, and DMR Region of residence, of each DMR client on the DMR

Residential Waiting and Planning Lists (hereinafter – " DMR Waiting Lists)[3] and the name,

---

[1] Defendants refused to disclose to plaintiffs' experts how the list of 537 was prepared.  Defendants' experts indicated that all information about the list would have to be obtained through Attorney York.  Attachment A to Reply to Defendants' Opposition to Plaintiffs' Request for the Names, Addresses and Other Identifying Information about DMR Clients on The DMR Residential and Planning Lists and Their Guardians [dkt. # 119], ¶ 4.  Plaintiffs indicated on pages 17 – 20 of their Memorandum in Support of Plaintiffs' Request that the Names, Addresses and Other Identifying Information About DMR Clients on the DMR Residential and Planning Lists and Their Guardians Be Produced [dkt. # 119] that there were many glaring omissions in the defendants' list of 537 and that defendants' attempt to limit discovery to this small hand-picked sample was inconsistent with existing case law, citing *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338 (N.D. Ill. 1995).

[2] This Court had previously indicated it would not assume the validity of the defendants' determination, based on these priorities, that persons categorized as Priorities 2 or 3 do not need HCBW funding.  Ruling on Pending Motions [Dkt. ## 21, 43], pp. 8, 9.

[3] The plaintiffs pointed out in their Memorandum (dkt. # 113) and Memorandum in Support of Motion for Reconsideration (dkt. # 145) that the existence of a third Waiting List – a Day Program Waiting List - was

3

address, and telephone number of the guardian of each person so identified.[4]  The plaintiffs

indicated that their experts requested the Waiting Lists so that they could identify a smaller

random sample of class members from those lists for more intense study.  Plaintiffs maintained

further that the broad discovery required in such a large class action lawsuit could not be

conducted if identifying information about class members and their guardians were redacted

from defendants' documents.

Defendants' opposed the plaintiffs' request on the ground that no discovery should be

allowed as to persons who fell within section 2(b) of the Court's class definition.  Defendants

argued in support of its position that all such persons were excluded from their list of 537

because they could not determine with reasonable certainty whether any DMR clients met the

criteria established for section 2(b) of the class definition.  Defendants argued in the alternative

---

disclosed during the initial visit by plaintiffs' experts on April 3, 2003 and April 4, 2003.  *See*, Attachment A
to Reply to Defendants' Opposition to Plaintiffs' Request for the Names ... [Dkt. #119], ¶ 12.  Plaintiffs'
experts were denied the opportunity to review the day program waiting list during their site visits, however,
because defendants refused to produce documents with identifying information about class members or their
guardians.  Defendants have raised this same argument as a justification for refusing to produce class
member files as well as a broad range of other documents and data.  Defendants' objections to nearly half of
plaintiffs' experts request for documents and data are based on the same arguments.  *See*, Exhibits A, B and
C hereto.  A Motion to Compel is currently pending before the Court relating to these discovery requests.
*See*, Motion to Compel [Dkt. # #133, 134].  Plaintiffs took the position in their memoranda that any rulings
relating to plaintiffs' request for access to confidential information about class members should apply to all
discovery, not just the initial request for access to the names of DMR clients on the DMR Residential
Waiting and Planning Lists.  Defendants oppose plaintiffs' position.  *See*, Ruling, pp. 10, 11.
[4] The issue identified in plaintiffs' Motion for the Names, Addresses and Other Identifying Information about
DMR Clients on the DMR Residential and Planning Lists and Their Guardians be Produced was whether
plaintiffs could gain access to identifying information about persons on the Waiting Lists and their *guardians*.
The Court's Ruling, however, makes clear that plaintiffs will be prohibited from gaining access to any files or
documents that contain any identifying information about the *guardians or family members* of class members.
Ruling, p. 11, n. 19.

4

that the release of any confidential information about class members would violate the Health

Insurance Portability and Accountability Act, 42 U.S.C. § 300gg et. seq. ("HIPAA").

Plaintiffs' argued that the full discovery should be permitted as to all categories of class

members and that documents and data should not be withheld based on HIPAA because the

interests of justice outweighed any claim of privilege under HIPAA and the Protective Order

previously agreed upon and endorsed by the Court provided adequate protection of confidential

information released during discovery.

On June 9, 2003 the Court issued a Ruling granting plaintiffs' request for production in

part. [Dkt. # 122]. The Court held that the plaintiffs made the requisite showing as to why

access to confidential information about persons representing all aspects of the class definition

is necessary to the full development of the record[5] and that defendants had not shown that the

requested disclosure would be unduly burdensome. Ruling on Plaintiffs' Request that the

Names, Addresses and Other Identifying Information about DMR Clients on the DMR

Residential and Planning Lists and Their Guardians be Produced, p. 9, *citing, Burka v. New*

*York City Transit Auth.*, 110 F.R.D. 660 (S.D.N.Y. 1986); *Lora v. Board of Educ.*, 74 F.R.D.

565 (E.D.N.Y. 1977). The Court noted that access to confidential information about class

members was necessary to enable plaintiffs and their experts to properly review and compare

documents maintained by various governmental offices and the need for full disclosure was

compelling in such a large and complex civil rights lawsuit. *Id.* at 11. Moreover, the Protective

---

[5] The Court noted in particular that because of the nature of the case the likelihood that plaintiffs' experts could analyze the information contained on the lists with de-identified information is slight. *Id.* at 18.

Order that had been agreed to by the parties and entered by the Court [dkt. # 62] would provide

adequate safeguards to protect identifying information that was disclosed through discovery.

*Id.* at 11, 12.[6]

The Court held that disclosure of confidential information was consistent with HIPAA

because the Discovery and Protective Orders negotiated by the parties satisfied the provisions

of HIPAA at 45 C.F.R. § 164.512(e) that permit disclosure where a court order requires such

and/or that a Protective Order has been entered by a court to safeguard confidential information.

*Id.* at 15 – 18.

The Court denied the plaintiffs' Motion in so far as plaintiffs sought access to

identifying information about the guardians of class members. *Id.* at 19. In so doing the Court

rejected plaintiffs' argument that it will be impossible to correlate information in the various

DMR and DSS files, to determine the extent to which guardians and/or family members were

involved in the development of the individual service plans of class members or to contact

guardians to determine the extent to which they were advised of their rights under the Waiver if

identifying information about guardians was withheld. *Id.* at 19. The Court held in connection

with this aspect of the Ruling that identifying information about guardians could not be released

without their consent because "the guardians' expectation of privacy is higher than those who

fall within the class definition" and because personal information about guardians was not

---

[6] In the course of its opinion the Court also prohibited discovery as to defendants' Waiting List priority system because "both parties admit that the Priority system is flawed and defendants are in the process of instituting a new system." Ruling, p. 14.

covered by the Protective Order. *Id.* at 19. "Thus, the sample of names, addresses and telephone numbers of the guardians will be produced only upon their consent which must be obtained by defendants prior to the release of this information to plaintiffs." *Id.* at 19.

Both parties moved for reconsideration of the ruling. The plaintiffs moved for reconsideration to the extent the Ruling prohibited access to identifying information about guardians in DMR records unless defendants obtain prior consent from the guardians. Plaintiffs argued that such a procedure would undermine the ability of plaintiffs' experts to review documents and data during site visits to verify or follow up on information provided during interviews with state employees, and it would prohibit plaintiffs' experts from correlating information contained in the many Regional and Central DSS and DMR offices about the information that had been given guardians about the Waiver and the extent of their participation in the development of their ward's Individual Service Plan under the Waiver. Plaintiffs also argued that the Ruling would authorize improper contacts between defendants and plaintiffs' client (the class) and would undermine class counsel's ability to represent the class. Memorandum In Support of Motion for Reconsideration [dkt. # 145] pp. 9-11. Plaintiffs also argued that obtaining individual informed consent from hundreds of class members would be time-consuming and unwieldy and would limit necessary discovery to those few guardians who could be contacted and were willing to become involved in discovery. Discovery that produces reliable and relevant expert opinions for the Court cannot be based on such limited information. Motion for Reconsideration [dkt. # 144], p. 2,

7

¶¶ 3, 4.[7]

Plaintiffs also moved to amend the Protective Order to address the Court's concern that confidential information about guardians and family members are not protected under the existing Protective Order. [dkt. # 129]. Defendants have opposed modification of the Protective Order on July 21, 2003. [Dkt. # 135]. Plaintiffs' Motion has not been ruled upon as yet.

On July 29, 2003 the Court entered an Order prohibiting either party from filing further discovery motions until the Court had an opportunity to decide the pending discovery motions. [Dkt. # 148]

On July 31, 2003 the Court denied in part and granted in part the parties' motions for reconsideration. [Dkt. # 150]. In so holding the Court acknowledged that under Connecticut law, Conn. Gen. Stat. § 45a-677(i), the guardian is the primary decision maker for class members and has a fiduciary obligation to assess feasible alternatives under the HCBW and the ICF/MR programs and make all appropriate decisions for the class member as to which of the options to select. *Id*. at 11. The Court held that discovery of documents would be permitted if they contained identifying information about class members but not if it contained identifying information about guardians.[8]  *Id*. at 12, 13. The Court ordered the parties adhere to the following process to complete discovery: First, defendants must produce a list of DMR clients

---

[7] Plaintiffs also agreed with defendants that the Court should reconsider its ruling that discovery into defendants' waiting list priority system should be prohibited. [Dkt. 146, p. ].
[8] The Court acknowledged that plaintiffs had moved to modify the Protective Order to ensure that guardians' identifying information would be protected. *Id*. at 13.

on the Waiting and Planning Lists, their addresses, Priority status, and responsible DMR

Region. *Id.* at 13. Second, plaintiffs are to select from this list a sample of individuals and

request the production of the complete files of persons in this sample. *Id.* at 13. Identifying

information about the guardian is to be redacted by defendants. Third, after reviewing the

sample of files reviewed by the experts retained by plaintiffs and defendants, plaintiffs' counsel

may ask the Court to revisit the issue of redaction of identifying information. *Id.* at 13. Fourth,

counsel for the parties are to work together to fashion a letter which addresses the concerns

about confidentiality to inform the class about the lawsuit. *Id.* at 14, 15.

Plaintiffs file this limited objection to the Ruling on the Motions for Reconsideration

because the Ruling is not supported by the applicable law, because it will unduly restrict class

counsel's ability to prepare for trial, and because it will restrict the ability of plaintiffs' experts

to conduct meaningful site visits during the course of discovery. Plaintiffs do not challenge so

much of the Ruling as requires counsel to develop and circulate to guardians notice of the

lawsuit, but argue that such a procedure is burdensome and unwarranted to the extent it applies

to discovery of *documents*. Plaintiffs also argue that telephone contact between plaintiffs'

experts and those guardians in the sample willing to discuss their circumstances with the

experts should be permitted.

## II. **ARGUMENT:**

### a. The Ruling Should Be Reversed to the Extent it Prohibits Discovery of Documents Containing Guardian and Family Identifying Information.

The Magistrate Judge incorrectly concluded that identifying information about the guardians that appears in the documents maintained by defendants is entitled to greater protection than identifying information on class members.  The Court asserts that guardians and family[9] of class members are non-parties to this lawsuit and thus retain a greater expectation of privacy.  Ruling, p. 12; *citing Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 665 (S.D.N.Y. 1986).  The Court, held, in the alternative, that to the extent the privacy interests of guardians and family are outweighed by the need to full access to DMR documents to fairly litigate this case, the existing Protective Order [dkt. # 62] does not protect information about guardians.  Ruling, p. 13.  This portion of the Ruling, to the extent it impacts discovery of defendants' documents, will significantly undermine plaintiffs' ability to litigate this case and should be reversed.

On pages 11 and 12 of the Ruling the Court finds that guardians of class members are appointed by the Probate Court for an individual found not capable of managing his/her affairs.  Conn. Gen. Stat. § 45a-677(i).  When a guardian has been appointed by the Probate Court, it is the guardian who is informed of the "feasible alternatives for available services…[including] Home and Community Based Services [and] Institutional (ICF/MR) Services."  Of particular importance is the Court's finding that –

> In order to provide information relating to their health care options, class members and potential class members may only be heard through the voice of their guardians.  It is by the very nature of one's mental condition that a guardian has been appointed to assume this role.  As the representatives of class members and potential class members, guardians have a fiduciary

---

[9] *See* Ruling, p. 11, n. 19.

obligation to obtain precisely the information that is the subject of this
lawsuit.

Ruling, p. 11.

The Court finds that under HIPAA the defendants must treat the guardians as class

members, Ruling, p. 12, citing, 45 C.F.R. § 164.502(a), and must treat guardians of class

members as their personal representatives with respect to protected health information, Ruling,

p. 12, *citing*, 45 C.F.R. § 164.502(g)(2). The Court concludes that the requirements of HIPAA

do not impede disclosure of protected health information about class members from their

guardians. *Id.* As the term "health information" includes any information that "relates to the

past, present, or future physical or mental health or condition of an individual, [or] the provision

of health care to the individual...", 42 U.S.C. § 1320d(4), access to all information in

defendants' documents relating to class members or their guardians appears to be authorized by

the Ruling on Plaintiffs' Request that the Names, Addresses, and other Identifying Information

About DMR Clients On The DMR Residential and Planning Lists and Their Guardians Be

Produced [dkt. # 122] and the Ruling on the Plaintiffs' and Defendants' Motions for

Reconsideration [dkt. # 163].

The Court holds, however, that access to defendants' documents containing identifying

information about guardians will *not* be permitted. The Court provides no explanation as to

why application for the four-part *Lora* test requires that plaintiffs' be allowed to conduct

discovery as to documents containing identifying information about class members, but not as

to documents containing guardians' identifying information, other than that guardians and

11

family members as non-parties have a greater expectation of privacy than class members.

Ruling, pp. 12, 13; citing *Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 665 (S.D.N.Y. 1986). Neither the *Burka* case, nor any of the cases cited therein, however, support the Court's conclusion.

The *Burka* Court concluded by applying the four-part balancing test established in *Lora v. Board of Educ.*, 74 F.R.D. 565 (E.D.N.Y. 1977)[10] that plaintiffs' counsel would be accorded access to the files of non-party employees of the New York Transit Authority who tested positive for marijuana. In assessing the second prong of the *Lora* test, relating to the employees expectation of privacy, the Court observed that "[a] further consideration in weighing the expectation of privacy is the relation to the litigation of the party with the interest in confidentiality." 110 F.R.D. at 665. The Court explained that discovery depends on whether the person from whom discovery is sought has a stake in the outcome of the litigation. *Id.* The Court held that discovery would be allowed as to the non-party employees because the plaintiffs were seeking to protect the rights of some of those employees. Of particular importance here is the *Burka* Court's description of how the non-party Transit Authority employees' interest in privacy was to be balanced against the plaintiffs' counsel's need to review the files of those employees to determine how many of those employees had been subjected to improper testing procedures and were therefore potential class members:

---

[10] This four-part test requires the balancing of four factors to determine the discoverability of confidential information: 1) the nature of the privacy interest; 2) the expectation of privacy; 3) the person's interest in disclosure; and 4) the limitations on disclosure. *Burka,* 110 F.R.D. at 663-667.

A litigant himself must reasonably anticipate that his personal matters will be disclosed, while a non-party having no stake in the litigation retains a greater expectation of privacy. *See Inmates of Unit 14 v. Rebideau,* 102 F.R.D. at 126 (personnel files of defendant prison guards disclosed). The instant case falls between these two extremes. Until a class is certified, employees of the TA other than the named plaintiffs are not parties to this action. On the other hand, the plaintiffs are asserting claims that affect the rights of other employees. This case, then, is more akin to *General Motors Corp. v. Director of National Institute for Occupational Safety and Health,* 636 F.2d 163 (6th Cir. 1980), *cert. denied,* 454 U.S. 877, 70 L. Ed. 2d 187, 102 S. Ct. 357 (1981), where a government agency sought employee medical records to determine if they were being subjected to a health hazard. In that case, as here, the expectation of privacy did not preclude limited disclosure of information to a party acting for the benefit of the employees. *Burka,* 110 F.R.D. at 665.

In *Lora,* the Court reached the same conclusion – that the interests of justice outweighed the privacy rights of the students and that plaintiffs' experts would be allowed to review the psychiatric and social work records of randomly selected records of children who were not class members in order that the plaintiffs' expert might prepare to testify at trial about plaintiffs' claim that the placement standards used by the Board of Education were capricious, arbitrary and discriminatory.

Similarly, in the case relied upon by the *Burka* court, *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 126 – 128 (N.D.N.Y.1984), the Court held that the privacy interests of non-party correction officers were outweighed by the need of the inmate plaintiffs to review the personnel files of those correction officers to investigate the inmates allegations of abuse. Again, the interests of justice outweighed the assertions of privacy of the nonparties because of

13

their relationship to the litigation.

The Magistrate Judge did not assess the stake guardians and family have to this litigation or whether that relationship together with the plaintiffs' compelling need for access to defendants' documents without redactions required that plaintiffs be given full access to the unredacted documents of defendants. Moreover, the Court did not determine whether application of the *Lora* test requires that plaintiffs be given full access to defendants' documents on the one hand, but more limited access to the guardians through the telephone or through person-to-person contacts. Instead, the Court states that the fact that guardians and family members are not parties in and of itself is sufficient to defeat plaintiffs' discovery.[11] The Court appears to assume that allowing access to guardians' and family identifying information would result in hundreds of unsolicited telephone calls to uninformed guardians. With respect to document discovery this is clearly not the case and any potential for abuse has been addressed by the Protective Order or can be addressed through such further orders as will strictly limit the use of documents obtained through discovery. The Court's analysis and conclusion, therefore is severely flawed. A proper application of the *Lora* standards clearly leads to a different conclusion particularly as it relates to plaintiffs' access to documents.

In conducting the required analysis the Court should take into account the Magistrate Judge's finding that the guardians play an integral role in decision-making for class members.

---

[11] The Court's assumption that guardians are not parties is not accurate. As the HIPAA statute and regulations and Connecticut law related to guardianship indicate, guardians in their representative capacities stand in the shoes of class members and have a direct and important stake in the outcome of this litigation. *See,* Ruling, p. 11.

In fact, due to the limited mental capacities of almost all class members, the guardians are consulted and make virtually all relevant decisions for class members. Ruling, p. 11. Guardians, as the Court has noted, sign the application for HCBW funding, make the choice between HCBW and institutional ICF/MR services, are the persons who would sit with DMR employees to develop Individual Service Plans under the Waiver for class members, and would be the most important source of information about what advice they were given about the HCBW, their right to appeal adverse determinations under the Waiver, and the extent to which they were meaningfully involved in the service planning process. Guardians, therefore, have a direct and important relationship to this litigation and have a significant stake in obtaining the HCBW funding necessary to avoid the hardships they endure on a daily basis as outlined in the Second Amended Complaint. The Court should therefore conclude that the privacy interests of the guardians of class members must give way to the greater need to properly litigate this important civil rights case.

The Magistrate Judge reached the same conclusion as to family members who may be mentioned in defendants' documents. Ruling, p. 11, ¶ 19. Again, there is no analysis as to the stake family members have in obtaining appropriate services under the Waiver, or whether the necessities of access to fully litigate those interests outweigh any privacy interests.[12] Again, it is clear from the Second Amended Complaint that the family members who are caring for class

---

[12] Although full discovery has not been completed on this point, plaintiffs assert, on information and belief, that virtually all class members have a guardian appointed by the Probate Court and that that guardian is typically a family member.

members, in the absence of any support from defendants, have as great a stake in the outcome of this lawsuit as the class members themselves. The plaintiffs assert therefore, that to the extent the names of family members not named as guardians appear in DMR documents, that the second prong of the *Lora* test should be resolved in favor of full access by plaintiffs to defendants' documents, without redactions.

The Magistrate Judge apparently reached the opposite conclusion in part because she did not fully appreciate the importance of determining to what extent guardians have been properly advised and participate in the development of their ward's Individual Service Plan and/or the adverse impact the discovery procedure described by the Court will have on plaintiffs' ability to represent the class. It seems obvious, however, from the findings that appear on page 11 of the Ruling, and from the discovery that will be necessary to prove the violations of rights alleged in the Second Amended Complaint, Count I (failure to provide adequate services), Count II (failure to provide services with reasonable promptness); Count III (failure to provide a choice of services), Count IV (failure to inform guardians and provide and opportunity to apply), Count V (failure to provide meaningful input into development of the Individual Service Plan), Count VI (failure to provide services in the most integrated setting appropriate) and Count VIII (failure to provide notice and an opportunity to apply for a hearing before DSS) that discovery as to the guardians' identifying information is necessary.

Moreover, in balancing the plaintiffs' interest in gaining access to DMR documents against the guardians' interest in privacy the Magistrate Judge appears to have misunderstood

the nature and scope of discovery that will be necessary in this lawsuit. The Court assumes, for example, based on defendants' arguments, that the only expert discovery that will be necessary is the review of a sample of files selected by the plaintiffs' experts. Ruling pp. 13, 14. As a result, the Court envisions a neatly sequenced discovery process that will enable defendants to redact guardian information. The proposed discovery sequence includes: 1) disclosure of the names of persons on the Waiting lists by defendants; 2) identification of a sample of those individuals by plaintiffs; 3) production of the complete files of those individuals with guardian information redacted by defendants; 4) revisiting the question of the necessity of redaction of guardian identifying information after the reviews of plaintiffs' and defendants' experts is complete; and 5) simultaneous efforts by counsel to obtain informed consent from the class. Ruling, pp. 13-15. This does not reflect an accurate view of the discovery that will be necessary in this case. In fact, experts will base their opinions on a review of a sample of class member files, as well as site visits, interviews with state officials and contemporaneous review of documents and data during the on-site review, and off-site review of documents identified for production during the on-site visit.

As can be seen from a review of the attached exhibits A, B, and C. on April 17, 2003 plaintiffs' experts indicated, based on a limited site visit to Connecticut, that a relatively broad array of DMR documents and computer data have been identified as needed, based on a preliminary review, that are not contained in individual DMR client files. Defendants' have objected on document requests 1-4, 5c, 6, 7, 9, 10, 12, 14 - 16, and 25, among others, on the

ground that disclosure will violate HIPAA.  The fact that many objections to expert document

requests can be expected can be seen from ¶ 5 to the Declaration of plaintiffs' expert, Celia

Feinstein.  According to her:

> 5.  Based on my review of the files of the files of the individual plaintiffs it
> is clear that almost every significant document in DMR client files contain
> identifying information about the DMR client, his guardian or responsible
> family member.

Exhibit D, ¶ 5.

It is readily apparent that plaintiffs cannot accurately assess the involvement of

guardians in the planning process if all identifying information about them is deleted.[13]  The

discussions case managers have had with guardians as documented in the case management

files, guardian involvement in the development of the Individual Service Plan as documented in

the individual client files and the requests for due process through the DSS fair hearing process

cannot possibly be assessed and analyzed if the names of the person with whom state officials

spoke is redacted from each of the files.

Moreover, expert discovery will be substantially undermined if plaintiffs' experts are

required to wait to review documents during site visits to Connecticut until after defendants'

redact the hundreds of references to guardians and family members.  Expert discovery will be

undermined if plaintiffs' experts cannot simultaneously interview state employees and review

relevant documents during their expert tours to verify and/or follow up on statements made by

---

[13] For the same reasons, the assessment of the involvement of family (for those who do not have a guardian)
cannot be assessed if all references to family members are deleted from defendants' documents.

state employees. Experts clearly will not be conducting an adequate analysis if they are forced

to accept at face value what state employees tell them about the implementation of the HCBW

without the ability to review defendants' documents and data to verify the accuracy of what

they have been told and conduct an immediate follow up on information they have been given.

Plaintiffs' expert has offered the following opinion on this subject:

> 6. In my opinion it would be very time consuming and labor intensive for
> DMR to redact all identifying information about a DMR client's guardian
> and/or family from every document before we could review the file. Such
> a process would probably delay the discovery process considerably.

Exhibit D, ¶ 6.

Finally, in balancing the interest of guardians in redacting identifying information from

DMR client files against the plaintiffs need for discovery the Court seems to have wrongfully

assumed that class counsel can fulfill his duty to the class by essentially being limited to a

review of files reviewed by the experts for the parties. According to the Court, class counsel

will not be permitted to review documents with guardians' identifying information, absent

consent of the guardian[14], until redacted copies of the files identified by plaintiffs' and

defendants' experts have been reviewed. Ruling, p. 14. As the review of the files of

defendants' experts cannot possibly occur until after the files are produced during the

depositions of defendants' experts, the Court is essentially requiring that counsel wait until the

---

[14] The Magistrate Judge states that she expects counsel for the parties to cooperate in developing a
communication to guardians that accurately describes the litigation. Ruling, p. 14, 15. But it cannot be
assumed that the process of developing such a communication will be done without difficulty, or that
adequate and sufficient discovery can be conducted by reviewing only the documents relating guardians who
respond to this written communication from counsel

eve of trial before a full assessment of the impact of the defendants' HCBW Waiver implementation can be assessed.

Class counsel has a duty to fully explore and conduct discovery as to the class as a whole as to all allegations in the Second Amended Complaint. Once the class in this lawsuit was certified, class counsel became responsible for representing the class. *Winfield v. St. Joe Paper Co.*, 1979 WL 15343 (N.D. Fla. 1979); *Blanchard v. Edgemark Financial Corp.* 175 F.R.D. 293, 301 (E.D. Ill. 1997); Newberg on Class Actions (4th ed.) § 15.18, pp. 63-65. Class counsel assumes a fiduciary responsibility and must communicate with the class so that the class as a whole is properly represented during the litigation process. Manual for Complex Litigation (3rd Ed.) § 30.2. Class counsel can hardly be expected to fulfill this responsibility if he must wait until the eve of trial to review documents that are needed for cross-examination or trial and is prohibited from reviewing comparing documents maintained in many different locations in Connecticut as to the role guardians and family play in the services planning process and the extent to which those guardians have been notified of and exercise the rights of class members under the Waiver.

The Court bases its Ruling, in part, on the fact that the Protective Order entered on September 5, 2002 (dkt. # 62) does not protect identifying information about guardians. Ruling, p. 13. Plaintiffs assert that this is not an adequate and sufficient basis for denying access to guardians' identifying information in light of the fact that plaintiffs proposed an Amended Protective Order on June 26, 2003 [dkt. 129] that would, if entered, protect identifying

20

information about guardians and family of class members. The proposed Amended Protective

Order is identical to the existing Protective Order except that it makes clear that the

requirements of the Protective Order apply to information disclosed during discovery about

DMR clients as well *as their families and guardians.*

### b. The Ruling Should Be Reversed to the Extent It Prohibits Class Counsel from Contacting the Guardians of Class Members.

The plaintiffs argue above that guardians of class members have been appointed by the

Probate Court and have a fiduciary duty to represent class members with respect to this

litigation. Plaintiffs also argue that counsel for the class plaintiffs has an obligation to fully

inform himself about the problems class members and their guardians are having relating to the

implementation of the Waiver. *Winfield v. St. Joe Paper Co.*, 1979 WL 15343 (N.D. Fla.

1979); *Blanchard v. Edgemark Financial Corp.,* 175 F.R.D. 293, 301 (E.D. Ill. 1997); Newberg

on Class Actions (4th ed.) § 15.18, pp. 63-65. In order to fulfill this obligation class counsel

must communicate with the class so that the class as a whole is properly represented during the

litigation process. Manual for Complex Litigation (3rd. Ed.) § 30.2. Class counsel cannot fulfill

this responsibility if he is effectively prohibited from communicating with the "primary

decision makers". Plaintiffs assert that contact with the guardians is necessary for them to

prepare for trial and that any expectation of privacy on the part of the guardians is outweighed

by the need to fully and fairly litigate this lawsuit.

Moreover, plaintiffs' experts indicate that an important part of their discovery will

involve "contact[ing] a sample of the guardians or other responsible caregivers for class

members to determine to what extent they participated in preparing their ward's (family member's) individual plan under the HCBW and/or were they advised of their rights under the HCBW." Exhibit D, ¶ 7. Clearly, limited contact between plaintiffs' experts and a small sample of guardians is important and should be permitted.

The Magistrate Judge's Ruling effectively prohibits contact between class counsel and his experts and the guardians of class members until after counsel for the parties agree upon a letter that is to be distributed to the class explaining the litigation and consent from the guardians is received. Ruling, p. 14. While the plaintiffs support drafting such a communication to the guardians of class members to inform the class about the litigation, such a process is not adequate to enable experts or class counsel to assess the impact of defendants' practices on the class as a whole in a timely fashion or to facilitate proper preparation of the lawsuit for trial. Such a communication clearly will not be distributed in such a fashion that direct contact between class counsel and the guardians will be possible prior to the close of the discovery period. Plaintiffs therefore request that the Court authorized class counsel to contact guardians directly to the extent necessary to prepare this lawsuit for trial.

### III. CONCLUSION:

The plaintiffs request that plaintiffs' Objection to the Ruling be sustained and that plaintiffs be authorized to conduct discovery of defendants' documents and data even though they contain references to the guardians or family of class members. Further, counsel for the plaintiff class requests permission for his experts to contact a small sample of guardians and/or

family of class members to assess the extent to which they have participated in the planning

process and/or have been informed of their rights under the HCBW and for class counsel to

contact guardians to assess the impact of defendants' policies and practices on the class as a

whole and/or to prepare his case for trial.

PLAINTIFFS,

By _____

David C. Shaw, Esq.
34 Jerome Ave., Suite 210
Bloomfield, CT 06002
Fed. Bar No. ct05239
Tel. (860) 242-1238
Fax. (860) 242-1507

# LAW OFFICES OF DAVID C. SHAW, LLC
### 34 Jerome Ave., Suite 210
### Bloomfield, Connecticut 06002

___ EXHBIT   A

April 17, 2003

David C. Shaw
Andrew A. Feinstein

Telephone: (860) 242-1238
Facsimile:  (860) 242-1507

Thomas B. York, Esq.
Dillworth Paxton LLP
112 Market Street, 8th Floor
Harrisburg, Pennsylvania 17101

By Facsimile and First Class Mail

Re:    ARC/CT v. O'Meara

Dear Attorney York:

I write to request formally the documents needed by plaintiffs' experts pursuant to paragraphs 2 and 3 of the Discovery Order of February 6, 2003. Under the Discovery Order, the requested documents must be produced within thirty days. The documents sought are:

1.    A copy of the PC data base of the DMR Residential Waiting List, produced on a compact disc.

2.    A copy of the PC data base of the DMR Planning List, produced on a compact disc.

3.    A copy of the CAMRIS data base, produced on a compact disc, relating to:
    a.    individuals enrolled in the Home and Community Based Waiver for Developmentally Disabled Persons ("Waiver");
    b.    individuals on the DMR Residential Waiting List; and
    c.    individuals on the DMR Planning List.

4.    A copy of the DSS computer data base relating to the Waiver, produced on a compact disc.

5.    As to the data bases referenced in ¶¶ 1-4, please provide the following:
    a.    General System Descriptors;
    b.    Code Book;
    c.    A listing of all reports generated from the data base from January 1, 2002 to April 15, 2003.

6.    A copy of all correspondence between DMR and DSS regarding the Waiver from January 1, 1998 to April 15, 2003. .

Thomas B. York, Esq.
April 17, 2003
Page Two

7.    All correspondence between an agency of the State of Connecticut and any agency of the federal government regarding the Waiver from January 1, 1998 to April 15, 2003.

8.    A copy of each audit DSS has conducted of the Waiver program from January 1, 1998 to April 15, 2003 together with the related documentation. 9.  A copy of each audit the federal department of Health and Human Services has conducted of the Waiver program from January 1, 1998 to April 15, 2003 together with the related documentation.

9.    A copy of each report issued from the office of Dr. Steven Staugaitis for the period of January 1, 2000 to April 15, 2003 relating to:
      a.    the Waiver;
      b.    the DMR Residential Waiting List; or
      c.    the DMR Planning List.

10.   A copy of each report issued from the office of Dr. Andrew Wagner for the period of January 1, 2000 to April 15, 2003 relating to:
      a.    the Waiver;
      b.    the DMR Residential Waiting List; or
      c.    the DMR Planning List.

11.   With reference to the most recent CMS Waiver Review:
      a.    All preliminary drafts of submissions by the State of Connecticut or any agency thereof to CMS staff or the Review Team.
      b.    All correspondence, reports, and drafts from the State of Connecticut regarding CMS Olmstead Letter 4.

12.   A copy of each report or assessment made by the DMR central office relating to the DMR Residential Waiting List from January 1, 1998 to April 15, 2003.

13.   A copy of the Individual Service Agreement that is used in the Self-Determination program.

14.   A copy of the waiting list for day programs as of April 1, 2003.

15.   A copy of the planning list for day programs as of April 1, 2003.

16.   A copy of each written communication from DMR central office to Regional Directors, regional supervisors of case managers, or regional case managers regarding compliance with the Waiver from January 1, 2000 to April 15, 2003.

17.   A copy of each document relating to the calculation of average per-client cost of the Waiver program for fiscal year ending June 30, 2002.

Thomas B. York, Esq.
April 17, 2003
Page Three

18.  A copy of each document tabulating or summarizing federal reimbursements to the State of Connecticut under the Waiver from January 1, 2000 to April 15, 2003.

19.  The organizational chart of the Department of Mental Retardation.

20.  The organizational chart of the Department of Social Services.

21.  The organizational chart for each region of DMR.

22.  A copy of:
   a.  The definition of each priority level on the Residential Waiting List and the criteria for determining priority levels.
   b.  The procedure for Determining Priority Levels on the Residential Waiting List.
   c.  The Assessment Protocol Form to determine priority level on the Residential Waiting List.
   d.  The Procedures for Assessment Process.
   e.  Minutes of meetings of the DMR group which developed the new assessment procedures and protocol.
   f.  The March 10, 2003 Working Draft of Priority Checklist.
   g.  The form used for determining priority on the Residential Waiting List prior to March 10, 2003.
   h.  The Policy on Priority Levels that explains the rankings to case managers.

23.  A copy of the July 27, 1999 Memo from Commissioner O'Meara on Residential Supports and Services.

24.  For each DMR region, as of April 1, 2003:
   a.  The number of people currently served.
   b.  The number of individuals currently on the Waiver.
   c.  The number of individuals currently on the Residential Waiting list.
   d.  The number of E priority individuals currently on the residential waiting list.
   e.  The number of individuals served by the region currently in nursing homes.
   f.  The number of individuals served by the region currently in regional centers who have recommendations on their OPS for alternative setting.
   g.  The number of individuals served by the region currently in nursing homes who have recommendations on their OPS for alternative setting.
   h.  The number of individuals with mental retardation in forensic facilities who have recommendations in their plans for an alternative setting.
   i.  The number of individuals with mental retardation in mental health facilities who have recommendations in their plans for an alternative setting.
   j.  The number of individuals served by the region currently in Private ICF/MRs.
   k.  The number of private ICF/MRs within the region, specifying the size of each.

Thomas B. York, Esq.
April 17, 2003
Page Four

  l.  The number of individuals currently on the DMR day program waiting list.
  m.  The number of current day program vacancies, by type, within the region.
  n.  The number of current residential vacancies, by type, within the region
  o.  A copy of each piece of literature and each form provided to consumers relating to the Waiver.

25.  For each DMR Region, for the period January 1, 2001 through April 1, 2003:
  a.  The names of individuals on the residential planning list for each year.
  b.  The contact information of those individuals, their priority status on the residential planning list for each year, and the time spent by each individual on that list.
  c.  The names of individuals on the residential waiting list for each year.
  d.  The contact information of those individuals, their priority status on the waiting list for each year, and the time spent by each individual on that list
  e.  The names of individuals on the waiver list for each year.
  f.  The contact information of those individuals, their priority status on the waiver list for each year, and the time spent by each individual on that list.

26.  The packet of information supplied by case managers to consumers in the Eastern Region.

27.
  a.  New Case Management Policies and Procedures for which there was training on March 28 with Terry Cote.
  b.  Prior Case Management Training Manual.
  c.  Policy on frequency of case manager visits with consumers.

28.  Schedule of in-service training for case managers for each region for 2001, 2002, and 2003 to present.

29.  Survey of staff re: training provided for 2001, 2002, and 2003 to present.

30.  Survey conducted by the Case Manager Task Force.

31.  For each regional Planning and Resource Allocation Team (or equivalent body),
  a.  The agenda for each meeting from January 1, 2001 to April 1, 2003.
  b.  The minutes of each meeting from January 1, 2001 to April 1, 2003.
  c.  Copies of each Request for Service/Support submitted from January 1, 2001 to April 1, 2003.
  d.  Copies of each vacancy report submitted to the Team from January 1, 2001 to April 1, 2003.

Thomas B. York, Esq.
April 17, 2003
Page Five

e.  A list of the members of the team (name and title) at any time during the period January 1, 2001 to April 1, 2003.

f.  The number of individuals placed in a residential setting, by year, from January 1, 2001 to April 1, 2003.

g.  The number of individuals placed in a residential setting during 2001, 2002 and 2003 to present using "new" DMR money, DCF or forensic funds.

h.  The number and name of individuals added to the waiting list, by priority category, by year, from January 1, 2001 to April 1, 2003.

i.  The number of individuals, by priority category, removed from the residential waiting list as a result of legislative appropriations.

j.  Copies of each periodic report on status of referrals from January 1, 2001 to April 1, 2003.

k.  A copy of each change of status report from January 1, 2001 to April 1, 2003.

l.  The date each individual was first placed on a priority list by category. (Initial date and when status changed.)

m.  Periodic MIS reports as of May 1, 2001 to present (April 1, 2003) that report a frequency count and a graphic representation of data that compares differences between the regions and the relative priority status of those on the waiting list.

n.  A copy of any written policies and procedures used by the Team, without regard to whether that document was prepared by the region or by the central office.

32.  The letter sent to consumers by the South Central Region about the waiver.

33.  A copy of each DMR document setting forth the file outline for case records.

34.  A copy of the DMR Resource and Planning Procedures and Policy.

35.  The average cost to the State of Connecticut of:
a.  Self-determination contracts for residential services.
b.  Self-determination contracts for day services.
c.  Waiver services for residential services.
d.  Waiver services for day services.

36.  All documents produced by or for the Statewide Medicaid Waiver Liaison Committee.

37.  A copy of each DMR document defining the terms Active Minimal, Active Ongoing, Active Periodical, and Active Intensive.

38.  A copy of the Quality Job Performance Standards for Case Managers.

39.  A copy of the Quality Job Performance Standards for Case Manager Supervisors.

Thomas B. York, Esq.
April 17, 2003
Page Six

40. A copy of the DMR Form used to request Respite Services.

41. A copy of the Individual & Family Support Request Form, No. IBPR001.

42. A copy of the placement sheet used by the South Central Region.

43. Definition of Advocate "case manager" position.

44. New Case Manager Policy due to "roll out" April 10, 2003 and April 24, 2003.

45. A copy of each DMR newsletter to families prepared and/or distributed from January 1, 2001 to April 1, 2003.

46. A copy of any Medicaid Waiver enrollment forms used by DMR or DSS.

47. A copy of the each intake form used by any region, without regard to whether the form was developed by the region or by the central office.

48. A copy of the contents of:
   a.    a residential referral packet;
   b.    a day services referral packet.

49. A copy of the form used by DMR for Individual Support Agreements.

50. A copy of each Social Service Summary Form and/or Social Summary Form used by any region, without regard to whether the form was developed by the region or by the central office.

51. A copy of any protocol or policies describing the DMR intake process.

52. A copy of DMR's new intake policy.

53. A copy of each written notice of appeal rights used by any region, without regard to whether the form was developed by the region or by the central office.

54. A copy of any Waiver Manual used by any region, without regard to whether the manual was developed by the region or by the central office.

55. A copy of the complete case management file on each named individual plaintiff.

56. A copy of the complete files of any Planning and Resource Allocation Team (or equivalent body) relating to each named individual plaintiff.

# DILWORTH PAXSON LLP

### LAW OFFICES

EXHIBIT B

May 20, 2003

**Via Facsimile and U.S. Mail**
David C. Shaw, Esq.
34 Jerome Avenue
Suite 210
Bloomfield, CT  06002

RE:    ARC v. O'Meara

Dear Mr. Shaw:

As we discussed by telephone on May 16, 2003, the Defendants are providing their objections to items 1, 2, 3, 4, 14, and 15 of your letter dated April 17, 2003.  All other objections will be provided on May 27, 2003, and responses will be provided by June 2, 2003.

As to items 1, 2, 3, 4, 14, and 15, the Defendants object as follows:

1.    The Defendants OBJECT to this request to the extent that it seeks information about persons who are not members of the class as certified by the Court.  The Defendants further OBJECT that this request seeks confidential information about these persons who are not members of the class.  The Defendants cannot release this information on persons who are not class members without violating HIPAA or other laws.  This request is overly broad and unduly burdensome, and the burden outweighs its likely benefit, taking into account the needs of the case, the importance of the issues at stake, and the importance of the proposed discovery in resolving the issues.

2.    The Defendants incorporate their OBJECTION to 1 above.

3.    The Defendants incorporate their OBJECTION to 1 above.

4.    The Defendants incorporate their OBJECTION to 1 above.

14.    The Defendants incorporate their OBJECTION to 1 above.  Without waiving this objection, the Defendants are conducting a comparative analysis of the Day Program Waiting List and list of identified class members.  Any names appearing on both lists, along with priority assignments, will be provided as soon as possible.

15.     The Defendants incorporate their OBJECTION to 14 above.

Please note that, without waiving these objections, the Defendants are willing to provide
reasonable information on any class members.

Very truly yours,

*Thomas B. York/ely*

Thomas B. York

C:     James Welsh, Esq.
       Hugh Barber, Esq.
       Thomas Fiorentino, Esq.
       Kathleen Egan

# DILWORTH PAXSON LLP

LAW OFFICES

EXHIBIT C

May 27, 2003

**Via Facsimile and U.S. Mail**
David C. Shaw, Esq.
34 Jerome Avenue
Suite 210
Bloomfield, CT  06002

RE:   <u>ARC v. O'Meara</u>

Dear Mr. Shaw:

The Defendants have already objected to items 1, 2, 3, 4, 14 and 15 of your letter dated April 17, 2003. The following are the remaining objections to your letter dated April 17, 2003. Please note that responses to items not objected to will be provided by June 2, 2003.

5.c.   The Defendants OBJECT to this request because it is vague, overly broad, and unduly burdensome. The burden of providing this information outweighs its likely benefit, taking into account the needs of the case, the importance of the issues at stake, and the importance of the proposed discovery in resolving the issues. Also, such a response would include information not relevant to this case and which is not reasonably calculated to lead to admissible evidence. The Defendants further OBJECT to this request to the extent that it may seek information about persons who are not members of the class. The Defendants cannot release information on persons who are not class members without violating HIPAA or other laws.

6.   The Defendants incorporate their OBJECTION to 5c above.

7.   The Defendants incorporate their OBJECTION to 5c above.

9.   The Defendants incorporate their OBJECTION to 5c above.

10.   The Defendants incorporate their OBJECTION to 5c above.

12.   The Defendants incorporate their OBJECTION to 5c above.

16.   The Defendants incorporate their OBJECTION to 5c above.

22.d.    The Defendants do not understand exactly what Plaintiffs are seeking as to "the Procedures for Assessment Process".

24.    The Defendants OBJECT to this request because it is unduly burdensome. The burden outweighs its likely benefit, taking into account the needs of the case, the importance of the issues at stake, and the importance of the proposed discovery in resolving the issues. The Defendants also OBJECT that these requests seek irrelevant information and are not reasonably calculated to lead to admissible evidence. Without waiving this objection, the Defendants may produce the "numbers" that are already available, but will not calculate any "numbers" that do not already exist.

24.f.-i.    The Defendants further OBJECT to these subsections in that they do not define "recommendations … for alternative setting." Depending on the definition, this request may also seek information that is irrelevant and not reasonably calculated to lead to admissible evidence.

25.    The Defendants OBJECT to this request to the extent that it seeks information about persons who are not members of the class as certified by the Court. The Defendants further OBJECT that this request seeks confidential information about these persons who are not members of the class. The Defendants cannot release this information on persons who are not class members without violating HIPAA or other laws. This request is also OBJECTIONABLE in that it seeks irrelevant information and is not reasonably calculated to lead to admissible evidence.

25.e.-f.    The Defendants also OBJECT to these subsections because Defendants do not know what is being referred to as a "waiver list".

29.    The Defendants OBJECT to the vague reference to "Survey of staff: re training." Depending on the definition of this term, this request may be overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to admissible evidence.

31.    The Defendants incorporate herein by reference their OBJECTION to 5c above.

31.g.    The Defendants further OBJECT to this subsection because it does not define " 'new' money, DCF or forensic funds."

35.    The Defendants OBJECT to this request as being unduly burdensome. The burden outweighs its likely benefit, taking into account the needs of the case, the importance of the issues at stake, and the importance of the proposed discovery in resolving the issues. This request is also OBJECTIONABLE because it seeks irrelevant information and is not reasonably calculated to lead to admissible evidence. Without waiving

these objections, the Defendants will produce previously existing calculations, if any, of average costs. The Defendants will not create or conduct new calculations for this request.

36.    The Defendants OBJECT to this vague, overly broad, and unduly burdensome request of "all documents produced by or for." The Defendants further OBJECT because this request seeks irrelevant information and is not reasonably calculated to lead to admissible evidence. This request may also be OBJECTIONABLE to the extent that it seeks information on persons who are not class members, which may be confidential and protected under HIPAA and other laws.

Please note that the Defendants have not objected to duplicative requests for documents that have already been produced. Instead, the Defendants will note that the documents were already produced and will not provide additional copies.

Also, please note that some of the requests are for items that do not exist. The Defendants will merely advise in their responses that such items do not exist.

Furthermore, the Defendants will respond to some requests even though an objection has been raised. The Defendants are still gathering documents responsive to the April 17 letter and will determine by June 2 what items will be produced. Some of these objections may have been unnecessary if the Defendants had been allowed sufficient time to digest the numerous requests and to gather all of the documents that reasonably respond to the requests. The Defendants encourage the Plaintiffs to review the responses on June 2 to determine which objections have resulted in an actual refusal to produce documents.

The Defendants note that in the future they may object to more requests of this nature that appear to be additional requests for production beyond the limitations of the Federal Rules. If Plaintiffs' experts are requesting these documents, each individual request should be so identified as specifically requested by a specific expert. The Defendants do not intend to allow the Plaintiffs to generally make unlimited requests for production.

Very truly yours,

Thomas B. York

C:    James Welsh, Esq.
      Hugh Barber, Esq.
      Thomas Fiorentino, Esq.
      Kathleen Egan

EXHIBIT D

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARC/CONNECTICUT, ET. AL. | : | |
| | : | 3:01CV1871 (JBA) |
| PLAINTIFFS | : | |
| vs. | : | |
| | : | |
| PETER H. O'MEARA, ET AL. | : | |
| | : | |
| DEFENDANTS. | : | JUNE 26, 2003 |

## DECLARATION OF CELIA S. FEINSTEIN, M.A.

I, CELIA S. FEINSTEIN, under penalty of perjury, pursuant to 28 U.S.C. § 1746, state the following statements are true and correct:

1. I am an expert for the plaintiffs in the above captioned case.

2. I have had considerable experience in several states in evaluating programs for people with mental retardation funded by the waiver and providing technical assistance to states.

3. Plaintiffs' experts have requested access to the documents and data relating to DMR clients on the DMR Residential Waiting and Planning Lists as well as the DMR Waiting List for clients waiting for day programs.

4. It is our intention to review a number of files of these class members as well as related documents and data about the Home and Community Based Waiver so that we can develop opinions relating to this case.

5. Based on my review of the files of the individual plaintiffs it is clear that almost every significant document in DMR client files contain identifying information about the DMR client, his guardian or responsible family member.

6. In my opinion it would be very time consuming and labor intensive for DMR to redact all identifying information about a DMR client's guardian and/or family from every document before we could review the file. Such a process would probably delay the discovery process considerably.

7. It is also our intention to contact a sample of the guardians or other responsible caregivers for class members to determine to what extent they participated in preparing their ward's (family member's) individual plan under the HCBW and/or were they advised of their rights under the HCBW.

8. Given Connecticut's definition of Mental Retardation in Connecticut General Statutes § 1-1g, most of the DMR clients who fall within the class definition would not be able to report on their involvement in developing their individual service plan under the Waiver or the extent to which they have been advised of their rights under the HCBW.


CELIA S. FEINSTEIN

2

## CERTIFICATION

This is to certify that a copy of the foregoing was sent via overnight mail to the Court and mailed first class, postage prepaid to counsel of record on June 27, 2003.

Hugh Barber, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas M. Fiorentino, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas B. York, Esq.
Dilworth, Paxson LLP
112 Market St., 8th Floor
Harrisburg, PA 17101

David C. Shaw, Esq.

13

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed first class, postage prepaid to counsel of record on October 17, 2003:

Hugh Barber, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas M. Fiorentino, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas B. York, Esq.
Dilworth, Paxson LLP
112 Market St., 8th Floor
Harrisburg, PA 17101

Mark R. Carta, Esq.
Rucci, Burnham, Carta
  & Edelberg, LLP
30 Old Kings Hwy. South
Darien, CT  06820

_____
David C. Shaw, Esq.