UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARC/CONNECTICUT, et al., | : |
|    Plaintiffs, | : 3:01CV1871 (JBA) |
| v. | : |
| PETER H. O'MEARA, et al., | : |
|    Defendants. | : October 20, 2003 |

**DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S
RULING ON PLAINTIFFS' AND DEFENDANTS'
MOTIONS FOR RECONSIDERATION**

I.  **INTRODUCTION**

In response to Plaintiffs' request to discover private and confidential information about DMR clients and their guardians, the Magistrate Judge issued a Ruling on Plaintiffs' Request that the Names, Addresses and Other Identifying Information About DMR Clients on the DMR Residential and Planning Lists and their Guardians be Produced, dated June 9, 2003 (the "June Ruling") which determined, *inter alia*, that while broad discovery was appropriate, it must be balanced with important privacy interests. So, for example, while the Magistrate ruled that the Plaintiffs were entitled to discover the names and certain identifying information of DMR clients on the DMR Waiting and Planning Lists, she also ruled that personal information about clients' guardians need not be disclosed without their consent. After the Defendants and Plaintiffs both

21289_1                               1

requested reconsideration of the June Ruling, the Magistrate issued a Ruling on Plaintiffs' and Defendants' Motions for Reconsideration, dated September 12, 2003 ("Ruling on Reconsideration"), which granted the parties' motions in part and denied the motions in part.

In the Ruling on Reconsideration, the Magistrate Judge reconsidered and revised her earlier determination that the "Priority System" which DMR uses to assign a Priority status to each client on its waiting lists was not relevant to discovery, instead finding that the Priority System is "extremely relevant to a determination of Waiver eligibility, though it is not the sole basis for such determination." Ruling on Reconsideration at 8. In this Ruling, the Magistrate also reaffirmed that guardians of clients have an important privacy interest in protecting their own confidential information, and also clarified her June Ruling in several respects. For example, the ruling reiterated that Plaintiffs were not entitled to the production of complete client files at this time, but would have the opportunity later to select a sample from the names of potential class members for whom more comprehensive files might be produced. While the clarifications in the Magistrate's Ruling on Reconsideration certainly provide clearer direction on the course of discovery in this case, Defendants respectfully object to one aspect of that Ruling. To the extent that Defendants would still be required to produce the names and information of *all* individuals on both the DMR Waiting and Planning Lists, regardless of the Priority status assigned by DMR, Defendants believe that the Magistrate clearly erred.

II. **THE DMR SYSTEM OF ASSIGNING PRIORITIES ESTABLISHES THAT INDIVIDUALS WITH PRIORITY 2 AND 3 ARE INELIGIBLE TO RECEIVE WAIVER SERVICES AND, THEREFORE, CANNOT BE CLASS MEMBERS**

The federal regulations governing Medicaid waivers require that, in order to provide home and community-based services under Medicaid, a State Medicaid agency must provide CMS with certain satisfactory assurances, including the assurance that the agency will provide:

> An evaluation of the need for the level of care provided in a hospital, a NF [nursing facility], or an ICF/MR when there is reasonable indication that the recipient might need the services ***in the near future (that is, a month or less)*** unless he or she receives home and community-based services.

42 CFR §441.302(c)(1) (emphasis added). This evaluation of immediate need for services is precisely what the DMR Priority system accomplishes. It is for this very reason that the Magistrate Judge has reconsidered one aspect of her initial Ruling and found the Priority system to be "extremely relevant" to determinations of Waiver eligibility which, in turn, are a prerequisite for membership in the class certified by this Court. Under the class definition, individuals:

> (1) must have been found to be eligible and remain eligible for DMR services in accordance with state law, and
>
> (2) [must] either (a) have applied for and **[be] eligible** for services covered by Connecticut's HCBW; or (b) would apply for **and be eligible** for [Waiver] services . . ..; and
>
> (3) . . . cannot obtain the HCBW services **for which they are presently eligible** or **for which they would be eligible**, if given the reasonable opportunity to apply. . . .

Ruling granting motion for class certification (Dkt. #94).

As stated above, to be eligible for Waiver services in accordance with federal regulations, an individual necessarily must be determined by the State to be in need of services "in the near future." The Priority System represents an evaluation by the State of the immediacy of which each individual client on the Waiting or Planning List is in need of residential services. Those with the most immediate need are assigned the highest Priority status of "1" or "E" (for emergency), while those with less than immediate needs for such services are assigned Priorities "2" or "3". As Defendants previously explained, and as noted by the Magistrate Judge in her Ruling on Reconsideration:

> DMR clients can be placed on the Waiting List for DMR services simply by requesting that DMR provide those services in the future. Such a client can be placed on these Lists without showing any need or eligibility for HCB Waiver services.

Ruling on Reconsideration at 5. In other words, mere placement on the Waiting or Planning List is *not* related to a person's eligibility for Waiver services. Those who are on the Waiting or Planning List but who have been assigned a lower Priority status of "2" or "3" are presently ineligible for Waiver services, and therefore cannot be members of the class and should not be subject to discovery in this case.[1]

---

[1] Exceptions to this rule are those individuals currently residing in ICF/MR facilities who have been placed on the Planning List because they have requested alternative placements. While Defendants have maintained that these individuals are no eligible for Waiver services, these individuals obviously have met the criteria for demonstrating a level of need for ICF-level care, even if they have been assigned Priority "2" or "3" status because their need for residential services is not imminent. Arguably, the names and identifying information of these individuals could be discoverable under the Magistrate's Ruling.

21289_1                                    4

The Magistrate Judge implicitly recognizes the necessity of deferring to the assessments made by the State for each client with respect to his or her immediate need for services, *i.e.*, the assignment of a Priority status. In both her June Ruling, and again in the Ruling on Reconsideration, the Magistrate ruled that the information requested by Plaintiffs should only be "discoverable for 'each of the individuals whose conditions ***as recorded in DMR records*** would make them eligible' for DMR services, including, based on their conditions, Waiver services..." Ruling on Reconsideration at 6 (emphasis in Ruling), quoting June Ruling at 14. The Priority status assigned to each DMR client represents an evaluation of the client's "condition as recorded in DMR records," reflecting the immediacy of need for residential services and, hence, the individual's potential eligibility for Waiver services.[2] The Magistrate also acknowledges that the "Residential HCBS Waiver Needs Assessment" form used by DMR explicitly takes into account the "urgency of need for residential support by inquiring into an individual's Priority Status." Ruling on Reconsideration at 8 n.13.[3]

Thus, while assignment of Priority "1" or "E" status does not guarantee eligibility for Waiver services – though it may be indicative of potential eligibility – assignment of Priority "2"

---

[2] Months ago, the Plaintiffs sought and obtained through discovery the DMR Priority-setting protocols. The Plaintiffs are fully aware of this process to evaluate the "condition" of an individual, the criteria applied, and that Priority 2 and Priority 3 mean that the individual's condition, as documented in DMR records, is such that he or she does not need placement for at least two (2) years. The Plaintiffs are also aware that this priority setting protocol was central to the settlement in Birks v. Lensink, Civ. No. B-89-506 (JAC), approved by U.S. District Judge Jose Cabranes after a "fairness hearing" in November, 1993, which includes a mechanism to administratively challenge the assignment of priority by DMR.

[3] Recognizing that DMR's Needs Assessment form takes into account the Priority status as relevant to the urgency of need for residential supports, the Magistrate acknowledges that her prior reliance on Plaintiffs' expert's contention that "defendants have discarded the Priority system" was erroneous. Id.

or "3" status demonstrates that an individual is not currently eligible for Waiver services. This is just as true for those individuals who might claim to meet Part 2(b) of the class definition, *i.e.*, they *would* apply for and *would be* eligible for Waiver services if given the reasonable opportunity to apply, as those who claim to meet Part 2(a) of the definition ("*have* applied for and *are* eligible for" Waiver services). Regardless of whether these individuals would *want to* apply at the present if given a reasonable opportunity, they would **not** be eligible because they do not demonstrate, at the present time, the immediacy of need required by the federal regulations to receive home and community-based services. 42 CFR §441.302(c)(1).

### III. **CONCLUSION**

While the Magistrate Judge correctly determined, upon reconsidering her June Ruling, that the system used by DMR to assign a Priority status to each client on the Waiting and Planning List was "clearly relevant" to the discovery issues in this case, the Magistrate erred by ruling that "individuals who have been assigned a Priority "2" or "3" may not be excluded from the discovery process on that basis," since the *level* of Priority status is *also* clearly relevant. Defendants respectfully suggest that Plaintiffs' entitlement to discover information about potential class members can appropriately be accommodated by allowing Plaintiffs to review the names and identifying information on the hundreds of DMR clients who have been assigned Priority "1" and "E" status pursuant to DMR needs assessments,[4] for the purpose of selecting samples for further inquiry. Plaintiffs should not be entitled to discovery of personal and

---

[4] In addition, Plaintiffs might be entitled to discover the names and identifying information of DMR clients on the Planning List who are currently residing in ICF/MR facilities. *See* footnote 1, *supra*.

21289_1                                6

confidential information about hundreds, or possibly thousands, of additional DMR clients who cannot be class members by virtue of not having the immediate need that could make them potentially eligible for the Waiver. Moreover, in the event that after additional discovery, Plaintiffs claim *and are able to demonstrate* that the above-referenced sampling of records is inadequate to meet their legitimate discovery needs, the Court could always revisit the issue and order disclosure of the names of additional DMR clients. At the present time, however, Defendants should not be required to produce private and confidential information of DMR clients who, *prima facie*, are not eligible for Waiver services because they have been determined not to be in immediate need of ICF/MR level of care.

> Respectfully submitted,
> DILWORTH PAXSON LLP
>
> *Thomas B. York (JPW)*
> Thomas B. York
> Fed. Bar No. ct 17663
> Steven B. Goodman
> 112 Market Street, 8th Floor
> Harrisburg, PA 17101
> Tel.: (717) 236-4812
>
> Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via facsimile and also via first-class, postage-prepaid mail on this 20th day of October, 2003 on the following individuals:

David C. Shaw, Esq.
34 Jerome Ave.
Suite 210
Bloomfield, CT 06002

Hugh Barber, Esq.
Assistant Attorney General
Office of the Attorney General
P.O. Box 120 (55 Elm Street)
Hartford, CT 06141-0120

Thomas Fiorentino, Esq.
Assistant Attorney General
Office of the Attorney General
P.O. Box 120 (55 Elm Street)
Hartford, CT 06141-0120

Mark Carta, Esq.
Rucci, Burnham, Carta & Edelberg, LLP
30 Old Kings Highway South, P.O. Box 1107
Darien, CT 06820

James P. Welsh, Esq.
Director, Legal & Government Affairs
CT Dept. of Mental Retardation
460 Capitol Avenue
Hartford, CT 06106

_Thomas B. York (JPV)_
Thomas B. York

21289_1