UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARC/CONNECTICUT, ET. AL. | : | |
| | : | 3:01CV1871 (JBA) |
| PLAINTIFFS | : | |
| vs. | : | |
| | : | |
| PETER H. O'MEARA, ET AL. | : | |
| | : | |
| DEFENDANTS. | : | NOVEMBER 6, 2003 |

**<u>MEMORANDUM IN OPPOSITION TO</u>**

**<u>DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S RULING</u>**

**I. <u>INTRODUCTION</u>:**

The defendants' Objection to the Magistrate Judge's Ruling on Plaintiffs' and

Defendants' Motions for Reconsideration ("Objection") does not cite any case law or facts that

were overlooked by the Magistrate Judge in her Ruling. Rather, defendants resurrect arguments

previously rejected by this Court, and raise at least one argument that was never presented to the

Magistrate Judge. Moreover, their arguments are based on a misrepresentation of the Magistrate

Judge's Ruling on Plaintiffs' and Defendants' Motions for Reconsideration.

Plaintiffs oppose defendants' Objection for three reasons. First, defendants' argument

was not presented to the Magistrate Judge. Second, defendants' Objection is a rather obvious

attempt to limit plaintiffs' experts to discovery relating to a small subset of class members hand-picked by defendants.  Plaintiffs cannot properly prepare this case for trial if expert discovery is limited to such a small subset of class members hand-picked by defendants.  Third, defendants' argument - that defendants' Waiting List Priority setting system and 42 C.F.R. § 441.302(c)(1) should be relied upon to conclude that all but a small subset of persons on the DMR Waiting lists must be excluded from the class - has been previously rejected by this Court and should be rejected again here.

### A.  History of the Dispute

The essential arguments raised by defendants were first rejected by this Court in August 2002.  Defendants asserted in opposition to plaintiffs' Motion to Amend the complaint that 42 C.F.R. § 441.302(c)(1) required that the class definition described in the complaint be restricted to DMR clients in "immediate need" of residential services.  Defendants argued further that DMR had determined through its priority setting process that most of the members of the putative class described in the Amended Complaint had no "immediate need" for *residential* services.  The Court rejected this attempt to restrict the putative class:

> Defendants base their claim that the proposed class includes persons on the waiting list who do not immediately need residential services on their own assessment and characterization of these individuals rather than on plaintiffs' actual allegations in the proposed Amended Complaint.  See Def.'s Mem. Opp. Mot. Amend [Doc. #30] at 6. … Defendants assume

> the validity and correctness of their own classification system ... instead of assuming the truth, as the Court must for these purposes, of the plaintiffs' allegations that "[a]ll plaintiffs are eligible for services in an ICF/MR."  Am. Compl. ¶ 70.

*Arc/Connecticut v. O'Meara*, Ruling on Pending Motions [Doc. # 59] pp. 8, 9

Defendants renewed the same argument in their opposition to the Motion for Class Certification.  On pages 10 and 11 of their Surreply [Doc. # 77] defendants reasserted that despite the Courts' Ruling on Pending Motions, 42 C.F.R. § 441.302(c)(1) required that DMR clients who did not have an "immediate need" for residential services could not be considered class members.

Plaintiffs raised five arguments in opposition to defendants' position.  First, plaintiffs cited the rather arbitrary manner in which the intensity of the needs of many of the individual plaintiffs was stated as well as the findings of their experts in support of their argument that the DMR assessments of priority were unreliable.[1]  Response to Defendants' Surreply Regarding Class Certification [Doc. # 85] p. 20.  Second, defendants' Priority Assignments appear to have

---

[1] The definitions of "Emergency", "Priority 1", "Priority 2", and  "Priority 3" are contained in Exhibit H to Plaintiffs' Motion for Class Certification [Doc. # 48], p. 5.  Plaintiffs' expert was told during her initial on-site visit that there was not a consistent reliable way of assessing the urgency of need.  The experts indicated that any classification based on these priorities would be seriously flawed. Attachment A to Reply to Defendants' Opposition to Plaintiffs' Request for the Names, Addresses and Other Identifying Information About DMR Clients on the DMR Residential and Planning Lists and Their Guardians [Doc. # 119], ¶ 7.

almost nothing to do with whether a DMR client is admitted to the Waiver.  DMR clients are

put on the Waiver because they are receiving DMR-funded service that is eligible for federal

Title XIX reimbursement under the Waiver, not because of the client's intensity of need.

Second Amended Complaint, ¶ 135.  This is evident from the fact that only 10 of 34 DMR

clients assigned a status of "Emergency" (clients in immediate need) have been admitted to the

Waiver, while 185 of the 208 persons assigned a Priority I (DMR clients needing services within

one year) have been enrolled, 130 of the 415 assigned a Priority II (persons needing services

within two years) have been enrolled, and 208 of the 617 of the Priority III (clients needing

services within 3-5 years) cases have been enrolled.  Exhibit A to Memorandum in Support of

Motion for Class Certification, ¶¶ 4-12A; Response to Defendants' Surreply Regarding Class

Certification, p. 20, n.6.  Third, defendants' official planning documents contradict defendants'

assertion that most on the DMR waiting lists do not need residential supports.  Response to

Defendants' Surreply Regarding Class Certification, at 22.  Fourth, the regulation relied upon by

defendants, 42 C.F.R. § 441.302(c)(1), provides that an initial evaluation of need must be

conducted on persons for whom institutionalization is reasonably likely to occur within one

month, not that eligibility is limited to DMR clients who may be institutionalized within one

month.  *Id*. at 21.

      The Court rejected defendants' argument and certified the class as including DMR

clients who had been found to be eligible for the Waiver *and* those who had not applied, but

who would be eligible for the Waiver if given the reasonable opportunity to apply.  The certified

class included:

> All individuals
>
> (1) who have been found to be eligible and remain eligible for DMR services in accordance with state law, and
> (2) who either (a) have applied for and are eligible for services covered by Connecticut's HCBW; or (b) would apply for and be eligible for services covered by Connecticut's HCBW, if given the reasonable opportunity to apply; and
> (3) who cannot obtain the HCBW services for which they are presently eligible or for which they would be eligible, if given the reasonable opportunity to apply,
> (4) because of policies and practices of the defendants that are  prohibited by federal law.
>
> Ruling Certifying Class [Doc. # 94] pp. 1, 2.

The DMR clients' assigned priority therefore has nothing to do with whether he/she could be

considered a class member.

Having lost the argument that the class should include only DMR clients whom

defendants determined have an "immediate need" for residential services, defendants now

employ the same argument in an attempt to limit expert discovery.  In response to a request by

plaintiffs' experts for the names of clients on the DMR Residential Waiting and Planning Lists[2]

_____

[2] Exhibit 11 to Plaintiffs' Memorandum in Support of Plaintiffs' Request that the Names, Addresses and Other Identifying Information About DMR Clients on the DMR Residential and Planning Lists and Their Guardians be Produced [Doc. # 114] contains a chart disclosed on May 22, 2002 as the then current profile of persons on the DMR Residential Waiting and Planning Lists.  According to that

defendants indicated that they would permit discovery relating to less than one-quarter of the 2410 names that appear on these waiting lists.  Exhibit 10 to Plaintiffs' Memorandum in Support of Plaintiffs' Request that the Names, Addresses and Other Identifying Information About DMR Clients on the DMR Residential and Planning Lists and Their Guardians be Produced [Doc. # 114].  Their reasons for not complying with this discovery request was that that defendants would not assume that persons enrolled in the Waiver with an assigned Priority of 2 or 3 were not getting the residential supports for which they were eligible.  They indicated that they must assume that all persons with a Priority 2 or 3 not already enrolled in the Waiver were ineligible.  Defendants even went so far as to assert that they could not and would not produce identifying information about anyone who fell within section (2)(b) of the Court's class definition.

The Magistrate Judge rejected defendants' position.  She concluded that plaintiffs were entitled to discovery as to all persons who fell within the class definition and that since the class included people who were not easily identifiable (i.e. those who were not aware of the services available and were not given a reasonable opportunity to apply) discovery could include all

---

disclosure, 1644 persons were on the Residential Waiting List, and another 766 were on the DMR Planning List.  Defendants have represented further that 533 of the 1644 persons on the DMR residential Waiting List are enrolled in the Waiver.  (Exhibit A to Memorandum in Support of Motion for Class Certification [Doc. # 48 ¶ 4

persons on the DMR Residential and Planning Lists.  Ruling [Doc. # 122], p. 10.  She

concluded that access to the Waiting and Planning Lists would enable plaintiffs to draw the

names of persons who are likely to require residential supports but have not applied for the

Waiver because they have not been informed about the program.  *Id*. at 13.  The Magistrate

Judge specifically noted, citing *Buycks-Roberson v. Citibank Fed. Sav. Bank,* 162 F.R.D. 338,

341-42 (N.D. Ill. 1995), that defendants' attempt to limit discovery to a self-selected list of 537

names was inappropriate, particularly since all persons who might fall within Section 2(b) of the

class definition would be excluded from discovery under defendants' plan.[3]

      The Magistrate Judge's decision also addressed an issue not raised by the parties.  She

held on page 14 of her opinion that as "both parties admit that the Priority System is flawed …"

the Priority System is irrelevant and discovery would not be permitted as to the DMR Priority

assignments.[4]

---

[3] Plaintiffs pointed out many other reasons for rejecting defendants' request to limit discovery to defendants' hand-picked list of 537 names.  First, defendants refused to disclose the methodology used to compile the list. Second, 104 Emergency and Priority I cases from the Residential Waiting List and 409 of the 516 Emergency and Priority I cases from the Planning List were excluded.  Moreover, 13 of the individual plaintiffs and other Emergency Cases were inexplicably excluded.  Memorandum in Support of Plaintiffs' Request that the Names, Addresses and Other Identifying Information About DMR Clients on the DMR Residential and Planning Lists and Their Guardians be Produced [Doc. # 114], pp. 17 – 20.

[4] Plaintiffs argued that defendants' Priority System was seriously flawed and that therefore defendants' attempt to limit discovery based on the Priorities assigned to DMR clients was not appropriate.  Plaintiffs did not argue that discovery as to the adequacy of the Priority-setting system should be precluded and in fact have maintained throughout this lawsuit that such discovery is necessary.

The defendants' Motion for Reconsideration asserted that the Magistrate Judge's Ruling was clearly erroneous in that it rejected defendants' position that discovery should be limited to the 537 persons defendants determined were class members and should be prohibited as to all other persons whom defendants determined were ineligible. Memorandum in Support of Motion for Reconsideration [Doc. # 128], p. 4. Defendants also argued that the Ruling should be reversed to the extent it held that the defendants' Priority System is flawed as that Priority System would be central to the defense of the lawsuit. Memorandum in Support of Motion for Reconsideration [Doc. #128], pp. 4, 5. Plaintiffs opposed defendants' Motion for Reconsideration but urged the Magistrate Judge to modify her Ruling to the extent she precluded discovery as to defendants' priority setting. Plaintiffs attached as Exhibit D to their Memorandum the recently developed, but not yet implemented, DMR Residential HCBS Waiver Needs Assessment form to demonstrate the importance of conducting discovery into the defendants' Priority setting process. Memorandum in Partial Opposition to Motion to Reconsider [Doc. # 132], pp. 9, 10.

The Magistrate's Ruling on the motions for reconsideration again rejected defendants' attempt to limit discovery to the hand-picked list of 537 names. She reiterated, noting that the defendants' Motion for Reconsideration revealed for the first time that the list of 537 persons was prepared using the defendants' Priority System and defendants' interpretation of the

criterion for Waiver participation, that discovery must include all persons on the Waiting Lists.

Ruling on Plaintiffs' and Defendants' Motions for Reconsideration [Doc. # 163], pp. 6, 7.

Defendants have now filed an Objection to the Magistrate Judge's Ruling. The Objection indicates that defendants have now abandoned their argument that discovery should be limited to the list of 537 persons. Instead, they argue for the first time that all persons identified as Priorities 2 and 3 on the DMR Waiting Lists should be excluded from discovery unless plaintiffs' experts complete their evaluations with the limitations proposed by defendants and prove that the resulting study is inadequate. Defs' br. at 6.

## II. <u>ARGUMENT</u>:

### A. Standard of Review

Pursuant to Rule 72, Fed. R. Civ. P., and its enabling statute, 28 U.S.C. § 636(b)(1), determination of the review standard turns on whether the recommendation by the Magistrate Judge is dispositive of a claim or defense of a party. *See*, Fed. R. Civ. P. 72. Dispositive matters are reviewed *de novo*, but nondispositive matters are subject to deferential review only for "clear error". As defendants challenge only so much of the Magistrate Judge's Ruling as permits discovery as to all persons on the DMR Residential Waiting and Planning Lists, rather than a far more limited subset, defendants' defense to this lawsuit is not implicated. The more deferential "clear error" standard should therefore be applied.

### B.  Failure to Raise Argument Before the Magistrate Judge:

It is well established that matters not raised before the Magistrate Judge, and therefore not addressed by her, cannot be raised in an objection pursuant to Rule 72.  An objecting party may not raise new arguments that were not made before the Magistrate Judge.  *Dennis v. Robinson*, 1999 U.S. Dist. LEXIS 9766 * 11 (S.D.N.Y. 1999); *Abu-Nassar v. Elders Futures, Inc.*, 1994 U.S. Dist. LEXIS 11470, 1994 WL 445638, at *4 N.2 (S.D.N.Y. 1994)(refusing to entertain new arguments not raised before Magistrate Judge and holding that to do otherwise would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to make additional arguments).

Here, defendants ask the Court to adopt a limitation on discovery not presented to the Magistrate Judge.  Defendants have abandoned the position urged on the Magistrate Judge –that discovery should be limited to their hand-picked list of 537 names- in favor of an entirely new position that would prohibit any discovery as to any DMR client assigned a Priority 2 or 3 on the DMR Residential Waiting and Planning Lists.  Defs' br. at 6, 7.  This position avoids plaintiffs' challenge to the methodology used to select only 537 persons but raises many other serious concerns.

For example, defendants argue that discovery might be permissible as to some DMR clients in ICF/MR facilities. Defendants do not say which of the ICF/MR residents would be

included or why.  Waiver enrollees from the Planning List placed in nursing homes or

psychiatric facilities would also be improperly excluded.  Moreover, 338 class members who are

already enrolled in the Waiver have been assigned a Priority 2 or 3 on the DMR Residential

Waiting and Planning Lists would be excluded.  *See*, Exhibit A to Memorandum in Support of

Motion for Class Certification, ¶¶ 4-12A .  As all of these individuals have been deprived the

opportunity for a fair hearing to challenge the denial of Waiver funding for residential supports

(Second Amended Complaint, Count VIII), deprived of access to residential support services

with reasonable promptness (Second Amended Complaint, Count II), and deprived of adequate

individual plans of care (Second Amended Complaint, Count V), defendants' attempt to exclude

them from discovery is untenable.

Further, defendants' proffered limitation would exclude hundreds of class members who

have been denied the opportunity to apply for Waiver services.  The Magistrate Judge has

specifically rejected defendants' previous attempt to limit discovery on this basis.

Defendants insist that plaintiffs' experts conduct a study that is limited to Emergency

and Priority 1 cases.  Access to information about the many other members of the plaintiff class

would be allowed only if the experts could prove that their completed study was inadequate.

Clearly, such a process would be costly, unnecessarily time consuming and would deny

plaintiffs' experts the data which, in their professional judgment, is necessary to complete a

proper evaluation.  In short, defendants' attempt to limit discovery to only Emergency and

Priority I cases was not presented to the Magistrate Judge and will deprive plaintiffs of the

opportunity to conduct discovery as contemplated by Federal Rules of Evidence 702 and 703.

Imposing these new limitations on discovery will undermine the authority of the Magistrate

Judge by allowing defendants the option of raising limitations on discovery that were never

presented to her.  Defendants' objection to the Recommended Ruling should therefore be

overruled.

### C.  Undue Limitation on Discovery

According to documents and data presented to date, defendants' attempt to exclude all

Priority 2 and 3 cases from discovery would limit discovery to 242 out of the 2410 DMR clients

on the DMR Residential Waiting and Planning Lists.  Exhibit A to Memorandum in Support of

Motion for Class Certification, ¶¶ 4-12A.  Defendants would thereby appoint themselves as the

final arbiters of the scope of discovery, despite the standard in Rule 703 that discovery should

involve matters that an expert would ordinarily rely upon to develop opinions.

The exclusion of all Priority 2 and 3 cases is irrational for several reasons.  First,

defendants say they will permit discovery of Priority 1 cases even though many such persons –

those who are not expected to need residential supports for one year – do not fall within the

definition of "immediate need" defendants would have this Court adopt (i.e., require residential

supports within thirty days).

Second, many Priority 2 and 3 cases would be excluded even though many are clearly class members. As previously noted, DMR clients enrolled in the Waiver and assigned a Priority 2 or 3 are class members. Further, Priority 2 or 3 cases appearing on the Planning and *Olmstead*[5] Lists are class members as they are unnecessarily institutionalized. (*See*, Count IV of the Second Amended Complaint). Yet all of these individuals would apparently be excluded from discovery.[6]

Third, plaintiffs' experts learned during their initial tours that the defendants were reassessing their methodology for assigning priorities because the then current system was too subjective.[7] Declaration of Sue Gant, Ph.D. (Exhibit 12 to Plaintiffs' Memorandum in Support

---

[5] Defendants indicate that Connecticut's *Olmstead* List was formulated in response to the Supreme Court's decision in *Olmstead v. L.C.*, 527 U.S. 581 (1999), and contains those DMR clients living in institutions who have requested placement outside the institution. (Millot deposition, Attachment B to Reply to Defendants' Opposition to Plaintiffs' Request for the Names, Addresses and Other Identifying Information about DMR Clients on the DMR Residential and Planning Lists and their Guardians [Doc. #119], p. 15.) There are approximately 131 DMR clients on the Olmstead List. Many of the DMR clients listed on the Olmstead List are also listed on the DMR Planning List. (Pankosky deposition, Attachment C to Reply to Defendants' Opposition to Plaintiffs' Request for the Names, Addresses and Other Identifying Information about DMR Clients on the DMR Residential and Planning Lists and their Guardians [Doc. #119], p. 64.)

[6] Defendants now assert for the first time before this Court that some of the individuals living in ICF/MR facilities might be included. However, not all DMR clients appearing on the Planning or *Olmstead* Lists-- such as those improperly placed in nursing homes or institutions--are living in ICF/MR certified facilities, and yet would be excluded.

[7] Defendants now assert that the protocol plaintiffs' placed before the Magistrate Judge to demonstrate the necessity for conducting discovery into defendants' Priority setting (Exhibit D to Memorandum in Partial Opposition to Motion to Reconsider [Doc. # 132]) demonstrates that plaintiffs' are aware of defendants'

of Plaintiffs' Request that the Names, Addresses and Other Identifying Information About DMR

Clients on the DMR Residential and Planning Lists and Their Guardians be Produced [Doc. #

114], ¶8; Declaration of Celia Feinstein, Attachment A to Reply to Defendants' Opposition

[Doc. # 119], ¶ 7.)  Plaintiffs' experts' reluctance to accept defendants' discovery limitation is

therefore understandable and appropriate.

Plaintiffs' experts provided Declarations to the Court establishing that discovery as to all

persons on the DMR Residential Waiting and Planning Lists is necessary because those lists are

the only professional judgment DMR has made as to which DMR clients need residential

supports and which persons enrolled in the Waiver need residential supports.  (Declaration of

Celia Feinstein, Attachment A to Reply to Defendants' Opposition [Doc. # 119], ¶ 5.)

Plaintiffs' experts offered the further opinion that these Waiting Lists are the best source of the

names of persons who are likely to require residential supports but have not applied for the

Waiver because they have not been informed of the program.  *Id*.  The Magistrate Judge

concluded from the Declarations of plaintiffs' experts that plaintiffs made the requisite showing

---

Priority setting process.  Those forms were requested by plaintiffs' experts during their tour after they were told that they were part of an attempt to develop a more accountable priority setting process.  Plaintiffs' experts determined during that tour that defendants' Priority setting was not consistent or reliable. (Declaration of Celia Feinstein, Attachment A to Reply to Defendants' Opposition to Plaintiffs' Request for the Names, Addresses, and other Identifying Information about DMR Clients on the DMR Residential and Planning Lists and their Guardians [Doc.#119], ¶ 7.)

of the need for access to confidential information for all persons on the Waiting Lists and that defendants had not met their burden of proving that discovery as to persons who fall within section 2(b) of the class definition is too speculative.  Ruling on Plaintiffs' Request that the Names, Addresses, and other Confidential Information about DMR Clients on the DMR Residential and Planning Lists and Their Guardians be Produced, pp. 9, 13, 14.

Defendants' attempt to exclude all Priority 2 and 3 families from plaintiffs' expert discovery is inconsistent with case law that establishes that in cases in which system-wide failure to allege federal law is alleged, broad discovery relating to the offending policies and practices must be allowed.  See, *Lora v. Board of Educ.*, 74 F.R.D. 565 (E.D.N.Y. 1977).  Defendants' attempt to limit discovery to persons who have essentially made it through defendants' Priority setting process in effect asks the Court to assume the validity of the very policies and practices plaintiffs are challenging in this lawsuit.  This Court has previously held that it would not assume the validity of the defendants' Priority setting, and the Magistrate Judge has now twice reached that same conclusion.

Defendants' attempt to restrict discovery is similar to the limitation sought by the defendant in *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338 (N.D. Ill. 1995).  In *Buycks-Roberson,* plaintiffs requested production of the defendant Citibank's loan files from the entire Chicago metropolitan area to prove a claim of discrimination on behalf of all financially

qualified African-Americans denied mortgage loans who lived in predominantly African-American communities. Defendant offered to produce a sample of 93 loan files to serve as accurate examples of its policies and procedures with the names, addresses and other identifying information redacted. Citibank said it was not opposed to producing additional files but that it wanted a "graduated" approach to discovery. The Court rejected defendants' position, holding that defendant's proffered limitation on discovery was not reasonable in light of the fact that the Court certified the class on a broad discrimination issue. *Buycks-Roberson,* 162 F.R.D. 342. It indicated that defendant's self-selected sampling was not the kind of principled approach to discovery that the Court could endorse. *Id*. at 341. The Court ordered production of Citibank's loan files from the entire Chicago metropolitan area without the names redacted as such broad discovery was necessary to establish whether a pattern of discriminatory activity existed. *Id.* at 342.

Defendants' arguments here are substantially the same as those rejected by the Court in *Buycks-Roberson*. Defendants argue that they are not opposed to producing files in addition to the handful of files of the Priority 1 and Emergency cases, but that they want a graduated approach. Additional files will be produced if plaintiffs' experts review a sample taken from defendants' hand-picked files and prove that those filed are an inadequate basis for their opinions. Defs' br. at 7. Plaintiffs' experts should not be required to conduct a study that they

have already indicated is inadequate.  Further, they should not be required to conduct a study based on a sample they deem inappropriate before they can request access to the files and documents they deem essential to develop relevant opinions.  Rule 703 of the Federal Rules of Evidence requires that these experts be given access to documents they deem appropriate to develop their opinions rather than they conduct an evaluation based on limitations they cannot support.

### D.  Defendants' Argument Previously Rejected

This Court has already rejected the contention that the Court must assume the validity and correctness of defendants' classification system.  *Arc/Connecticut v. O'Meara*, Ruling on Pending Motions [Doc. # 59], pp. 8, 9.  Defendants now claim that the Court should disregard that Ruling and find that the Priority setting process is a valid professional judgment as to whether DMR clients should be included or excluded from class wide discovery.  Defs' br. at 4, 5.  Defendants cite no case law or other authority that suggests that the Court's Ruling was incorrect.  Rather, they simply reiterate the argument that 42 C.F.R. § 441.302(c)(1) justifies use of defendants' Priority setting to exclude all those who are not in "immediate need".

42 C.F.R. § 441.302(c)(1) provides that an initial evaluation of need must be conduced on persons for whom institutionalization is reasonably likely to occur within one month, not that no one is eligible for the Waiver unless they are going to be institutionalized within one month.

As the text of the Regulation plainly supports plaintiffs' interpretation, and defendants cite no case law or interpretation to the contrary, this argument should be rejected.

Moreover, this Court has previously correctly determined that it should not at this early stage of the proceedings accept the validity of defendants' Priority setting in light of plaintiffs' allegation that the Priority setting is arbitrary. Defendants' Priority Assignments have nothing to do with whether a DMR client is admitted to the Waiver. The Second Amended Complaint alleges that DMR clients are put on the Waiver because they are receiving a DMR-funded service that is eligible for federal Title XIX reimbursement, not because of the client's intensity of need. Second Amended Complaint, ¶135. This is evident from the rather random distribution of Waiver-enrolled persons across all categories of Priority. Only 10 of 34 DMR clients assigned a status of "Emergency" (clients in immediate need) have been admitted to the Waiver, while 185 of the 208 persons assigned a Priority 1 (DMR clients needing services within one year) have been admitted, 130 of the 415 assigned a Priority 2 (persons needing services within two years) have been admitted and 208 of the 617 of the Priority 3 (clients needing services within 3-5 years) cases have been admitted. (Exhibit A to Memorandum in Support of Motion for Class Certification, ¶¶ 4-12A; Response to Defendants' Surreply Regarding Class Certification, p. 20, n.6.) Moreover, defendants' official planning documents contradict defendants' assertion that most on the DMR Waiting Lists do not need residential

supports.  *Id*. at 22.  The Court should not therefore accept defendants' argument that discovery should be prohibited to Priority 2 and 3 cases based on defendants' Priority setting process.

The fact that defendants' Priority setting has nothing to do with the Waiver can also be seen from the fact that defendants have no process by which families may apply for needed services under the Waiver.  In the two decades since the Waiver was implemented in Connecticut only 7 persons have applied for Waiver funding for services that they were not already receiving.  (Exhibit A hereto, Response to Interrogatory 7.)  All of these 7 individuals are individual plaintiffs in this lawsuit, and all have applied on the advice of counsel.  Moreover, none of these 7 individuals have received any new funding for services as a result of these applications.  Defendants' assertion that only persons in the most urgent need for services are enrolled in the Waiver is frivolous in the face of this stark admission that no one has been allowed to apply for Waiver funding unless it is to capture federal reimbursement for State-funded services.

Defendants distinguish the previous Ruling of this Court by representing that the Magistrate Judge found the Priority System "extremely relevant."  Unfortunately, defendants' position mischaracterizes the Magistrate Judge's Ruling.  The Magistrate Judge did not find the Priority System to be "extremely relevant to determinations of Waiver eligibility, which, in turn, are a prerequisite for membership in the class certified by this Court."  Rather, in articulating the

positions of the respective parties on page 8 of her opinion, the Magistrate Judge quoted

defendants' position directly from defendants' brief as follows: "Thus, the Priority System is

extremely relevant to a determination of Waiver eligibility, though not the sole basis for such

determination." (Dkt. #128, at 5.)  Defendants' position, therefore, relies on a statement from

their own brief, not a finding of the Magistrate Judge.  A proper reading on the Ruling on

Plaintiffs' and Defendants' Motions for Reconsideration leads to the conclusion that the holding

is limited to the finding that the Priority System is relevant to defendants' defense, and is

therefore the proper subject of discovery.  (Ruling on Plaintiffs' and Defendants' Motions for

Reconsideration [Doc. # 163], pp. 8, 9.)

Defendants compound their error by implying that the Magistrate Judge agreed with the

following argument that appeared in defendants' brief:

> DMR clients can be placed on the Waiting list for DMR service simply by
> requesting that DMR provide those services in the future.  Such a client can
> be placement on these Lists without showing any need or eligibility for HCB
> Waiver services.

Defs' br. at 4.

Once again, the Court refers to defendants' argument but in no way agrees or adopts it as

a finding.[8]  Defendants assert that as a result of these facts, all Priority 2 and 3 cases are

---

[8] The reality is that the only requirements for admission to the Waiver are eligibility for Medicaid and that
the person be in receipt of a service for which DMR can obtain Medicaid reimbursement.

"ineligible" and cannot be members of the class.  But, as previously indicated, 338 persons

assigned either Priority 2 or 3 status are already enrolled in the Waiver.  (Exhibit A to

Memorandum in Support of Motion for Class Certification, ¶¶ 4-12A.)  Plaintiffs' claims as to

these individuals relate to the deprivation of and/or denial of services as to persons already

enrolled in the Waiver.  In light of the fact that Waiver recipients are not allowed to request a

fair hearing for the denial or delay in providing residential supports (Exhibit A, Response to

Interrogatory 39) all of these individuals have been denied their right to a fair hearing and are

therefore class members. Moreover, the inordinate delays in providing residential supports to

persons enrolled in the Waiver constitute a failure to provide services with reasonable

promptness.  *Boulet v. Cellucci*, 107 F.Supp. 2nd 61, 78-80 (D.Mass. 2000).  All Priority 2 and 3

cases enrolled in the Waiver are therefore class members and may not be excluded because they

do not need residential supports immediately.

Defendants next cite page 6 of the Ruling on Reconsideration [Doc. #163] and page 14

of the Court's Ruling on Plaintiffs' Request that the Names, Addresses and Other Identifying

Information About DMR Clients on the DMR Residential and Planning Lists and Their

Guardians be Produced [Doc. # 122] in support of their position that the Court  "implicitly

recognizes the necessity of deferring to the assessments made by the State for each client with

respect to his or her immediate need for services, i.e., the assignment a Priority status."  Defs.

br. at 5.  Defendants misinterpret the Magistrate Judge's Rulings.  The Rulings merely reflect her determination that she erroneously determined that discovery should be prohibited as to the Priority setting process.  The Magistrate Judge does not contradict this Court's determination that it will not assume the validity of defendants' Priority setting at this early stage of the proceedings.

Moreover, the Ruling on Reconsideration does *not* determine that defendants may exclude from discovery any class member or DMR client who has been assigned a Priority 2 or 3 status.  Defs' br. at 5, 6.  Rather, the Ruling indicates that the only persons who may be excluded are "those for whom defendants offer significant justification that they are categorically ineligible."  (Ruling on Reconsideration, pp. 4, 5 and n. 7.)  Plainly the Court meant to exclude DMR clients who are "categorically ineligible" by virtue of the fact they were not eligible for Medicaid, not every DMR client who defendants determine are not in "immediate need."  Defendants' interpretation is not consistent with the text of the Magistrate Judge's Rulings or this Court's prior Ruling and will, if accepted, unduly limit discovery.  *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338 (N.D. Ill. 1995).[9]

---

[9] In footnote 2 defendants point out plaintiffs have obtained a copy of the new DMR Priority setting protocols.  They also represent that and plaintiffs are aware that there is no need for placement for 2 years for persons assigned Priorities 2 and 3.  Plaintiffs are aware of defendants' protocols as evidenced by the fact that they called the Court's attention to the protocols to emphasize that defendants' Priority setting was so intertwined with the defendants' attempt to exclude all DMR clients with Priorities 2 and 3 that that

### III. <u>CONCLUSION</u>:

For the foregoing reasons the defendants' Objection to Magistrate Judge's Ruling on

Plaintiffs' and Defendants' Motions for Reconsideration should be denied.

PLAINTIFFS,

By_____
David C. Shaw, Esq.
Fed. Bar No. ct05239
34 Jerome Ave., Suite 210
Bloomfield, CT 06002
Fed. Bar No. ct05239
Tel. (860) 242-1238
Fax. (860) 242-1507

<u>ATTACHMENT   A</u>

 ARC V. O'MEARA 3:01cv1871 (JBA) PLEADING

 DATED MAY 7, 2003

process should not be excluded from discovery.  Plaintiffs disagree with and intend to vigorously contest
defendants' assertion that all Priority 2 and 3 cases do not need residential supports for two years.  The
Settlement in *Birks v. Lensink*, No B-89-506 (JAC) cited by defendants is irrelevant.  Neither plaintiffs nor
class counsel played any role in that settlement.  Moreover, the *Birks* case was settled informally without a
written settlement agreement.  The lawsuit was dismissed after DMR promised to consider all applicants for
a place on the DMR Residential Waiting list.  The resolution of the *Birks* lawsuit has nothing to do with the
administration of the Waiver and has no preclusive effect here, especially since there was no written
settlement agreement, and no Declaratory or Injunctive relief entered by the Court.

DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR DISCLOSURE AND PRODUCTION

**<u>CERTIFICATION</u>**

This is to certify that a copy of the foregoing was sent first class, postage prepaid to counsel of record on November 6, 2003.

Thomas M. Fiorentino, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas B. York, Esq.
Dilworth, Paxson LLP
112 Market St., 8th Fl.
Harrisburg, PA 17101

Mark R. Carta, Esq.
Rucci, Burnham, Carta
 & Edelberg, LLP
30 Old Kings Hwy. South
Darien, CT  06820

Hugh Barber, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

_____
David C. Shaw, Esq.

25