UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARC/CONNECTICUT, ET. AL. | : | 3:01CV1871 (JBA) |
|                PLAINTIFFS | : | |
| vs. | : | |
| | : | |
| PETER H. O'MEARA, ET AL. | : | |
|                DEFENDANTS. | : | DECEMBER 19, 2003 |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE
TO PLAINTIFFS' OBJECTION TO RULING ON DISCOVERY**

**INTRODUCTION**:

The Defendants' Response to Plaintiffs' Objection to Ruling on Discovery [Doc. #187] (hereinafter "Defendants' Brief") raises two arguments in opposition to the Plaintiffs' Objection to Ruling on Discovery [Doc. #179] ("Plaintiffs' Brief"). Defendants first restate their argument that the plaintiffs' blur the distinction between class members and non-class members. (Defs' br. pp. 1-2, 5-6). As the Court resolved this longstanding impediment to discovery during the Status Conference on December 15, 2003 and indicated that discovery would be permitted as to all persons on the DMR Residential Waiting and Planning Lists, plaintiffs will not address this portion of the defendants' brief further.

The defendants next assert that no discovery should be permitted as to guardians or family of class members or as to documents that contain identifying information them. Defs' br. at 3-4, 7-10. Plaintiffs argue below that the defendants' position should be rejected because it is based on a misunderstanding of the nature and scope of on-site discovery plaintiffs' experts require to develop relevant opinions about the issues in this lawsuit and on a misunderstanding

of the stake guardians have in the outcome of this lawsuit.

**ARGUMENT**:

The Plaintiffs' Objection to Ruling on Discovery raises two significant questions relating to the scope of discovery in this lawsuit. The first is whether access to defendants' documents can be delayed or denied because those documents refer to the guardians and/or family members of the class. The second is whether plaintiffs' experts will be unable to visit a sample of class members or speak with their guardians and/or family. The plaintiffs file this brief to underscore their deep concern that a negative ruling on either question will prejudice plaintiffs in that their experts will be precluded from conducting the review of the defendants' operation of the Waiver program they deem minimally professionally necessary.

There is no dispute as to the case law that governs the resolution of this dispute. On pages 10 – 20 of the Plaintiffs' Brief, we agree with the Magistrate Judge that *Burka v. New York Transit Auth*, 110 F.R.D. 660, 665 (S.D.N.Y. 1986) and the cases cited therein are dispositive. The defendants agree that the holding in *Burka* is controlling. Defs.' Br. at 8, 9. The plaintiffs object to the Ruling on Plaintiffs' and Defendants' Motions for Reconsideration, however, because the Magistrate Judge misunderstood the nature and scope of discovery that will be needed to prosecute this lawsuit and misapplied the balancing test set forth in *Burka.*

On pages 12- 15 of the Ruling on Reconsideration the Magistrate Judge describes the following sequence of discovery that will be permitted: 1) the defendants will produce the names, addresses, priority status and responsible DMR Region for persons on the DMR

2

Residential Waiting and Planning Lists;[1] 2) plaintiffs' experts will identify a sample from these lists for further study; and 3) defendants will produce a complete copy of the files of the class members identified in the sample after redacting all identifying information relating to guardians and family of class members. The Magistrate Judge indicates further that access to identifying information about guardians (and presumably family members) is prohibited and that they may be contacted by the experts and class counsel only after a notice has been sent to each guardian/family member and each has consented to release their confidential information. Ruling on Reconsideration, p. 14. Unfortunately, limiting discovery in this fashion will make it nearly impossible for plaintiffs to conduct adequate discovery or to complete discovery within the time frame prescribed by the Court during the Status Conference on December 15, 2003.

The enclosed Declaration of plaintiffs' expert Celia S. Feinstein indicates that she will not be able to develop relevant opinions if discovery is confined in the manner prescribed by the Magistrate Judge. Exhibit A, Declaration of Celia A. Feinstein, ¶6. In her opinion, the discovery necessary to develop relevant opinions must include the following: 1) review the files of a sample of class members;[2] 2) meeting and interviewing the class members identified in the sample; 3) interviewing state employees and officials about the defendants' implementation of the Waiver program; 4) reviewing documents and data during the expert tours to Connecticut

---

[1] As of this date this information has not been provided and therefore the process contemplated in the Ruling has not commenced.

[2] As defendants have not as yet produced the names of persons on the DMR Residential Waiting and Planning Lists as yet, plaintiffs cannot say what the precise size of the sample that will be necessary. Plaintiffs' expert Celia S. Feinstein indicates, however, that approximately 250 class members will have to be included in the sample for an adequate study. [Exhibit A, Declaration of Celia S. Feinstein, ¶5].

which are identified by State officials as reflective of how the Waiver and/or the DMR waiting lists are administered; and 5) interviewing guardians or other responsible family members as to information they have received about the Waiver and their role in developing their ward's/family member's plan.[3] Exhibit A, Declaration of Celia S. Feinstein, ¶ 5.

Meeting the class members who are selected in the sample is a critical aspect of discovery. Yet, under the Ruling this will not be possible as most members of the class live at home with their parents/guardians and access to these guardians/family members is prohibited absent prior notice to and written consent from them. Exhibit A, Declaration of Celia S. Feinstein, ¶ 6. Clearly written notice and consent cannot be achieved within the time frame contemplated by the Court even if adequate discovery could be conducted in this fashion.

Further, access to the PRAT team files, which set the priority for each class member, case manager files and other documents that describe how the Waiver and DMR Waiting Lists have been administered will be limited and/or delayed during the tours of plaintiffs' experts as under the Ruling access is not permitted until after identifying information about guardians and/or family is deleted. In the opinion of plaintiffs' expert, this will make it difficult to accurately evaluate defendants' administration of the Waiver. Exhibit A, Declaration of Celia S. Feinstein, ¶ 7.

Finally, interviews with guardians and/or family members of class members selected in the sample will be impossible within the discovery framework prescribed by the Court at the

Status Conference if guardians/family members cannot be contacted directly to determine whether they will consent to meet with the experts and discuss their participation in the Waiver. This is particularly important as many class members are children and/or so intellectually impaired that information about how their class member's plan was developed or what they were told about the Waiver cannot be ascertained without interviewing the guardian or family member (Exhibit A, Declaration of Celia S. Feinstein, ¶ 8).

The defendants' brief asserts that the discovery plan outlined in the Ruling on Reconsideration is adequate and that the Magistrate Judge properly weighed the privacy interests of guardians against the need for discovery. The defendants' brief, however, fails to address plaintiffs' argument that the Magistrate Judge did not properly assess the interests of the guardians/family and the scope of discovery that will be necessary as required by *Burka.*

Plaintiffs argue on page 12 of their Memorandum in Support of Plaintiffs' Objection to Ruling on Discovery that the four-part balancing test in *Lora v. Board of Educ.*, 74 F.R.D. 565 (E.D.N.Y. 1977) must be applied to determine whether access to confidential information about class members should be ordered. The Magistrate Judge misapplied this test in the following ways. First, the Magistrate Judge precludes any discovery as to identifying information about guardians and family of class members because it finds that guardians are not parties to this litigation. The plaintiffs indicate on page 10 of their Memorandum in Support of Objection to Ruling on Discovery, however, that the Magistrate Judge's conclusion that guardians are not parties to this litigation is incorrect insofar as the guardian acts in his/her role of fiduciary of the

class member.

Second, the *Burka* Court holds that access to information about non-parties during discovery depends in part on that non-party's relation to the litigation. 110 F.R.D. at 665. The Magistrate Judge, however, failed to consider that almost all of the guardians and family members whose privacy is at stake have a direct and important interest in the outcome of this lawsuit. As the Second Amended Complaint graphically describes, most class members live at home, many with elderly parents, with little or no support from the state. Access to Waiver services for them is essential to prevent disintegration of the family unit. The Magistrate Judge therefore erred in treating guardians as non-parties rather than as persons with an important stake in the outcome of this litigation.

Third, as mentioned above, adequate discovery cannot be completed unless the restrictions placed on discovery are not removed and alternative safeguards established by this Court. Under the Ruling, access to class members selected in the sample may be impossible because in virtually all cases that class member lives at home with his family/guardian. Prohibiting access to the guardian or family member will in fact prohibit access to the class member. Exhibit A, Declaration of Celia S. Feinstein, ¶ 6. Moreover, under the Ruling access to many documents identified during the expert tours will be delayed until all references to the guardian and family have been redacted. This will prevent the experts from asking follow-up questions and possibly identifying other relevant documents and data. Exhibit A, Declaration of Celia S. Feinstein, ¶ 7. Finally, the Ruling will prohibit the experts from talking with the

guardians and/or family until after a notice is sent and written consent is received. Given the fact that the Court has indicated that discovery will close on or about April 15, 2003, this process will almost totally prohibit access to the parents of class members identified in the sample. Yet, those parents/guardians are the only source of information about what families have been told about the Waiver, the extent the parent/guardian has been involved in the identification of their child's needs, and the extent to which the priority established by DMR reflects their family circumstances. Exhibit A, Declaration of Celia S. Feinstein, ¶ 5. The Magistrate Judge's Ruling will therefore deprive plaintiffs' experts of the information they need to develop relevant opinions under Rules 702 and 703 of the Federal Rules of Civil Procedure.

**CONCLUSION**:

In light of the Magistrate Judge's misapplication of the test articulated in *Burka*, the Ruling of the Magistrate Judge should be reversed to the extent it holds that access to identifying information about guardians and family in defendants' documents is prohibited and to the extent it holds that contact with guardians/family will be permitted only if a notice is sent to guardians and written consent is received in response. Plaintiffs request further that the Court order defendants to provide the files of a sample of class members identified by plaintiffs' experts (without redactions) and that plaintiffs' experts be authorized to visit the home of those class members identified in the sample (or other agreed-upon locations) and interview their guardians/family if the guardian/family agrees to permit such visits/interviews when contacted by the experts. Such a procedure is likely to be fair and closely monitored as under the

Discovery Order entered by this Court, counsel for the parties have a right to be present during any such visits/interviews. This Court also assured defendants during the Status Conference on December 15, 2003 that it would be receptive to any assertion that the discovery process has been abused. Finally, it is unlikely that information obtained during discovery will be improperly disclosed as the Amended Protective Order now precludes disclosure of any information obtained during discovery about class members as well as their guardians and family. All information obtained during file reviews and interviews is strictly prohibited from disclosure by the Amended Protective Order.

                                      PLAINTIFFS,

                                      By_/s/ David C. Shaw_____
                                      David C. Shaw, Esq.
                                      34 Jerome Ave., Suite 210
                                      Bloomfield, CT 06002
                                      Fed. Bar No. ct05239
                                      Tel. (860) 242-1238
                                      Fax. (860) 242-1507

## **CERTIFICATION**

      This is to certify that a copy of the foregoing was mailed first class, postage prepaid to counsel of record on December 19, 2003.

Hugh Barber, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas M. Fiorentino, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas B. York, Esq.
Dilworth, Paxson LLP
112 Market St., 8th Floor
Harrisburg, PA 17101

Mark R. Carta, Esq.
Rucci, Burnham, Carta
  &amp; Edelberg, LLP
30 Old Kings Hwy. South
Darien, CT   06820

                                    _/s/ David C. Shaw____
                                    David C. Shaw, Esq.