UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARC/CONNECTICUT, ET. AL. | : | 3:01CV1871 (JBA) |
| PLAINTIFFS | : | |
| vs. | : | |
| | : | |
| PETER H. O'MEARA, ET AL. | : | |
| DEFENDANTS. | : | JANUARY 7, 2004 |

## MEMORANDUM IN SUPPORT OF MOTION
## FOR A SCHEDULING CONFERENCE

**INTRODUCTION:**

The plaintiffs move for a Scheduling Conference to resolve conflicts that the parties have not been able to resolve relating to a Scheduling Order and to establish a Scheduling Order that will govern the completion of all pretrial discovery. In support of this motion the plaintiffs represent that the parties are in agreement that a Scheduling Conference is necessary and that therefore holding such a conference is necessary to ensure that discovery can be completed within the time frame established by the Court during the Status Conference on December 15, 2004.

The plaintiffs represent further than many of the discovery deadlines established by the Scheduling Order entered on July 29, 2003 have expired. The plaintiffs have been unable to disclose the opinions of their experts in accordance with that Scheduling Order (by August 2, 2003) because they have been precluded from obtaining any records of defendants containing identifying information about most of the DMR clients on the DMR Residential Waiting List or

DMR Planning List due to objections raised by Defendants. Those objections have been litigated before the Magistrate Judge and appeal of her Ruling are now pending before this Court.

Moreover, on July 29, 2003 the Magistrate Judge Margolis entered an order precluding the filing of any further discovery motions until the Magistrate Judge has had an opportunity to rule on all pending motions. As the Magistrate Judge has not finally determined whether the plaintiffs' Motion to Compel the production of correspondence will be granted or denied insofar as the request for the production of the correspondence between Laura Deane, Esq. and Mary Moriarty is concerned, that Order is still in effect.

The plaintiffs and defendants are in agreement as to many aspects of the enclosed proposed Scheduling Order (Exhibit A) and Notice to Guardians/Family (Exhibit B). The parties are in agreement that the dates set out in the Proposed Scheduling Order are reasonable, but there is disagreement as to nine issues relating to how discovery by plaintiffs' experts will be conducted and how notice to the guardians and family will be implemented. The parties' disagreements over these documents are discussed in Attorney Shaw's letter to Attorney York dated December 29, 2003 (Exhibit C), and Attorney York's letter to Attorney Shaw dated December 31, 2003 (Exhibit D). These documents reveal that the following matters relating to the Scheduling Order and the Notice to Guardians/Family remain in dispute.

**ARGUMENT:**

    **Disputes over the Proposed Scheduling Order**

1.  Failure to Permit Telephone Interview With State Employees (¶¶ 1,2 of the Proposed Scheduling Order)  - Defendants indicate on page one of their letter (Exhibit D) that they will not permit plaintiffs' experts to conduct a telephone interview with persons employed by DMR and/or DSS who are familiar with how data on class members is stored and how that information can be downloaded and transferred to plaintiffs' experts in a way that will enable them to identify a sample of class members for further review.  Plaintiffs request further that those experts continue to be available if problems occur in downloading or interpreting the data while the sample is being identified.  (Exhibit A, ¶ 1).  Defendants oppose plaintiffs' request and indicate that they will proceed by providing a written description of how information is stored, and/or can be transferred and having the plaintiffs' experts frame questions based on their review of this written submission is unacceptable.  (Exhibit D, p. 1, second full paragraph).

The procedure suggested by defendants is not acceptable for at least two reasons.  First, paragraph 4 of the Discovery Order entered by the Court on February 6, 2003 [Doc. # 102] provides as follows:

> "Retained experts shall also be authorized to conduct interviews with professional and administrative staff of the Defendants, absent objection, as the experts deem necessary to develop a sufficient basis for the opinions they intend to offer at trial.  Interviews may also be conducted of the class members themselves, absent objection. Counsel for the parties shall be permitted to be present during any interviews and data gathering conducted by the experts or by persons acting on their behalf."

3

The Discovery Order clearly authorizes expert witnesses to interview state employees and officials about the operation of the HCBW that they deem appropriate to develop relevant opinions. The experience in this lawsuit is that Connecticut's data systems are complex and difficult to understand. Moreover, written communications relating to the various DMR and DSS computer systems that have been provided in this case are almost impossible to understand and have raised more questions than they have answered. Restricting plaintiffs' experts to information that can be obtained through written exchanges, therefore, will not facilitate an efficient exchange of information and a prompt identification of a sample and is therefore unacceptable.

Second, compliance with the Court's time frame will be unlikely if the experts must attempt to obtain the data about persons on the DMR Residential Waiting and Planning Lists in a format that is readily usable through written exchanges. Judge Arterton indicated during the Status Conference on December 15, 2003 that this case will be tried in October 2004. Given this time pressure and the fact that paragraph 4 of the Discovery Order clearly contemplates such conversations between plaintiffs' experts and defendants' employees we believe it essential that discovery begin with a brief conversation between plaintiffs' experts and designated employees of defendants so that the information needed by plaintiffs' experts can be promptly identified and transferred in an electronic format that is accurate, current and in a format that is readily usable by the plaintiffs' experts.

4

2. Limitation on Questions that May Be Asked of State Employees (¶ 1 of the Proposed Scheduling Order) - Defendants indicate on page 1 of their letter (Exhibit D) that they are willing to answer questions about the storage and transfer of data but cannot agree to answer questions about the interpretation or manipulation of the data.  Plaintiffs believe these telephone discussions are necessary to ensure that confusion over or questions relating to the format or complexities of the data do not preclude the prompt identification of the sample.

3. Limitations on Interviews with Guardians/Family (¶ 3 of the Proposed Scheduling Order and p. 2 of the Proposed Notice to Guardians/Family) – On page 3, paragraph 5 of his letter (Exhibit D), Attorney York indicates that plaintiffs' experts must be limited in what they can ask guardians about the Waiver.  Defendants indicate in particular that the experts may not ask consenting guardians what they have been told about the HCBW, or about "whether [their] family member/ward's needs have been appropriately assessed and addressed" as requested by plaintiffs.  Attorney York indicates that the focus expert discovery relating to guardians/family must be limited to "whether [persons in the sample] are eligible for services covered by Connecticut's HCBW and cannot obtain these HCBW services because of a violation of federal law."  Plaintiffs cannot agree to such a limitation.  Rule 703 of the Federal Rules of Evidence and the Discovery Order entered in this matter indicate that the scope of such interviews must be based on the judgment of the expert based on the issues raised in the Second Amended Complaint, not on limitations imposed by defendants.

5

3. Demand that the Sample be Agreed Upon - Defendants indicate in the third paragraph on page two of Attorney York's letter (Exhibit D) that that the files of class members will be released after the identification of an *agreed-upon* sample. In paragraph number (4) on page three of that same letter defendants' again indicate that that the size of the sample must be agreed upon. Plaintiffs oppose this previously undisclosed demand that documents and data plaintiffs' experts need to develop their opinions will not be produced unless the defendants are in agreement with the sample size. It will require weeks and perhaps months of negotiation between the parties' respective experts that may or may not lead to an agreed upon sample. Such further negotiations will make completion of discovery within the time frame established by the Court unlikely. Plaintiffs request that the Court overrule this objection so that plaintiffs can complete the disclosure of their experts' opinions within the time restrictions imposed by the Court.

4. Refusal to Provide Telephone Numbers in Advance of the Expert Tours (¶¶1,2 of the Proposed Scheduling Order) - Defendants indicate on the top of page two of Attorney York's letter (Exhibit D) that the telephone numbers of the class member's day program and/or residence will not be provided as this information should be obtained from the case manager. This information is obviously necessary so that the experts can arrange to meet the class member either in their work or living environment. Plaintiffs' position is that these telephone numbers should be provided before the plaintiffs' experts visit Connecticut. Plaintiffs do not dispute the importance of having the case manager's available to the experts during their expert

6

tours. But it should not be burdensome for defendants to supply these telephone numbers and make the case managers of persons in the sample available during the expert tours. This should not be burdensome as the sample size is anticipated to be only about 250 and no case manager would have to have to supply information about more than a handful of persons on his/her case load. This will avoid the situation that occurred during the initial tours of plaintiffs' experts of the experts having to forego necessary information because the case managers were in the field and unavailable to talk with the experts. The plaintiffs therefore that the Court overrule defendants' objection and instruct defendants to provide the most recent telephone number of the guardian/family member of individuals selected in the sample before the experts visit Connecticut and that the case manager and/or his/her supervisor will be accessible and have ready access to the class member's case management file during the limited time frame the plaintiffs' experts are on site.

     5. Refusal to Provide Discovery as to Some Persons on the Waiting Lists - Attorney York indicates on page 2, paragraph (3) of his letter that defendants will not permit discovery as to all persons on the DMR Residential Waiting and Planning Lists. Plaintiffs cannot be expected to develop a rational discovery plan if defendant is permitted to object to discovery as to DMR clients after they have been identified as members of the sample. The Court should over rule defendants and permit discovery as to all persons selected in the sample so that additional discovery disputes are not raised after the sample is selected.

     **Disputes Relating to the Proposed Notice to Guardians/Family**

1. Contact With Guardians/Family (¶ 4 of the Proposed Scheduling Order and p. 2 of the Proposed Notice to Guardians/Family) - Plaintiffs' position is that the Guardian/Family responses to the Notice to Guardians/Family must be mailed to plaintiffs' counsel and that the guardians/family must be instructed to contact class counsel with any questions they have about the lawsuit. Defendants assert that all responses to and inquiries relating to the Notice must be mailed to defendants. Plaintiffs oppose contact between the defendants and the guardians about the lawsuit as it will constitute interference with the lawyer-client relationship that exists between class counsel and the class. See, *Winfield v. St. Joe Paper Co.*, 1979 WL 15343 (N.D. Fla. 1979); *Blanchard v. Edgemark Financial Corp.*, 175 F.R.D. 293, 301 (E.D. Ill. 1997); Newberg on Class Actions (4th ed.) § 15.18 pp. 63-65. The attorneys and parties seeking to represent the class assume fiduciary responsibilities and must communicate with the class so that the class as a whole is properly represented during the litigation process. *Manual for Complex Litigation* (3rd Ed.) § 30.2. Clearly, it is class counsel's right and obligation to explain the lawsuit to his client and prior contact with class members by defendants or their attorneys constitutes interference with the lawyer-client relationship. *Blanchard v. Edgemark Financial Corp*. 175 F.R.D. 293, 301 (E.D. Ill. 1997).

2. Contact between Plaintiffs' Experts and the Guardians (¶ 4 of Proposed Scheduling Order) - The Plaintiffs' argue that their experts should be permitted to contact the guardians/family of the 250 persons whose names are identified in the sample during their expert tours in Connecticut. The plaintiffs argue that given the Court's time frame for

8

discovery, contact with the guardians/family will be impossible if the experts must wait for a positive written response to the Notice to Guardians/Family.  The guardians/family, of course, may or may not choose to speak to the experts.  Defendants' initial position was that all contact with the guardians must be with the defendants or their counsel.  Exhibit D, p. 2.  Defendants initially argued as well that the guardians/family should not be contacted unless they have provided prior written consent.  *Id.*    The parties *may* be in agreement that the experts may contact all guardians/family of the 250 persons identified in the sample who have not indicated in writing that they do not wish to participate, but may not interview them if the guardian/family refuses to be interviewed.

     3. Persons to Whom the Notice to Guardians/Family Should Be Mailed (¶ 3 of the Proposed Scheduling Order) – Plaintiffs' initial position was that the Notice to Guardians/Family should be mailed only to the guardians/family of the persons selected in the sample – approximately 250 in number.  (Exhibit C).  Plaintiffs' position was based on the fact that a mailing to the guardians of the over-2000 persons on the DMR waiting lists would be costly and would result in the need to answer the questions of perhaps hundreds of guardians/family members about the lawsuit and about the Waiver.  Keeping track of the guardians/family of these 2000 families could also turn out to be a substantial task.  Moreover, the Court has pending before it a motion that may make it unnecessary for the defendants to obtain the consent of the guardians before DMR *documents* containing identifying information about the guardians may be produced during discovery.  Defendants have taken the position that

the notice should be mailed to all persons on the DMR Waiting Lists. Plaintiffs are prepared to agree to the defendants' mailing a notice to the guardians/family of all persons on the DMR Waiting Lists provided: 1) the costs related to this mailing are absorbed by defendants, and 2) plaintiffs' experts are permitted during their expert tours to contact the guardians or family members of the DMR clients selected in the sample who have been involved in the DMR service planning unless the guardian/family member indicates either orally or in writing that they do not wish to be interviewed by plaintiffs' experts.

**CONCLUSION:**

For the foregoing reasons the Court should convene a Scheduling Conference and enter the Proposed Scheduling Order attached as Exhibit A and order the defendants to mail the Notice to Guardians/Family to all persons on the DMR Residential Waiting and Planning Lists.

        PLAINTIFFS,

        By __/s/ David C. Shaw_____
        David C. Shaw, Esq.
        34 Jerome Ave., Suite 210
        Bloomfield, CT 06002
        Fed. Bar No. ct05239
        Tel. (860) 242-1238
        Fax. (860) 242-1507

## **CERTIFICATION**

      This is to certify that a copy of the foregoing was mailed first class, postage prepaid to counsel of record on January 7, 2004:

Hugh Barber, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas M. Fiorentino, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas B. York, Esq.
Dilworth, Paxson LLP
112 Market St., 8th Floor
Harrisburg, PA 17101

Mark R. Carta, Esq.
Rucci, Burnham, Carta
 & Edelberg, LLP
30 Old Kings Hwy. South
Darien, CT  06820

                                        _____/s/ David C. Shaw_____
                                        David C. Shaw, Esq.