UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARC/CONNECTICUT, et al., <br> **Plaintiffs** <br><br> v. <br><br> PETER H. O'MEARA, et al., <br> **Defendants** | CIVIL ACTION NO. <br> 3:01CV1871 (JBA) <br><br><br><br><br> February 3, 2004 |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SCHEDULING CONFERENCE

On January 7, 2004, the Plaintiffs filed a Motion For Scheduling Conference (hereinafter referred to as "Plaintiffs' Motion"). The Defendants did not oppose the setting of a scheduling conference and, therefore, a response to the Plaintiffs' Motion was not necessary.[1] On January 26, 2004, the Court notified Defendants' counsel that a scheduling conference call had been set for February 5, 2004. The Defendants believe that a response to some of the allegations made in Plaintiffs' Motion may be helpful to the Court.[2] The Defendants now file this response to Plaintiffs' Motion.

The Plaintiffs' counsel claims that "Plaintiffs' experts have...been unable to select a sample for study." Plaintiffs' Motion at 2. In actuality, the Plaintiffs' experts could have drawn a sample from hundreds of class members previously identified by the Defendants.

In the Memorandum In Support Of Motion For A Scheduling Conference (hereinafter referred to as "Plaintiffs' Memorandum"), Plaintiffs' counsel claims that "plaintiffs have been unable to disclose the opinions of their experts...because they have been precluded from

---

[1] If a response had been necessary, it would have been due on February 2, 2004.
[2] In an abundance of caution, the Defendants have filed a motion for enlargement of time to respond to Plaintiffs' Motion, even though they did not oppose the request for a scheduling conference.

21651_1                                1

obtaining any records of defendants containing identifying information about most of the DMR clients on the DMR Residential Waiting List or DMR Planning List." As previously noted, the Plaintiffs could have concluded expert opinions on previously identified class members.

Plaintiffs' counsel notes that "Defendants indicate on page one of their letter [dated December 31, 2003]...that they will not permit plaintiffs' experts to conduct a telephone conference call." However, Defendants' counsel clarified this position during a telephone conversation with Plaintiffs' counsel on December 31, 2003. Plaintiffs' counsel was advised on that date that Defendants would start with written descriptions of the database <u>but would consider further sharing of information, if necessary, by writing or by interview</u>. The Defendants were optimistic that the data system would be understandable to Plaintiffs based upon written materials and that "interviews" would be unnecessary. On January 16, 2004, the Defendants provided a diskette of information to Plaintiffs' counsel. On January 23, 2004, the Defendants offered assistance in accessing the data on the diskette.[3] To date, Plaintiffs' counsel has not responded to this offer of assistance.

Plaintiffs' counsel claims that Defendants want to restrict the sharing of information to "written exchanges". Plaintiffs' Memorandum at 4. This is obviously false, as evidenced by Exhibit A.

Plaintiffs' counsel incorrectly claims that Defendants "cannot agree to answer questions about the interpretation or manipulation of the data." Plaintiffs' Memorandum at 5. To the contrary, Defendants' counsel agreed in the telephone conversation on December 31, 2003 to answer all reasonable questions. The Plaintiffs' counsel, however, wanted Defendants to agree to make Defendants' employees "accessible" and to answer questions on "manipulation" of data

---

[3] Defendants' counsel wrote to Plaintiffs' counsel on January 23, 2004. (A copy of this letter is attached as Exhibit A.)

21651_1          2

<u>without any reasonable limitations</u>. The Defendants could not agree to converting their employees into workers for the Plaintiffs without proper limits. Defendants clearly stated:

> Defendants cannot agree to such broad and vague language as making "Defendants' employees...accessible to plaintiffs' experts" and "resolv[ing] any problems that occur with regard to the...interpretation, or <u>manipulation</u>, of the data." (emphasis added).

Defendants' letter dated December 31, 2003. The Plaintiffs' counsel distorts the position of Defendants' counsel.

Plaintiffs' counsel next mistakenly claims that "plaintiffs' experts must be limited in what they can ask guardians about the Waiver" and "the experts may not ask consenting guardians what they have been told about the HCBW." Plaintiffs' Memorandum at 5. To the contrary, Defendants' counsel <u>never</u> suggested such limitations. Instead, Plaintiffs' counsel inappropriately asked Defendants to agree to an overly broad statement of approving review by the Plaintiffs' experts of whether "needs have been appropriately assessed and addressed." Instead, the Defendants appropriately responded:

> The focus of any contact with consenting guardians/family members should not be as broad as "whether your family member/ward's needs have been appropriately assessed and addressed." Rather, the focus should be on whether they are eligible for services covered by Connecticut's HCBW and cannot obtain these HCBW services because of a violation of federal law.

Defendants' letter dated December 31, 2003. The Defendants suggest a "focus" that is not only consistent with the class definition but also that does not limit any reasonable inquiry by the Plaintiffs' experts. <u>Furthermore, the Defendants never demanded that their suggested "focus" be included in the notice.</u> Again, the Plaintiffs' counsel distorts the position of the Defendants' counsel.

The Plaintiffs' counsel next inappropriately claims that Defendants' counsel is demanding that the sample size be agreed upon before any notice is sent. Plaintiffs' Memorandum at 6. This is blatantly false. The Defendants stated:

> Although a sample of 250 may be reasonable, Defendants do not yet agree with that number and do not see a need to set a number in the notice as to the size of the sample.

Defendants' letter dated December 31, 2003. The Defendants merely stated that they need "three (3) weeks to produce for inspection the files of any agreed upon sample." The reference to "agreed upon sample" is only to reserve the right of Defendants to object, if appropriate. There is no current objection, as a sample has not been selected, and there is no reason to delay the notice. The Plaintiffs' counsel inappropriately wants Defendants to agree to a sample size of 250 before this case proceeds forward.

Plaintiffs' counsel next incorrectly claims that Defendants have refused to provide telephone numbers of day programs or residences before the expert tours. To the contrary, the Defendants appropriately noted:

> Please note that the telephone numbers for where an individual lives and where the individual attends day program may not be readily available. Since you will receive the contact information for case managers, Defendants will expect the Plaintiffs to obtain this information from the case managers.

Defendants' letter dated December 31, 2003. As Defendants' counsel advised Plaintiffs' counsel by telephone on December 31, 2003, Defendants would produce all telephone numbers they have in their data system, but Plaintiffs could just as easily contact the case managers as could Defendants to obtain residence numbers and day program numbers. The Plaintiffs' counsel inappropriately seeks to force Defendants to do the work of preparing Plaintiffs' case.

Plaintiffs' counsel falsely claims that Defendants "will not permit discovery as to all persons on the DMR Residential Waiting and Planning Lists." Plaintiffs' Memorandum at 7. As

21651_1                                    4

explained to Plaintiffs' counsel, the Defendants do not agree to "full" (unlimited) discovery of persons on these lists because many are not class members. The Defendants can only agree to discovery necessary to determine who are class members and discovery on those identified as class members. There was no attempt to prevent any reasonable discovery. Once again, Plaintiffs' counsel claims an issue when no objection has yet been raised by the Defendants. The Plaintiffs' counsel inappropriately seeks the agreement by Defendants that Plaintiffs' experts can conduct unlimited discovery even on non-class members.

Additionally, Plaintiffs' counsel claims that having consent forms from guardians returned to the Defendants is "interference with the lawyer-client relationship." Plaintiffs' Memorandum at 8. Having notices returned to the State indicating consent or non-consent to sharing information <u>held by the State</u> with Plaintiffs' counsel <u>in no way interferes with the attorney-client relationship</u>.[4] The State is not obtaining any confidential attorney-client information and is not discussing the lawsuit with these individuals. Also, if a guardian or family member declines to release information to Plaintiffs, it is inappropriate for Plaintiffs' counsel to receive the response which might contain identifying information about that guardian. Furthermore, Plaintiffs' counsel inappropriately assumes that all persons receiving the notice are guardians or family members of class members and are represented by Plaintiffs' counsel. This assumption is obviously wrong. Furthermore, those guardians and family members are not represented by Plaintiffs' counsel. Defendants' counsel has offered to include a provision that advises persons that they may contact Plaintiffs' counsel or the State if they have any questions.

---

[4] The cases and treatises cited by Plaintiffs' counsel do not support his claim that the attorney-client relationship will suffer "interference" if consent notices are returned to Defendants. The legal citations by the Plaintiffs' counsel are clearly distinguishable from the present case.

21651_1                           5

By providing contact information for both the Plaintiffs and the State, the parties can adequately address any concerns and still protect the confidentiality rights of these persons. The refusal by Plaintiffs' counsel to consider such an addition to the notice has unnecessarily delayed the notice.

The Plaintiffs' counsel next mysteriously claims that "Defendants have taken the position that the notice should be mailed to all persons on the DMR Waiting Lists." Plaintiffs' Memorandum at 9-10. Defendants' counsel has never suggested a mailing to all persons on the Waiting List.

Respectfully submitted,
DILWORTH PAXSON LLP

Thomas B. York
Fed. Bar No. ct 17663
112 Market Street, 8th Floor
Harrisburg, PA 17101
Tel.: (717) 236-4812

Attorney for the Defendants

21651_1                                6

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via facsimile and first-class, postage-prepaid mail on this ___3rd___ day of __February__ 2004, on the following individuals:

David C. Shaw, Esq.
34 Jerome Ave.
Suite 210
Bloomfield, CT 06002

Hugh Barber, Esq.
Assistant Attorney General
Office of the Attorney General
P.O. Box 120
Hartford, CT 06141-0120

Thomas Fiorentino, Esq.
Assistant Attorney General
Office of the Attorney General
P.O. Box 120
Hartford, CT 06141-0120

Mark Carta, Esq.
Rucci, Burnham, Carta & Edelberg, LLP
30 Old Kings Highway South, P.O. Box 1107
Darien, CT 06820

James P. Welsh, Esq.
Director, Legal & Government Affairs
CT Dept. of Mental Retardation
460 Capitol Avenue
Hartford, CT 06106

_____
Thomas B. York

21651_1                                     7

# DILWORTH PAXSON LLP
LAW OFFICES

January 23, 2004

EXHIBIT "A"

<u>Via Facsimile and First-Class U.S. Mail</u>
David C. Shaw, Esq.
34 Jerome Avenue
Suite 210
Bloomfield, CT 06002

RE: <u>ARC v. O'Meara</u>

Dear Mr. Shaw:

    On January 5, 2004, you noted that "we agreed during our telephone conversation on December 31, 2003 to ask for a scheduling conference to establish a scheduling order." Your letter of January 5 was mistaken in several other respects. I had hoped that a scheduling conference would be quickly scheduled to allow us to address these issues. Since a scheduling conference has not been promptly set, and since I am now working on a response to your Motion For Scheduling Conference and to your Memorandum In Support Of Motion For Scheduling Conference, I believe it is necessary to respond to your letter of January 5, 2004 in an attempt to resolve any misunderstandings.

    As I advised you by telephone on December 31, 2003, the Defendants preferred to provide you with documents and materials that explained how information is stored or maintained on persons on the DMR Residential Waiting and Planning Lists. I volunteered that if that information required further clarification or explanation, then we would provide a further response, which may or may not require direct "interviews" between your experts and "employees of the defendants". You rejected this offer and arbitrarily, in my opinion, insisted on your method of gathering this information. The proper focus should be on providing the necessary information, and not on whether it is provided by "interviews" instead of by documentation. In fact, any "interviews", if necessary, would be more productive and efficient if we first exchanged materials that represent the system that is in place. Your refusal to accept a description of the system does not allow you to determine if "interviews" are even necessary.

    Your claim that our position "is inconsistent with paragraph 4 of the Discovery Order" is incorrect. The Discovery Order does not require that all information be provided by "interviews". For example, if you ask for identification of everyone on the Planning List, you are not entitled to have a state employee read the entire list to you rather than submitting a written list to you. The Defendants are only trying to conduct discovery in a reasonably efficient and productive manner. There was never any position taken by the Defendants that we were "[r]estricting the experts to information that can be obtained through written exchanges through counsel."

112 MARKET STREET • 8TH FLOOR • HARRISBURG PA 17101
(717) 236-4812 • FAX (717) 236-7811 • www.dilworthlaw.com

21632_1

CHERRY HILL NJ    NEPTUNE NJ    NEWTOWN SQUARE PA    PHILADELPHIA PA    WASHINGTON DC    WILMINGTON DE

Your second claim that "compliance with the Court's time frame will be impossible if the experts must obtain the data...in a format that is readily usable through written exchanges" is also inaccurate. First of all, you could not possibly make this claim until you saw our materials explaining the system. Secondly, as previously stated, there is no blanket restriction of providing information "through written exchanges". I could similarly distort your position by claiming that you seek to restrict all information exchanges to verbal interviews.

It may have been your assumption that all data be transferred by January 15, 2004, but Defendants never agreed to such a date and, in fact, proposed January 30, 2004. The January 30th date probably could have been met if we had worked cooperatively to exchange information on the system. If we diligently work on this exchange, I believe that we could attempt to provide the requested information by February 6, 2004. I encourage you to work with us on the materials we provide, and then we can all determine what supplementation, by writing or by interview, is necessary.

Consistent with this effort at cooperation, and despite your refusal to consider written documents or other materials, the Defendants provided to you on January 16, 2004 a diskette containing information on one class member to serve <u>as an example</u>. The diskette also contained tables with definitions of codes. This was submitted to you to encourage your feedback on whether this information and format were adequate. The diskette was provided, over your objection, because we wanted to move discovery along while waiting for the scheduling conference.

On January 16, 2004, you claimed that your "computer experts cannot read the data files" on the diskette. You also claimed that "the few tables that can be read contain no data or are otherwise unusable." Since we, Defendants' counsel, were able to open and read the diskette, and were able to determine that it did contain most, if not all, of the intended information, we cannot understand your inability to access the data. We are willing to arrange a conference call to attempt to assist you in accessing the data. Only after we resolve your problem with accessing data will it make sense to decide how to forward information to you. Please provide several possible dates/times for such a telephone call.

You claim that you cannot agree to "such a limitation" as interviews with consenting guardians "must be limited 'to whether [persons in the sample] are eligible for services covered by Connecticut's HCBW and cannot obtain these HCBW services because of violation of federal law'." First of all, it was you who inappropriately asked Defendants to agree to an overly broad area of "whether your family member/ward's needs have been appropriately assessed and addressed." This description obviously exceeds the scope of this litigation. Secondly, the Defendants' position is taken from the class definition as certified by the Court and, therefore, is entirely appropriate. Thirdly, we never demanded that our statement be placed in the notice to guardians. As you were advised on December 31, 2003, your overly broad statement in the notice is inappropriate and unnecessary, and should be deleted.

You inaccurately claim that the Defendants "indicate that the size of the sample must be agreed upon." To the contrary, it is obviously you who are demanding that we agree to a sample of 250. The Defendants stated that we "do not see a need to set a number in the notice as to the

21632_1                                          2

size of the sample." The notice, as you were advised on December 31, 2003, can be sent without stating a sample size. Defendants never stated "that documents and data [y]our experts need to develop their opinions will not be produced unless the defendants are in agreement with the sample size." You are creating an issue that was not raised by the Defendants. The Defendants need not agree to your sample size for discovery to proceed. The Defendants can reserve a right to object to the sample size if they ever deem it appropriate.

Your claim that "[d]irect communication between the guardians and/or family and defendants about the lawsuit would constitute impermissible interference with the attorney-client relationship." Having notices returned to the State indicating consent or non-consent to sharing information held by the State with Plaintiffs' counsel in no way interferes with the attorney-client relationship. The State is not obtaining any confidential attorney-client information and is not discussing the lawsuit with these individuals. Also, if a guardian or family member declines to release information to Plaintiffs, it is inappropriate for Plaintiffs' counsel to receive the response which might contain identifying information about that guardian. Furthermore, you inappropriately assume that all persons receiving the notice are guardians or family members of class members and are represented by you. This assumption is obviously wrong. I offered to you on December 31 that we could include a provision that advises persons that they may contact Plaintiffs' counsel or the State if they had any questions. By providing contact information for both the Plaintiffs and the State, we can adequately address your concerns and the confidentiality rights of these persons. Your refusal to consider such an addition to the notice has unnecessarily delayed the notice.

I agreed that some type of follow-up might be appropriate for those persons who do not respond to the notice. I did not specifically agree that "telephone contact will be made by the expert with the DMR case manager just before or during the expert tour." The type and nature of the follow-up must be decided with full consideration of the confidentiality rights of guardians and family members. Since you apparently do not trust the State to make such contact alone, perhaps we can consider an impartial person making those telephone calls. I am open to suggestions that do not reveal confidential information to your experts before there has been consent to release such information. In the meantime, the notice can be sent while we work on any agreement as to follow-up.

The last page of your January 5 letter indicates "Areas of Disagreement", when I believe you meant "Areas of Agreement".

In your letter dated January 5, you stated that you would "call before the Scheduling Conference to see if we can reach agreement on the issues." I assume that you have not yet called because no scheduling conference has been set. I, however, felt that my comments could not wait any longer.

I believe that a notice to guardians could be quickly finalized and sent, without the need for intervention by the Court. I would encourage you to address our reasonable comments and approve a notice so that this case can move forward while we wait for a scheduling conference.

21632_1                                         3

      I will be addressing your Motion For A Scheduling Order and supporting Memorandum in a separate document.

      Thank you for your consideration of these comments, which are a good faith effort to avoid further delay in discovery.

Very truly yours,

*Thomas B. York*

Thomas B. York

C:    James Welsh, Esq. / Kathleen Egan
      Hugh Barber, Esq. / Thomas Fiorentino, Esq.
      Mark Carta, Esq.
      Steven Goodman, Esq.

21632_1              4