UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARC/CONNECTICUT, ET. AL.          : | |
| : | 3:01CV1871 (JBA) |
| PLAINTIFFS          : | |
| vs.          : | |
| :          | |
| PETER H. O'MEARA, ET AL.          : | |
| :          | |
| DEFENDANTS.          : | MARCH 30, 2005 |

## MOTION FOR PRELIMINARY APPROVAL
## OF SETTLEMENT AGREEMENT AND FOR AN ORDER REQUIRING
## NOTICE TO THE CLASS AND SCHEDULING OF A FAIRNESS HEARING

The parties hereby submit a Settlement Agreement as a full and final resolution of the issues raised by this lawsuit. Also enclosed is a proposed Notice to class members notifying them that the Settlement Agreement has been presented to the Court and explaining what steps they should take if they have comments or objections they would like the Court to take into consideration before it determines whether the proposed Settlement is a fair and reasonable. The parties have agreed to the content of this proposed Notice. This Motion requests that the Court issue the following orders relating to preliminary approval of the Settlement Agreement and Notice to the class:

1. Issue an order indicating the Court's preliminary approval of the Settlement Agreement as a fair and reasonable resolution of the dispute of the issues raised by this lawsuit;

2. Issue an order approving the content of the enclosed Notice of Settlement;

3. Issue an order requiring defendants to notify each class member of the Settlement by:

1) mailing a copy of the attached Notice of Settlement with the DMR Newsletter to each DMR client (and his/her parent/or guardian) who is currently enrolled in the Waiver and to each additional DMR client who was listed on the DMR Residential Waiting or Planning Lists as of October 2, 2001 or have been added to those lists at any time subsequent; and 2) publishing the attached Notice of Settlement on one occasion in the <u>Hartford Courant</u>, <u>New Haven Register</u>, <u>Waterbury Republican</u>, <u>New London Day</u>, <u>Connecticut Post</u>, and <u>Stamford Advocate.</u>

    4.  Issue an order requiring defendants to certify to the Court as to the manner in which the notification process was completed.

    5.  Issue an order scheduling a fairness hearing to determine whether the Settlement Agreement should be finally approved by the Court.

    A proposed order is enclosed for the Court's consideration.

                PLAINTIFFS,

                 By /s/   *David C. Shaw*
                 David C. Shaw, Esq.
                 Fed. Bar No. ct05239
                 34 Jerome Ave., Suite 210
`               Bloomfield, CT 06002
                 Tel.  (860) 242-1238
                 Email   dcshaw@cttel.net

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARC/CONNECTICUT, ET. AL. : | |
| : | 3:01CV1871 (JBA) |
| PLAINTIFFS : | |
| vs. : | |
| : | |
| PETER H. O'MEARA, ET AL. : | |
| : | |
| DEFENDANTS. : | |

## **PROPOSED ORDER**

The Court, after reviewing the Settlement Agreement negotiated by the parties as well as the Notice of Settlement that has been agreed upon by the parties, finds preliminarily that the Settlement Agreement is a fair and reasonable resolution of the issues raised by this lawsuit. The Court also enters the following orders relating to providing notice of the Settlement to the class and of the process through which a final determination will be made as to whether the Settlement Agreement will be approved and entered by the Court:

1. The content of the Notice of Settlement agreed to by the parties is hereby approved.

2. Defendants are ordered to notify each class member of the Settlement by:

1) mailing a copy of the attached Notice of Settlement with the DMR Newsletter to each DMR client (and his/her parent/or guardian) who is currently enrolled in the Waiver program and to each additional DMR client who was listed on the DMR Residential Waiting or Planning Lists as of October 2, 2001 or have been added to those lists at any time subsequent; and 2) publishing the attached Notice of Settlement on one occasion in the Hartford Courant, New

Haven Register, Waterbury Republican, New London Day, Connecticut Post, and Stamford Advocate.

    3.  Defendants are ordered to certify to the Court as to the manner in which the notification process was completed.

    The District Court will receive written comments from interested persons until May 5, 2005.  Written comments should be addressed to:

>   The Honorable Joan Margolis
>   United States Magistrate Judge
>   United States District Court, District of Connecticut
>   141 Church Street
>   New Haven, CT  06505

    A fairness hearing will be held on May 19, 2005 at 10:00 a.m. in Courtroom 2, United States District Court, 141 Church St., New Haven, Connecticut to consider comments and objections to the Settlement Agreement and to determine whether the Settlement will be approved and entered as a fair and reasonable resolution of the lawsuit for the class.

                                        BY THE COURT,

                                        _____

                                        Hon. Janet Arterton
                                        United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ASSOCIATION FOR RETARDED CITIZENS – CONNECTICUT, ET.AL. | : | 3:01CV1871 (JBA) |
| | : | |
| PLAINTIFFS | : | |
| | : | |
| vs. | : | |
| | : | |
| PETER H. O'MEARA, COMMISSIONER, DEPARTMENT OF MENTAL RETARDATION, AND PATRICIA WILSON-COKER, COMMISSIONER DEPARTMENT OF SOCIAL SERVICES | : : : : : | |
| | : | |
| DEFENDANTS | : | APRIL   2005 |

### NOTICE OF SETTLEMENT AGREEMENT
### RESOLVING PENDING CLASS ACTION

### ATTENTION: CONNECTICUT CITIZENS WITH
### MENTAL RETARDATION, FAMILIES,
### GUARDIANS AND ADVOCATES

The United States District Court has received a Settlement Agreement negotiated by the parties to this class action civil rights lawsuit concerning the "Waiting List" for residential placement, support, and services maintained by the Department of Mental Retardation (DMR), and the administration and operation of the "Home and Community Based Services" waiver, under Title XIX of the Medicaid Act, by the Department of Social Services (DSS) and DMR. This lawsuit was initiated by twenty-six (26) individuals, as representatives of the class, and ARC-Connecticut as an organizational representative. The lawsuit sought on behalf of the class injunctive and declaratory relief requiring the defendants DMR and DSS to provide services and supports responsive to the individual needs of DMR clients listed on the DMR Waiting and Planning Lists.

The "class" certified by the District Court is defined as follows:

*All individuals*
*(1) who have been found to be eligible and remain eligible for DMR services in accordance with state law, and*
*(2) who either (a) have applied for and are eligible for services covered by Connecticut's Home and Community Based Waiver (hereinafter referred to as "HCBW"); or (b) would apply for and be eligible for services covered by Connecticut's HCBW, if given the reasonable opportunity to apply; and*
*(3) who cannot obtain the HCBW services for which they are presently eligible or for which they would be eligible, if given the reasonable opportunity to apply,*
*(4) because of the policies and practices of the defendants that are prohibited by federal law.*

The Settlement Agreement provides a commitment of state resources, within an average cost of $50,000, which are sufficient to meet the residential placement/support/service needs of 150 individuals on the DMR "Waiting List", who are determined to have the most urgent needs, this year and each year through June 30, 2009. In addition, the settlement requires enhanced support, not less than an average of $5,000 per individual, to 100 individuals and families each year until June 30, 2009. The Settlement Agreement also requires the state to apply for a second, more flexible, waiver to meet the needs of class members and to develop policies and procedures concerning the administration of the waivers, including formal hearing processes to contest decisions regarding waiver and waiver service eligibility. Under the settlement these new policies and procedures must permit application by any person wishing to apply for the HCBS waiver, must require that individual service plans developed under the waiver be based on the needs of the disabled individual, must require that individual service plans be developed by a "team" (consisting of a DMR Case Manager or broker, an independent broker, as applicable, the individual, family and Circle of Support), must establish an individual budget negotiation process consistent with DMR cost standards and based on individual needs for each HCBS waiver recipient, must require that the DMR client may use negotiated funding to purchase services from an approved provider of his/her choice, and must require that disputes over individual budgets will be resolved through the fair hearing process.

The complete text of the Settlement Agreement is posted on the DMR website (www.ct.gov/dmr) and copies may be obtained by calling the DMR Division of Legal & Government Affairs ((860) 418-6085). The Settlement Agreement was submitted by the Connecticut Attorney General to the Connecticut General Assembly for review and public hearing. The District Court will receive written comments from interested persons until May 5, 2005. Written comments should be addressed to:

>The Honorable Joan G. Margolis
>United States Magistrate Judge
>United States District Court
>District of Connecticut
>141 Church Street
>New Haven, CT  06505

A hearing will be held before Honorable Janet Arterton, United States District Judge, on May 19, 2005, at 10:00 a.m., United States District Court, 141 Church Street, New Haven, Connecticut, relating to the fairness of the Settlement Agreement to the class.

If you have any questions about the Settlement Agreement or about the process for reviewing the fairness of the Settlement Agreement, you may contact David C. Shaw, Esq., Attorney for the Plaintiff Class, at (860) 242-1238.

>*SO ORDERED*
>Janet B. Arterton
>United States District Judge
>/s/ __/__/05

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARC/CONNECTICUT, ET. AL.      :      3:01CV1871 (JBA)

    PLAINTIFFS              :

vs.                                   :

PETER H. O'MEARA, ET AL.    :

    DEFENDANTS.          :      MARCH 30, 2005

## SETTLEMENT AGREEMENT

I.    Introduction

    A.    This Agreement is entered into by the Plaintiffs (Arc/Connecticut, Stephen Kuziel, by his parents and next friends, Barbara and Stephen Kuziel; Kevin Ulsh, by his parents and next friends, Molly and Stanley Ulsh; Stacey Reichenbach, by her father and next friend, Steven Reichenbach; Lucien Greca, by his mother and next friend, Rose Greca; Ryan O'Kane, by his mother and next friend, Carolyn O'Kane; Matthew Vigorito, by his parents and next friends, Linda and Alfred Vigorito; Sara Austin-Small, by her parents and next friends, Linda and Peter Austin-Small; Paula Sage, by her parents and next friends, Pat and Henry Sage; Jacob Pratt, by his mother and next friend, Chris Pratt; Mary Weglowski; Linda O'Neill; Heather Bouffard, by her mother and guardian, Pauline Bouffard; Sean Bouffard, by his mother and guardian, Pauline Bouffard; John Broderick, by his mother and guardian, Julie Broderick; Jessica Connolly, by her mother and guardian, Barbara Connolly; Marcus Damiano, by his mother and guardian, Annette Damiano; Carmella DePanfilis, by her niece and next friend, Mary Anne

Running; Erin Hart, by her mother and guardian, Jan Hart; Robert Janelle III, by his mother and guardian, Marie Janelle; Greg Knowles, by his mother and next friend, Judy Knowles; Kathryn Merchant, by her father and guardian, Donald E. Merchant; Sarah Miller, by her mother and guardian, Karen Miller; Justin Seaver, by his parents and guardians, David and Cynthia Seaver; Alicia Steinfeld, by her mother and guardian, Arlene Steinfeld; Connie Sullivan, by her mother and guardian, Rita Sullivan; and Wendy Sullivan, by her mother and guardian, Rita Sullivan.); and the Defendants, Peter O'Meara, Commissioner, Connecticut Department of Mental Retardation, in his official capacity, and Patricia Wilson-Coker, Commissioner, Connecticut Department of Social Services, in her official capacity.

The plaintiffs filed this action on their own behalf and on behalf of all other persons similarly situated asserting violations of Medicaid law by defendants' alleged failure to advise persons on the DMR Residential Waiting List and DMR Planning List about the Waiver, their alleged failure to provide a process through which such persons may apply for and receive Medicaid funding for new community residential supports, their alleged failure to provide funding based on a client's individual needs, their alleged failure to provide Medicaid funding to cover community residential supports with reasonable promptness, their alleged failure to provide notice and a fair hearing to persons who disagree with decisions made under the Waiver program, and their alleged failure to provide access to Waiver funding to DMR clients institutionalized in DMR institutions and nursing homes.

    B.    A class was certified on January 30, 2003 to include:

    All individuals

(1) who have been found to be eligible and remain eligible for DMR services in accordance with state law, and

(2) who either (a) have applied for and are eligible for services covered by Connecticut's Home and Community Based Waiver (hereinafter referred to as "HCBW"); or (b) would apply for and be eligible for services covered by Connecticut's HCBW, if given the reasonable opportunity to apply; and

(3) who cannot obtain the HCBW services for which they are presently eligible or for which they would be eligible, if given the reasonable opportunity to apply,

(4) because of the policies and practices of the defendants that are prohibited by federal law.

C. The parties to this lawsuit, desiring a negotiated resolution to the litigation hereby agree to resolve all claims and defenses, made or which could have been made, upon the terms and conditions stated herein. This agreement is intended to resolve all issues in dispute in this action as to the class as a whole.

D. This Settlement Agreement is contingent upon approval in accordance with Section 3-125a of the Connecticut General Statutes and such "fairness hearings" as may be dictated by the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure, and the Rulings of this Court.

E. The parties expressly acknowledge that the creation or modification of the waivers discussed hereinafter requires the approval of the federal government and that it is beyond the power of any party to this agreement to compel the federal government to grant that approval. The defendants shall apply, in conformity with all federal requirements, to the federal government for the necessary federal approval for the implementation of the aforesaid waivers.

F.  No portion of this Settlement Agreement is severable and no portion of this Settlement Agreement is enforceable unless and until there is a full, final and complete agreement which includes approval by the Connecticut General Assembly.

G.  In reaching this settlement the Defendants expressly do not admit liability, or violation of the law, as to any claims made or which could have been made by the Plaintiffs in this lawsuit.

II. Definitions

A.  "Waiting List" means the group of individuals who have requested residential placement, support or services from DMR and who are assigned a priority of "Emergency" or "Priority I" in accordance with the priority system required under Conn. Gen. Stat. Sec. 17a-212.

B.  "Most Urgent Need" means individuals on the Waiting List who have a priority assignment of "Emergency" or "Priority I" and are determined to have the most immediate need for HCBS waiver services in order to assure basic health and safety.

C.  "Complaint" means the Second Amended Complaint filed in this matter dated February 6, 2003.

D.  "Emergency" means a priority assignment defined by DMR indicating that an individual has been determined to have an immediate need for residential placement, support, or services.

E.  "Priority I" means a priority assignment defined by DMR indicating that an individual has been determined to have a need for residential placement, support, or services within one (1) year.

F.  "Priority II" means a priority assignment defined by DMR indicating a determination that an individual has a potential need for residential placement, support, or services within two (2) to five (5) years.

G.  "Priority III" means a priority assignment defined by DMR indicating that an individual has been determined to have a potential need for residential placement, support, or services more than five (5) years in the future.

H.  "Team" means the group responsible for planning for the class member that includes a DMR case manager or broker, an independent broker, as applicable, the individual, family and circle of support.

I.  "Waiver" or "Home and Community Based Waiver" or "HCBW" mean Connecticut's approved applications for Home and Community Based Services Waiver(s) submitted pursuant to 42 U.S.C. § 1396n, including the application currently approved by CMS (HCBW # CT 0153,90.R2) and subsequent applications submitted and approved pursuant to federal law during the term of the Settlement Agreement.

J.  "PRAT" means the DMR Regional Planning and Resource Allocation Team;

K.  "Grads" means individuals eligible for DMR services who are exiting education programs under the Individuals with Disabilities Education Act (hereinafter referred to as "IDEA");

L.  "Age-outs" means individuals eligible for DMR services who are served by other public agencies in residential facilities during childhood and youth and have reached the end of eligibility for such services; and

M.  "Planning list" means those individuals who are determined to be either Priority 2 or Priority 3.

III.  Creation of a Second, "Individual and Family Support", HCBS Waiver

A.  The Defendants shall apply to the federal government, in conformity with all relevant federal requirements, for authorization to create and establish a second Individual and Family Support HCBS waiver during the state fiscal year commencing July 1, 2004, designed to provide an array of waiver-covered supports and services in settings other than "residential facilities" for persons with mental retardation.

B.  The "Individual and Family Support" waiver, if approved by the federal government, shall offer an array of supports that complement and do not supplant the current HCBS waiver (or its successor), and that emphasize the provision of "self directed" supports and services tailored to meet individual and family needs.

IV.  Establishment of New "Comprehensive" HCBS Waiver

A.  The Defendants shall apply to the federal government, in conformity with all relevant federal requirements, for authorization to establish a new "comprehensive" HCBS waiver, as a replacement or successor to the current HCBS waiver, to provide services and supports to individuals who need and require such waiver services on a "comprehensive" basis,

both within "residential facilities" for persons with mental retardation and otherwise, throughout the term of this agreement.

B.  Class members and other individuals who do not need "comprehensive" supports and services may enroll in the "Individual and Family Support" waiver without loss or diminution in services and supports. The creation of a new "comprehensive" waiver is a necessary complement to the establishment of the "Individual and Family Support" waiver.

C.  Defendants shall implement the current waiver, or waivers to be developed, in such a fashion that class members are not denied needed services or supports because of the particular waiver program in which they have been enrolled.

D.  The parties expressly acknowledge that the creation and subsequent implementation of the new comprehensive HCBS waiver depends upon the approval of the federal government.

V.  Forbearance from State Invocation of "Factor 'C'"

A.  The approved HCBS waiver that Connecticut administers and operates includes the following provision:

> *The state will make waiver services available to individuals in the target Group [persons with mental retardation eligible for waiver services]* up to the lesser of the number of individuals indicated as factor C for the waiver year, or the number authorized by the State legislature for that time period.
>
> *The state will* inform *HCFA [CMS] in writing of any limit which is less than factor C for that waiver year.*

Approved Connecticut HCBS Waiver Application, App. G, at G-2 (emphasis supplied).

7

B.  The Defendants agree for the five year term of this Settlement Agreement, to refrain from invoking the foregoing provision of the approved HCBS waiver and future waivers for the purpose of lessening its commitment set out in Section IX.A. of this Settlement Agreement.

VI.  Communication and Training About HCBS Waiver(s)

A.  The Defendants agree to develop and implement an on-going initiative designed to inform class members, their guardians, family and advocates of:

(1) Connecticut's HCBS waiver(s) and the benefits of enrollment in the program;

(2) new developments in the administration and operation of the HCBS waiver(s);

(3) the application, enrollment, eligibility, and "needs" assessment processes related to the HCBS waiver(s); and

(4) their rights to hearings, in accordance with the UAPA and applicable federal law, to contest decisions about eligibility and/or needed waiver services.

B.  The public information initiative shall include: (1) development and periodic dissemination of "fact sheets" concerning the HCBS waiver(s); (B) brochures, web-based information; and (C) family forums and collaborative conferences.

C.  The Defendants will establish training for Case Managers, Brokers and all staff and administrators who have decision-making responsibilities related to the HCBS waiver(s) and/or responsibility relating to informing class members about the waivers.

VII.  HCBS Waiver Application and Enrollment Process

A. The Defendants shall promulgate policy and procedures, including forms, within three months of Court approval of this Settlement Agreement, to guide the waiver application and enrollment process for class members. These policies and procedures shall:

1. permit application by any person who wishes to apply;

2. include a level of need assessment process;

3. require that the development of any proposed plan of services be based on the needs of the individuals as determined by the team and that the services requested be available under the applicable waiver;

4. establish cost ranges for plans of services that correspond to DMR determined levels of need;

5. establish a negotiation process to develop individual budgets that are consistent with DMR cost standards, based on individual needs, and for services and supports available under the applicable waiver;

6. establish policy and procedures for seeking additional waiver services as well as unanticipated or emergency services for individuals who are already "recipients" of waiver services;

7. provide for prompt notification to applicants, guardians and families, as appropriate, of decisions for which a fair hearing process is available.

B. Application for enrollment in any HCBS waiver, and any request for additional or enhanced HCBS waiver services, commences at the case manager/broker, independent broker, individual, family, "circle of support" or "team level." An application for HCBS waiver enrollment, and any request for additional waiver services, as agreed to by the team, will be submitted by the case manager/broker to the DMR Regional Planning and Resource Allocation Team (PRAT). The PRAT may authorize the requested waiver services (providing notice to the DMR Waiver Unit) or make a recommendation on the request for consideration of the DMR

9

Waiver Unit. The defendants shall act promptly on applications for waiver enrollment, and requests for additional waiver services, in accordance with applicable law, and provide notice of decisions in accordance with policy and procedures established pursuant to Section VII.A., *supra*.

C.  Recommendations for enrollment in any HCBS waiver shall be made promptly to DSS by the DMR Waiver Unit for all class members, provided that sufficient State general funds have been appropriated to DMR for this purpose and the "cap" established by the waiver(s) has not been reached. DSS has the sole authority to enroll any individual in any HCBS waiver. This provision does not alter in any way the resource commitment to class members set forth in this Settlement Agreement.

D.  Priority for residential habilitation services shall be given to class members who are determined to be most in need of such services (i.e. those with "waiting list" priority designation of "E" and "I") during the term of this Settlement Agreement. Factors considered in determining "priority assignment" include, but are not limited to: the age of the caregiver and the individual; the physical and mental health of the caregiver and the individual; support resources currently available to the individual; other sources of support; support needs of other members of the household; and risk of harm to the individual and other members of the household.

E.  As part of this policy and these procedures referred to in Section VII.A. of this Settlement Agreement, the Defendants shall consider the recommendations made by the Steering Committee established pursuant to the 2003 Independence Plus Grant awarded to the Department

of Mental Retardation and its partners in the fall of 2003 from the Centers for Medicare and Medicaid Services (CMS).

  F. Level of Need assessments will be based upon the broad support and supervision categories ("minimal", "moderate", and "comprehensive") identified in the Waiting List Focus Team Report, May 2000, until such time as the more sensitive and sophisticated "Level of Need" (LON) process, which is being developed under the DMR/CMS Independence Plus Grant, is fully implemented.

  G. Level of need assessments will be based upon an assessment of significant client characteristics of both individuals on the Waiting List and those receiving residential supports and services, and an analysis of associated support needs.

  H. DMR shall establish a range of costs for each support and supervision category. Persons presenting the most urgent needs, and their respective "teams", "circles", and families, will develop a proposed plan of services and establish a proposed budget within the established range of costs.

  I. Within the broad support and supervision categories, the Planning and Resource Allocation Team (PRAT) will be responsible for determining the appropriate allocation of resources up to established limits, in an equitable manner to support the plans for those persons on the waiting list determined to have the most urgent need, i.e., class members.

  J. If any proposed plan of services requires services in a "residential setting", or services that cost beyond the maximum of established cost ranges, authorization from DMR Central Office or an order from a hearing officer or Court is required.