L.  Independent brokers, approved by DMR, shall be an allowable service option under any waiver approved during the term of this Settlement Agreement.

M.  An individual enrolled in the waiver(s) will receive funding for their approved plan of services. Consistent with that approved funding, the individual may choose among qualified providers, as determined by DMR, to obtain the approved services.

N.  Disputes over funding for any plan of services, the application of the DMR cost standards, or level of need determinations shall be resolved through the hearing process developed through Section VIII below.

O.  The parties acknowledge that in order to be enrolled in the HCBS Waiver(s), and to continue once enrolled, class members must be determined to meet eligibility criteria as set forth in applicable federal law.

P.  DMR shall recommend all applicants determined to be eligible for the waiver(s) by DMR be included by DSS in the HCBS waiver(s). The parties acknowledge that DSS has the sole authority to approve enrollment of any individual in any HCBS waiver.

Q.  In the event that DMR is unable to process applications because of either insufficient state general fund appropriations or because the defendants have reached the "cap" established by the waiver(s), DMR shall maintain a list of all such applicants and shall, at least annually, notify each person on said list of the status of the funding and the waiver "cap" until appropriations and the status of the "cap" permit processing of said person's application. DMR's

maintenance of this list is only for the stated purpose of providing applicants with information on the status of their applications and shall not be used to limit the defendants' discretion in enrolling applicants in any applicable waiver once enrollment resumes. This provision does not alter in any way the resource commitment set forth in this Settlement Agreement.

VIII.  Hearing Process for Final Decisions of HCBS Waiver Operating Agency (DMR)

    A.  DMR "operates" the HCBS waiver(s) which are "administered" by the single state Medicaid agency, the Department of Social Services (DSS).

    B.  Priority assignment, i.e., urgency of need, shall be determined in accordance with criteria developed by the defendants. To the extent that a priority assignment determination results in a denial or limitation of waiver services, it shall be subject to a fair hearing process, in accordance with the UAPA, conducted by DSS. "Priority assignment" shall remain consistent with the policies and procedures in effect on June 21, 2004.

    C.  The Defendants will seek and support legislation, as necessary, to authorize a hearing process under the Uniform Administrative Procedures Act (UAPA) for "priority assignment" determinations.

    D.  Eligibility decisions for enrollment in any HCBS waiver shall be based on eligibility criteria developed by DMR and approved by DSS. The eligibility criteria shall be established with due consideration to the advice and recommendations of the expert consultant. Nothing in this subsection shall be construed to lessen the authority of the defendants to establish the eligibility criteria.

13

E. An applicant shall be notified of the waiver eligibility decision of the DMR Waiver Unit, and of his or her right to request a hearing before DSS if aggrieved by the eligibility decision. Such notice shall include the reasons for the eligibility decision and forms necessary to pursue the administrative hearing.

F. The DMR Waiver Unit shall provide prompt notice of the right to a hearing before DSS to any person who is aggrieved by any decision concerning a request for enhanced or additional waiver services, including any dispute over the amount of money authorized. Such notice shall include the reasons for the eligibility decision and forms necessary to pursue the administrative hearing.

G. Any person aggrieved by DMR's determination of his or her support and supervision category ("minimal, "moderate, "comprehensive") has a right to a hearing before DSS.

H. All fair hearings covered by this Settlement Agreement shall proceed promptly in accordance with applicable federal and state law.

IX. Additional Resources for Class Members

A. The Defendants, in entering this Settlement Agreement, hereby agree to:

1. Provide resources, within an average cost of $50,000 per person, to address the residential habilitation and other waiver service and support needs of one hundred fifty (150) class members per year for the period SFY 2005 through SFY 2009, thereby removing these persons from the Waiting List. In each year at least 120 of these persons shall come from their own or family home.

2. Provide resources to provide family support services, not less than an average of $5000 per individual, for an

14

       additional 100 persons each year who are on the planning list for the period SFY 2005 through 2009.

   3. The resource commitments set forth in this section are exclusive of:

     a. funding for rent subsidies for individuals on the Waiting List who need and choose out-of-home supports; and
     b. funding for individuals identified as "Grads" and "Age-outs."

 B. The defendants shall address the need for waiver supports and services of the named individual plaintiffs through the resource commitments set forth in this section.

 C. Defendants will seek and support General Fund appropriations sufficient to provide waiver supports and services for individuals with the most urgent needs after SFY 2009.

 D. The parties acknowledge that one of the services that can be funded through HCBS waivers is residential habilitation services. This service, however, consists of residential support services in the class member's place of residence, and specifically excludes room and board costs, whether in a private residence or in licensed or other residential facilities. The parties understand and agree that HCBS waiver services neither include nor fund "placements" nor room and board costs, and that the only obligations assumed by the defendants in this Settlement Agreement are to determine eligibility, including hearing processes, and to arrange for the provision of Waiver services which are adequate to meet the needs of the number of individuals specified in this Settlement Agreement in accordance with its express terms.

 E. It is further understood and acknowledged that, while the obligation of this Settlement Agreement is to address the waiver support and service needs of class members as set

15

forth in § IX of this Agreement, the capacity and flexibility within the existing annualized resources of DMR provide substantial opportunity to serve additional class members, which is the desire, but not the legal obligation, of the Defendants under this Settlement Agreement.

F. The Defendants will attempt to secure new General Fund appropriations, as necessary to the implementation of this Settlement Agreement, and to preserve funding specifically dedicated to individuals who are identified as "grads" and "age-outs".

X. Race, Ethnic, and Cultural Diversity

The Parties recognize the continuing need to reach out to racial, ethnic, and culturally diverse groups, especially among class members, who may be under-represented in the service system for persons with mental retardation generally, and in HCBS enrollment specifically. The Defendants are committed to continuing these "Outreach" efforts under the auspices of the DMR Regional Committees, and Central Office Council, on Cultural Competency to promote access to resources by racial, ethnic and disability groups in implementing this Settlement.

XI. Expert Consultant

A. The state Defendants shall retain a mutually acceptable independent consultant to review progress, facilitate implementation and report to the parties during the last quarter of each year during the five (5) year term of this Settlement Agreement. The expect consultant shall have access to documents and data necessary to fulfill this obligation and shall be paid by the State, and reimbursed for reasonable expenses, the total of which shall not exceed $100,000 per

year. The parties may jointly or severally for good cause, move the Court for an Order to increase the amount of the expert consultant's allowable fees and expenses.

    B.    The independent consultant, for purposes of this Settlement Agreement, shall not be, nor become, nor be considered a Court Monitor, master, nor agent of the court, and shall solely be an agent of the parties for the limited purposes set forth herein.

XII.    Reporting

    A.    The Defendants will report to the Plaintiffs quarterly on the progress made toward implementing the goals of this Settlement Agreement.

    B.    The Defendants shall establish, maintain, update, and provide to Plaintiffs twice per year, a list of persons identified as class members, in accordance with the definition approved by the District Court, during the term of this Settlement Agreement.

XIII.    Enforcement and Miscellaneous Provisions

    A.    This Agreement shall not become effective unless it is submitted to the State Legislature and is approved or deemed approved pursuant to Conn. Gen. Stat. § 3-125a.

    B.    This United States District Court shall retain jurisdiction of this Settlement Agreement only with regard to:

        1.    Section V – *Forebearance from State Invocation of "Factor 'C'"*;

        2.    Section VII – *HCBS Waiver Application and Enrollment Process* (the commitment to establish policies and procedures in conformance with Section VII);

17

    3.    Section VIII – *Hearing Process for Final Decisions of HCBS Operating Agency (DMR)*;

    4.    Section IX – *Additional Resources for Class Members*.

C.    Disputes concerning eligibility for services, level of services, placement, or any other matter that could be the subject of any administrative hearing process described herein cannot be the subject of any enforcement action in district court under the terms of this agreement.

D.    The United States District Court shall not have jurisdiction over any aspect of this agreement except for those specifically stated in Section XIII.B. of this agreement, unless modified by law. This provision does not preclude awards of attorneys' fees and costs, in accordance with applicable law, related to actions to enforce this Settlement Agreement.

E.    The District Court's jurisdiction shall terminate on June 30, 2009, except that the plaintiffs will have an additional six month period to file motion(s) based upon substantial non-compliance with the provisions of Section IX.A. of this Settlement Agreement provided that the non-compliance occurred during its five (5) year term and was discovered after June 30, 2009.

In the event the plaintiffs file a motion after June 30, 2009, in accordance with this section, the plaintiffs expressly agree that upon the court's finding of substantial non-compliance with the provisions of Section IX.A., the court may remedy that non-compliance solely by ordering the defendants to provide the resources set out in Sections IX.A.1 and IX.A.2. Any such order may include the award of attorney's fees and costs in accordance with applicable law. Nothing in this section shall be construed to extend the court's jurisdiction beyond June 30,

2009 for any purpose other than to compel the defendants' compliance with any relevant provision of Section IX.A. following a finding of substantial non-compliance prompted by a motion as described in this paragraph. Nothing in this section shall be construed to limit the court's powers to resolve any motion filed prior to June 30, 2009 punish contempt or otherwise remedy non-compliance with any provision of Section IX.A. by the award of attorney's fees and costs in accordance with applicable law.

    F.    The defendants shall make to the plaintiffs in the matter of *ARC-CT v. O'Meara/Wilson-Coker,* Civ. No. 3:01CV1871 (JBA) a one-time payment of $535,000.00 in resolution of claims for attorneys' fees and costs through the date of Court approval of this Settlement Agreement, payable to the Law Offices of David C. Shaw, attorneys for the plaintiffs, within ninety (90) days of Court approval of this Settlement Agreement. This provision does not alter, in any manner, the provisions of Section XIII.D. and Section XIII. E. pertaining to awards of attorneys' fees and costs related to enforcement of the Settlement Agreement in accordance with those provisions. The parties acknowledge and agree that in order for this Settlement Agreement to be submitted to the Court for approval it must first be submitted to the Connecticut General Assembly in accordance with Section 3-125a of the Connecticut General Statutes

XIV.   Total Agreement

    This agreement contains the complete and sole agreement of the parties.

| *For the Plaintiffs* | *For the Defendants* |
|---|---|
| *[signature]* | *[signature]* |
| David C. Shaw, Esq.<br>34 Jerome Avenue<br>Bloomfield, CT 06002<br>Tel. : (860) 242-1238 | Richard Blumenthal<br>Attorney General |
| *[signature]*<br>Mickey Herbst, ARC – Connecticut<br>President | *[signature]*<br>Peter H. O'Meara, Commissioner<br>Department of Mental Retardation |
| *[signature]*<br>Margaret Dignoti, ARC – Connecticut<br>Executive Director | *[signature]*<br>Patricia Wilson-Coker, Commissioner<br>Department of Social Services |
| *[signature]*<br>Quincy Abbot, ARC - Connecticut<br>Board Member –At-Large | |

MARCH 30, 2005

20

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed first class, postage prepaid to counsel of record on March 30, 2005.

Hugh Barber, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas M. Fiorentino, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas B. York, Esq.
Dilworth, Paxson LLP
112 Market St., 8th Floor
Harrisburg, PA 17101

_____
David C. Shaw, Esq.