UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARC/CONNECTICUT, ET. AL. : | |
| : | 3:01CV1871 (JBA) |
| PLAINTIFFS : | |
| vs. : | |
| : | |
| PETER H. O'MEARA, ET AL. : | |
| : | |
| DEFENDANTS. : | MAY 18, 2005 |

**MEMORANDUM OF LAW RELATING TO**
**THE STANDARDS FOR APPROVING THE SETTLEMENT OF A CLASS**
**ACTION**

**I. INTRODUCTION:**

This memorandum is submitted in support of the request of the parties that the Court approve the Settlement Agreement that has been submitted by the parties. It addresses the standards that have been established by the Second Circuit for approving a Settlement Agreement that purports to resolve the issues raised in a class action under Rule 23 of the Federal Rules of Civil Procedure, and discusses why the Settlement Agreement submitted by the parties meets those standards.

**1. Adequacy of Notice to the Class Regarding the Proposed Settlement Agreement:**

Rule 23(e) of the Federal Rules of Civil Procedure requires that notice of a settlement be given to all class members. While the Rule contains no rigid standards governing the content, form or timing of the notice to class members, due process requires that certain minimal standards be met.

As a general rule, the contents of a settlement notice must " 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *Grunin v. International House of Pancakes,* 513 F. 2d 114, 122 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975), *quoting Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp.*, 323 F. Supp. 364, 378 (E.D. Pa. 1970), *aff'd sub nom., Ace Heating and Plumbing Co. v. Crane Co.*, 453 F.2d 30 (3rd Cir. 1971); *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir. 1982). In addition, the notice must be neutral. The court must not express an opinion on the merits of the case or the adequacy of the settlement. *Weinberger v. Kendrick, supra* at 70; *Grunin v. International House of Pancakes*, 513 F.2d at 122. Although it must "specify the time and place at which the formal hearing on the fairness of the settlement will be conducted," Manual for Complex Litigation, Section 1.46, p. 55, it may consist of "a very general description of the proposed settlement." *Grunin v. International House of Pancakes*, 513 F. 2d at 122; *Weinberger v. Kendrick*, 698 F.2d at 70.

In the instant case, class members were provided with notice regarding the Proposed Settlement Agreement. (Exhibit A.) The Notice meets all of the foregoing content requirements. The Notice contains a definition of the class affected by the Proposed Settlement Agreement and describes its primary provisions relating to providing additional State funding to support class members and their families, allowing all DMR clients an opportunity to apply for the Waiver, requiring that in the future all services to Waiver recipients will be based on

2

individual need through a process that will allow families to obtain adequate funding, the ability to choose among qualified providers of those services, and a fair hearing process to allow each Waiver recipient to challenge the adequacy of services. In addition, the Notice informed class members of various locations where full copies of the Settlement Agreement could be obtained, of the time within which objections had to be filed, and of the time and place of the hearing on the Proposed Settlement Agreement.

With respect to the form of the notice, individual notice should be given to "all class members who can be identified through reasonable effort." Eisen v. Carlisle and *Jacquelin*, 417 U.S. 156, 177 (1974); *Weinberger v. Kendrick*, 698 F. 2d at 71. Where identification of certain class members may not be possible through reasonable efforts, the notice given should be such as is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections*." Mullane v. Central Hanover Bank and Trust Co*., 339 U.S. 306, 314 (1950). These requirements are clearly met in this case. Individual notice by mail was given to all DMR clients, including, but not limited to, all Waiver participants, through publishing that Notice in the Spring 2005 edition of the Department of Mental Retardation newsletter, "Direct to Families", in English and Spanish, and mailing that newsletter to more than 14,000 DMR clients and their families on or about April 22, 2005. (Exhibit B.) The Court-approved Notice was also published on April 22, 2005 in the Hartford Courant, New Haven Register, Waterbury Republican, New London Day, Connecticut Post, and Stamford Advocate, and was posted on the DMR website, with a link to

the full text of the Settlement Agreement, on April 13, 2005.  (Exhibit A.)

The timing of the Notice of settlement, the deadline for the filing of objections, and the date set for the Fairness Hearing must be such as to afford class members "an opportunity to present their objections," *Mullane v. Central Hanover Bank and Trust Co.*, 339 U. S. at 314, and must "afford a reasonable time for those interested to make their appearance."  *Id*.  Here the Notice was published on the internet twenty-two days before the deadline for filing comments with the Court and thirty-six days before the Fairness Hearing.  Moreover, the Notice was published through the mail and in six different newspapers thirteen days before comments were due and twenty-seven days before the Fairness Hearing.

As further evidence of the reasonableness and adequacy of the Notice and notice procedures in this case, the record reflects that no person or organization has challenged the adequacy of the content or form of the notices, nor have there been any requests for continuance of the Fairness Hearing.

**2. Adequacy, Fairness and Reasonableness of the Proposed Settlement Agreement**

Before approving a proposed settlement of a class action pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, a district court must be satisfied that the settlement is "fair, reasonable, and adequate."  *D'Amato v. Deutsch Bank*, 236 F. 3d 78, 85 (2nd Cir. 2001); *Malchman v. Davis*, 706 F. 2d 426, 433 (2nd Cir. 1983); *Weinberger v. Kendrick*, 698 F. 2d at 732; *State of West Virginia v. Chas. Pfizer and Co.*, 440 F.2d 1079, 1085 (2nd Cir. 1971), *cert. denied, sub nom., Cotler Drugs, Inc. v. Chs. Pfizer and Co.*, 404 U.S. 871 (1971).

There is a clear policy in favor of encouraging settlements. *United States v. Hooker Chemicals and Plastic Corp.*, 540 F. Supp. 1067, 1072 (E.D.N.Y. 1982)(citing *inter alia Patterson v. Newspapers and Mail Deliveries Union of New York,* 514 F.2d 767, 771 (2nd Cir. 1975), *cert. denied*, 427 U.S. 911 (1976). The policy of encouraging cooperation and settlement is of special importance here, where prolonging the bitterness that has divided the parties throughout the history of this litigation would substantially undermine efforts to bring the intended relief to class members.

The Court of Appeals of the Second Circuit has established a number of relevant factors which the reviewing court must consider in determining the fairness, reasonableness and adequacy of a proposed settlement. These principles applicable to the approval or disapproval of class action settlements have been restated by our Court of Appeals in *D'Amato v. Deutsch Bank,* 236 F. 3d at 85; *Malchman*, 706 F. 2d at 433034, and *Weinberger*, 698 F.2d at 73-74. It is not the court's function 'to reopen and enter into negotiations with the litigants in the hope of improving the terms of the settlement.' *Argo v. Harris*, 84 F.R.D. 646, 648 (E.D.N.Y. 1979).

While settlement hearings should not be converted into trials, the facts should be explored "sufficiently to make intelligent determinations of adequacy and fairness." *Malchman,* 706 F.2d at 433, *citing Plummer v. Chemical Bank*, 668 F.2d 654, 659 (2nd Cir. 1982). In making its determination, the Court must consider the substantive terms of the proposed settlement compared with the likely result at trial; the negotiating process, examined in the light of the experience of counsel; the vigor with which the case was prosecuted; and any coercion or

collusion that may have tainted the negotiations. *D'Amato v. Deutsch Bank,* 236 F. 3d at 85 - 87; *Malchman*, 706 F.2d at 433; *Weinberger*, 698 F.2d at 73; *see also, In Re Traffic Executive Association—Eastern Railroads*, 627 F.2d 631, 633 (2nd Cir. 1980); *City of Detroit v. Grinnell Corp.* 495 F. 2d 448, 465 (2nd Cir. 1974). The *D'Amato* Court described these standards as requiring an analysis of the procedural and substantive fairness of the settlement.

### a. Procedural Fairness

The *D'Amato* Court noted that a court reviewing a proposed settlement must pay close attention to the negotiating process to ensure that the settlement resulted from "arm's length negotiation and that plaintiffs' counsel have possessed the experience and ability, and have engaged in discovery, necessary to effective representation of the class's interests." *D'Amato*, 236 F. 3d at 85, *quoting Weinberger*, 698 F.2d at 74.

Here, the plaintiffs' counsel is experienced in federal class action litigation, having successfully obtained community living arrangements for the 1200 former residents of Mansfield Training School, having to date obtained regular class placements in public schools in Connecticut for some 800 of the 4000 retarded children who are members of the class in *P.J. v. State of Connecticut,* having obtained adaptive wheelchairs and related therapies for several hundred severely disabled nursing home residents in *Hillburn v. Maher*, 795 F.2d 252 (2nd Cir. 1986), and having successfully prosecuted numerous other individual and class action lawsuits on behalf of persons with disabilities. (Exhibit C.)

Further, the settlement occurred at an appropriate stage in the litigation, after sufficient

and adequate discovery had been completed.  Plaintiffs' counsel has engaged in substantial discovery, including on-site expert inspection of defendants' Waiver program by four out-of-state experts, a multi-day review of all documents maintained by the DMR Central Office on the administration of the Waiver program; sixteen depositions; ten written discovery motions and two extensive Requests for Admission.  Through this discovery plaintiffs were able to make an assessment of the extent of the unmet need of class members for residential and in-home supports and identify the defendants' policies and procedures that resulted in class members being denied the opportunity to apply for the Waiver and/or denied them the support they needed even though they were listed as Waiver participants.  The depositions of state officials and the two-day on-site visitation by plaintiffs' experts were particularly helpful in identifying the size and dimensions of the problem that any resolution of this lawsuit would have to address.

Finally, Magistrate Judge Margolis played an important role in the negotiations that produced the Proposed Settlement Agreement.  As noted in *D'Amato,* the fact that judicial officer was involved in every stage of the negotiating process helps to ensure that the negotiations were free from collusion and were the result of arm's length negotiations.  *See, D'Amato*, 236 F. 3d at 85.

An analysis of the well-established standards for approving a proposed settlement of a class action make it clear that the Settlement Agreement was the product of arm's length negotiations that were free from collusion or other factors that might taint the fairness of the

settlement to the class.

### b. Substantive Fairness

The factors relevant to determining the substantive fairness of a proposed settlement are:

(1) the complexity, expense and likely duration of the litigation[,] (2) the reaction of the class to the settlement [,] (3) the stage of the proceedings and the amount of discovery completed[,] (4) the risks of establishing liability[,] (6) the risks of maintaining the class action through the trial[,] (7) the ability of the defendants to withstand a greater judgment[,] (8) the range of reasonableness of the settlement fund in light of he best possible recovery[,] and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]
*D'Amato,* 236 F. 3d at 86*, quoting, Grinnell*, 495 F. 2d at 463 (citations omitted); *Malchman*, 706 F. 2d at 433-34; *Robertson v. National Basketball Association*, 556 F.2d 682, 684 n.1 (2nd Cir. 1971).

This case is distinguishable from *Grinnell,* however, in that it involves injunctive rather than monetary relief and for that reason factors five through nine are inapplicable. An analysis of these four factors shows that the substantive terms of the settlement are fair, reasonable and adequate. As the third factor is addressed in the previous section on procedural fairness, substantive fairness turns on the first, second and fourth factors set out in *Grinnell*.

An analysis of the first factor clearly points toward a finding of substantive fairness. This lawsuit is complex and a full resolution through a trial on the merits would be expensive and time consuming. The Court has already written opinions on multiple dispositive motions, and issued a ruling on plaintiffs' motion for class certification, and the Magistrate Judge has issued seven rulings on motions for access to data that contains identifying information about class members, and motions to compel discovery. Yet the Court has not yet fully resolved the

privacy issues defendants claimed precluded full and fair discovery. The extent of the disagreement over discovery and the completion of the extensive additional discovery required to bring this lawsuit for trial would have taken at least four years and possibly longer. Moreover, appeals over defendants' challenges to the jurisdiction of the Court and/or the viability of plaintiffs' cause of action under the Medicaid Act would have prolonged a final resolution even longer. Undoubtedly, a final resolution would have been expensive and time consuming.

     An analysis of the fourth factor set out in *Grinnell* – the risks of establishing liability - also leads to the conclusion that the substance of the settlement is fair and reasonable to the class. In the Complaint the plaintiffs request four primary forms of relief. In Count IV the plaintiffs request that all DMR clients who are not on the Waiver be afforded an opportunity to apply. In Counts I, II and V the plaintiffs request orders requiring that each class member receive prompt and adequate services based on an individual service plan that addresses the class member's needs. In Counts III and VI the plaintiffs request orders that would require DMR clients living in institutions an opportunity to obtain Waiver funding so that they can leave the institution. Finally, in Count VIII, the plaintiffs request the right to notice and a fair hearing to contest violations of rights under the Waiver program.

     As to the first of these concerns, Sections VI and VII of the Proposed Settlement Agreement requires that class members are to be informed about the Waiver and that all persons wishing to apply must be permitted to apply. This provision of the Settlement Agreement is

9

consistent with the holding in *Benjamin H. v. Ohl*, 1999 U.S. Dist. LEXIS 22469 *43 (S.D. W.Va 1999).

The concern that each class member receive services appropriate to his/her individual needs is addressed in Section VII of the Proposed Settlement Agreement.  Under the settlement, each class member on the Waiver is to have a plan of services developed by his "Circle of Support" based on his/her individual needs, that a budget is to be developed to address the needs described in that plan and that a process to negotiate a budget with a broker who is independent of DMR must be developed.  In addition, a process that will enable class members to obtain supplemental waiver services for unanticipated or emergency needs must be developed. The settlement provides that class members "may choose among qualified providers" and use their budgeted funding to purchase services based on choice.  The promise that individuals will actually be provided services, rather than be placed on a waiting list, is reinforced by Section IX of the Settlement Agreement that additional state funding will be made available to provide out-of-home services (averaging $50,000 per person) for 150 additional class members each year for five years and that in-home supports of $5,000 per person will be provided for 100 additional class members per year for five years.

There were two primary risks of establishing liability and obtaining relief for the class on this issue.  First, defendants have consistently maintained that plaintiffs' do not have a private cause of action in federal court to enforce the provisions of the Medicaid Act.  While this argument conflicts with the holding of the Second Circuit in *Hillburn v. Maher*, 795 F.2d

252 (2nd Cir. 1986), and other federal courts, *see*, *Bryson v. Shumway*, 308 F.3d 79, 89 (1st Cir. 2002), *Doe v. Chiles*, 136 F.3d 709, 719 (11th Cir. 1998), *Benjamin v. Ohl*, 1999 U.S. Dist. LEXIS 22469 at *44, and *Boulet v. Cellucci*, 107 F. Supp. 2d 61, 77 - 80 (D. Mass. 2000), it is clear that establishing liability under the Medicaid Act is not entirely free from doubt.  Second, the case law appears to indicate that the state may impose a cap on the number of persons served under the Waiver.  *Boulet*, supra, at 77-78; *Bryson v. Shumway*, 308 F. 3d at 85, 86.  The Connecticut Waiver Plan provides that the State will make Waiver services available to individuals "up to the lesser of the number of individuals indicated as factor C for the wavier year, or the number authorized by the State legislature for that time period."  Settlement Agreement, Section V.  While the meaning of this provision is not free from doubt, it may have limited the number of new persons admitted to the Waiver each year to the new persons actually funded by the legislature.  If the Court were to so interpret Connecticut's Waiver Plan, many fewer than the 1,250 additional persons to be served under the settlement would be covered by a decision on the merits.   The Settlement Agreement eliminates the risk that this factor C will be involved during the life of the Settlement Agreement.

     The third concern raised by this lawsuit has been addressed by requiring that class members may apply for Waiver services even if they live in an institution. Resolution of this issue would require the Court to hold that the Medicaid Act does not preclude persons living in ICF/MRs from applying for the Waiver and/or that denying them the opportunity to apply violates the Americans with Disabilities Act.  It appears clear from the holding in *Benjamin H.*

*v. Ohl*, 1999 U.S. Dist. LEXIS 22469 *39 - * 42 (S.D. W.Va 1999) that institutionalized class members living in ICF/MRs would prevail on this issue.  However, class members living in nursing homes and other institutions not certified as ICF/MRs would have to rely on the Court's interpretation of the Medicaid Act and the ADA.  As can be seen from Judge Burns' Ruling in *Messier v. Southbury Training School* the outcome of this portion of plaintiffs' case is not entirely free from doubt and would depend on a carefully developed factual record.  *See*, *Messier v. Southbury Training School,* 1999 WL 20910 * 9 - *10.

The fourth concern is addressed in that any dispute over funding under the Waiver is subject to a fair hearing process as the case law appears clear that Medicaid recipients have a right to notice and a hearing to resolve disputes.  *See*, *Bryson v. Shumway*, 308 F.3d 79, 90 (1st Cir. 2002).

A final factor that must be considered in determining the substantive fairness of the settlement is the reaction of the class.  Here, no opposition has been filed to the settlement either by individual class members or representatives of those class members.  This is a powerful indicator that the terms of the Proposed Settlement Agreement are widely supported by class members and their families.

## II.     CONCLUSION:

For the foregoing reasons the Court should find that the Notice to the Class of the Proposed Settlement Agreement meets the requirements of Rule 23 and that the Proposed

Settlement Agreement is a fair, reasonable and adequate resolution of this class action lawsuit.

                              PLAINTIFFS,

                              By   /s/  David C. Shaw

                              David C. Shaw, Esq.
                              34 Jerome Ave., Suite 210
                              Bloomfield, CT 06002
                              Fed. Bar No. ct05239
                              Tel. (860) 242-1238
                              Fax. (860) 242-1507
                              Email:  dcshaw@cttel.net

## **CERTIFICATION**

      This is to certify that a copy of the foregoing was sent via email to the Court and Thomas M. Fiorentino, Esq. and to counsel of record via first class mail on May 18, 2005.

Thomas M. Fiorentino, Esq.
Assistant Attorney General
State of Connecticut
P.O. Box 120
Hartford, CT 06141

Thomas B. York, Esq.
Dilworth, Paxson LLP
112 Market St., 8th Floor
Harrisburg, PA 17101

                                            /s/  David C. Shaw
                                              David C. Shaw, Esq.