# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARC/CONNECTICUT, ET. AL. | : | 3:01CV1871 (JBA) |
|           PLAINTIFFS | : | |
| vs. | : | |
| | : | |
| PETER H. O'MEARA, ET AL. | : | |
|           DEFENDANTS. | : | MAY 18, 2005 |

## DECLARATION OF DAVID C. SHAW
## IN SUPPORT OF SETTLEMENT AGREEMENT

I, David C. Shaw, hereby declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following statements are true and correct.

1. I was graduated from the University of Connecticut School of Law in June 1973.

2. I was employed by the Legal Aid Society of Hartford County, Inc., in Hartford, Connecticut from February 1, 1974 through August 1, 1984.

3. Since August 1, 1984 I have been in private practice. I am currently a principal in the law firm Law Offices of David C. Shaw, LLC.

4. My law practice focuses primarily on litigation to advance the rights of citizens with disabilities and remedy violations of the rights of children and adults with disabilities.

5.  From l975 to present, I have acted as lead counsel or played a central role, in lawsuits brought to enforce the constitutional and federal civil rights of disabled citizens.  In addition to this litigation, I am, or have been, lead counsel in:

P.J. v. State of Connecticut, No. 2:91CV00180 (RNC).  This case was brought on behalf of 4,000 mentally retarded school age children who have been unnecessarily segregated from regular classrooms and nondisabled children.  The settlement of this case required the state to significantly increase the number of children with mental retardation attending regular classes in their home schools, to increase their participation in extracurricular activities and to end the racial and gender bias in the identification and placement of these children.  The case is currently in the remedial phase and an Expert Advisor Panel is currently working with the State to facilitate its remedial efforts.

M. v. Stamford Bd. of Educ., No. 3:05CV0177 (WWE).  This case seeks damages for the failure of public officers to protect a school age child from harm while attending the Stamford Public Schools.

R. v. Waterbury Bd. of Educ., No. 3:00CV0887 (WWE).  This case achieved a settlement for the sexual assault of a child with mental retardation that occurred while she was attending a special education program.

Santaniello v. Clasp Homes, Inc., et. al, No. 3:04CV806 (RNC).  This lawsuit seeks money damages for the removal of seventeen teeth of a mentally retarded woman in one sitting without telling her guardian after years of inadequate care by the defendants.

B.H. v. Southington Bd. of Educ., 40 IDELR 36 (D. Conn. 2003).  This case achieved a settlement that required the Southington School District to provide necessary public school supports so that a severely disabled child could attend Southington High School.  The case is currently in the remedial phase.

A.S. v. Norwalk Board of Education, 183 F.Supp. 2d 534 (D. Conn. 2002).  This case secured a regular classroom placement with appropriate supplementary aids and supports for a child with severe disabilities in the Norwalk High School.

M.C. v. Voluntown, 226 F.3d 60 (2nd Cir. 2000).  This case obtained reimbursement for a private school placement for a child with disabilities.

M.H. v. Bristol Bd. of Educ., 169 F. Supp. 2d 21 (D. Conn. 2001).  This lawsuit sought damages against an administrator and a teacher in the Bristol Public School for repeatedly tying a disabled child to chair without the consent of the parents.

G.M. v. New Britain Board of Educ., 173 F.3d 77 (2nd Cir. 1999).  This case obtained a community special education program for a child with a disability.

Messier v. Southbury Training School, No. 3:94CV01706 (EBB).  This lawsuit seeks decent care and treatment and an opportunity for community placement for the 500 residents of Southbury Training School.  The case was tried to conclusion in 1999.  A final decision has not yet been issued.

C.A.R.C. v. Thorne, No. H78-653 (AVC).  This lawsuit eliminated unconstitutional conditions and obtained community placements for the 1200 residents of the Mansfield Training School over the period 1984-1994.

Bredice v. Guevarra, No. 3:94CV01316 (PCD).  This case obtained money damages for the death of a retarded man due to an overdose of seizure medication administered by physicians at Southbury Training School.

L.G. v. State of Connecticut, 788 F.Supp. 673 (D. Conn. 1992).  This case invalidated one school's decision to exclude a retarded child from a regular classroom without regard to whether inclusion was possible if modifications were made available to the regular classroom and additional support was made available to the classroom teacher.

Jacob Pratt v. Regional School District No. 15, No. 2:91CV00180 (JAC).  This case invalidated Regional School District No. 15's policy of excluding a child with autism from regular classes because he could not master the regular curriculum.

Orville Karan, Ph.D. v. Frederick Adams, No. H90-135 (JAC).  This lawsuit invalidated a portion of Connecticut's regulatory scheme for licensing psychologists from other states who wish to practice in Connecticut.

Derek C. v. Southington Board of Education, Richard P. v. Meriden Board of Education, Christopher D. v. Hartford Board of Education, and Meghan D. v. Granby Board of Education; Patrick J. v. West Haven Board of Education; April S. v. Norwalk Board of Education; Nicholas D. v. West Hartford Board of Education; Christa F. v. New Britain Board of Education; K.J. v. New Britain Board of Education; E.B. v. Canterbury Board of Education; Nicholas G. v. Ellington Board of Education; S.B. v. Litchfield Board of Education; M.E. v. Stamford Board of Education; P.C. v. West Haven Board of Education; N.D. v. West Hartford Board of Education; M.H. v. Southington Board of Education; I.K. v. Stamford Board of Education; M.K. v. Farmington Board of Education; J.R. v. Farmington Board of Education; E.P. v. Meriden Board of Education; T.P. v. Regional School District # 1; D.P. v. Stafford Springs Board of Education; G.R. v. Regional School District No. 15; D.F. v. Enfield Board of Education; N.S. v. Stratford Board of Ed., K.L. v. Stonington Board of Education; C.C. v. Regional School District #15, E.H. v. Wallingford Board of Education, C.W. v. Middletown Board of Education, C.M. w. Stamford Board of Education, and M.E. v. Stamford Board of Education. Decisions by state hearing officers, or settlements, after litigation, required the named public schools to develop the supports and modifications necessary to educate children with disabilities ranging from profound to mild retardation in regular classrooms.

Timothy Olander v. Benhaven, Inc., et al, Civ. No. N-87-423 (TFGD). This lawsuit sought and obtained money damages for the use of restraint and aversive stimuli on a handicapped child without permission of the child's parents.

Mary Astorino v. Brian Lensink, et al, No. H-89-106 (JAC). This lawsuit obtained money damages and community placement for an adult woman who was sexually assaulted on two occasions at the Southbury Training School.

Hillburn v. Maher, 795 F. 2d 252 (2d Cir. 1986), cert. denied, 479 U.S. 1046 (1987). Secured adaptive wheelchairs and related services for some 400 severely handicapped nursing home residents.

Gagne v. Maher, 594 F.2d 336 (2d Cir. 1979), aff'd 448 U.S. 122 (1980). This case establishes that settling plaintiffs are entitled to reimbursement for attorneys' fees and costs under 42 U.S.C. § 1988 and that counsel is entitled to compensation for the time spent litigating the fee claim.

Lelsz v. Kavanaugh, 710 F. 2d 1040 (5th Cir. 1983). I represented the Association of Retarded Citizens of Texas in its effort to obtain minimally adequate treatment for over 5000 retarded citizens of Texas. Following a full trial United States District Judge Barefoot Sanders found the

4

State of Texas in contempt of the settlement and court order and ordered remedial measures.

Connecticut Coordinating Committee of the Handicapped v. Cotter, Civ. No. H-80-573 (D. Conn. slip op. February 24, 1973).  The settlement of this lawsuit required the Connecticut Judicial Department to make the Hartford Housing Court accessible to wheelchair users.

Young v. Coleman, Civ. No. H-76-21 (D. Conn. *slip op.* 1976), rev'd, 2d Cir. order of August 15, 1979.  The settlement of this lawsuit required Connecticut to purchase only wheelchair accessible buses for the Hartford, New Haven, and Stamford urbanized areas.

   6.  Through litigation of these cases and the associated claims for costs and attorneys' fees in Connecticut and other states, I have developed expertise in litigating federal civil rights matters particularly against the State of Connecticut.

   7.  Arc/Connecticut v. O'Meara, No. 3:01CV1871 (JBA) was filed on October 2, 2001 by ten individual plaintiffs and Arc/Connecticut, a statewide parent group dedicated to protecting the rights of persons with mental retardation.  On June 3, 2002 (corrected June 20, 2002) the plaintiffs filed a Motion to file an Intervening Complaint that added fifteen additional individual plaintiffs to the lawsuit.

   8.  The Complaint alleges that Connecticut has on file with the federal government an approved Medicaid Plan and that it has elected in that Plan to provide Home and Community Based Waiver Services as an Optional Services in its Medicaid Plan.

   9.  The Complaint further alleges that the individual plaintiffs and members of the class have been denied their entitlement to services under the Waiver because the defendants

Connecticut Department of Mental Retardation and Social Services failed to inform class members of their rights under the Medicaid Act, have provided only those services that are available rather than services based on individual need as required, have denied class members the right to apply for the Waiver and to notice and a fair hearing to contest violations of their rights under Medicaid. The plaintiffs also alleged that retarded persons living in institutions were, in violation of federal law, denied the opportunity to apply for the Community Based Waiver services necessary to leave the institution.

     10. The litigation continued during the period October 2, 2001 to the present. The class was certified on January 31, 2003. I was appointed counsel for the plaintiff class at that time. Plaintiffs filed approximately eleven extensive discovery motions and two requests for admission, and reviewed at DMR and secured copies of thousands of documents.

     11. Plaintiffs also took the depositions of eleven employees of DMR or DSS and had experts conduct expert evaluations on two days in Connecticut, including interviews with Case Management and administrative staff as to how the Waiver had been complied with in Connecticut.

     12. The parties commenced settlement negotiations on February 6, 2003 at the suggestion of Magistrate Judge Margolis.

     13. The parties met on at least ten occasions, participated in many telephone

conferences, and exchanged many drafts of a proposed Settlement Agreement.

14. The negotiations were conducted by the parties and counsel. The negotiations were difficult, contentious, and at times were on the verge of breaking down.

15. As a result of the work of the parties, counsel and the direct involvement a Settlement Agreement was reached on August 4, 2004, subject to the approval of the Connecticut General Assembly.

16. Because the Connecticut Legislature failed to vote on the Resolution calling for the Settlement Agreement, the Settlement Agreement is deemed approved under Conn. Gen. Stat. § 3-125a.

17. The Settlement Agreement requires the defendants to address all of the concerns raised in the lawsuit. Paragraph IV requires on-going initiative to inform class members about the Waiver and the rights of persons who have applied and been admitted into the Waiver. Paragraphs VII and VIII require the defendants to establish policies and procedures that permit all class members to apply, development of an individual plan for each class member based on individual need, establishment of a process through which a budget will be established for each class member, with a supplemental process to obtain additional emergency services to address unanticipated needs, and a fair hearing process to resolve any disputes that arise under the Waiver Program.

18. These changes in the DMR processes and programs will enable class members to receive services based on individual need from providers chosen by parents. This is a significant improvement over the current system which allows Waiver recipients to receive services based on availability rather than need.

19. Paragraph IX requires the DMR to provide $7,500,000 in funding for residential supports for at least 150 new class members each year for five years at an average cost of $50,000 per person. This amount does not include the funding for room, board and medical care of other state and federal entitlement programs. This commitment will address the residential support needs of all persons on the current Waiting List with a priority of Emergency or Priority I (people who need residential supports within one year). This allocation of new funding should address the critical needs for out-of-home residential supports that prompted the filing of this lawsuit.

20. In addition, Paragraph IX requires that 100 class members per year will receive up to $5,000 per year for additional in-home supports that should enable them to remain at home. As the lack of in-home and out-of-home supports prompted this lawsuit, this additional funding commitment should substantially reduce the needs of persons who have been designated a Priority II or III rating.

21. Paragraph XI authorizes the appointment of a mutually acceptable independent

consultant, with a budget of $100,000 per year, to evaluate the defendants' progress under the Settlement Agreement and who can recommend corrective action. This should enable the plaintiffs and defendants to identify and correct problems that occur during implementation.

22. Finally, Paragraph XIII authorizes the Court to retain jurisdiction during the five year implementation period and the plaintiffs to file enforcement motions as to Sections V, VII, VIII and IX of the Settlement Agreement.

23. In my opinion this settlement fairly and reasonably addresses the issues raised in the complaint and satisfies the requests of Rule 23 (e)(i)(C) of the Federal Rules of Civil Procedure for the approval of settlement of class action lawsuits.

          __/s/   David C. Shaw_____
          David C. Shaw, Esq.